**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, VOLTAGE HOLDINGS, LLC, MILLENNIUM IP, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., WONDER ONE, LLC, and 42 VENTURES, LLC, | Civil Action No. 1:21-cv-00282-RDA-TCB _____ |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI, JOHN OR JANE DOE d/b/a POPCORNTIME.APP, and DOES 1-100, | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER

PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER

PRODUCTIONS, LLC,  MILLENNIUM IP, INC., VOLTAGE HOLDINGS, LLC, KILLING

LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC.,

NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., and WONDER ONE, LLC

("Copyright Plaintiffs"), and 42 VENTURES, LLC ("Plaintiff 42"), by and through their counsel,

bring this First Amended Complaint against, WICKED TECHNOLOGY LIMITED d/b/a VPN.HT

("Wicked"), VPN.HT  LIMITED  ("VPN.HT"), MOHAMED  AMINE  FAOUANI  ("Faouani")

20-023I

(Wicked, VPN.HT and Faouani referred to collectively sometimes below as "The Wicked Defendants"), JOHN OR JANE DOE d/b/a POPCORNTIME.APP ("Doe") and DOES 1-100 ("Defendants") and allege as follows:

## I. INTRODUCTORY STATEMENT

1. The Copyright Plaintiffs bring this action to stop the massive piracy of their motion pictures brought on by the notorious piracy software application Popcorn Time ("Popcorn Time"). Doe and the Wicked Defendants promote and distribute Popcorn Time freely for the purpose of infringing copyright protected content to members of the public such as DOES 1-100, who eagerly install Popcorn Time to watch copyright protected content as instructed.

2. An individual that pirates copyright protected content in the United States from her home Internet service via peer-to-peer (P2P) networks such as the BitTorrent Protocol puts herself in great legal peril because her Internet Protocol ("IP") address is publicly exposed. A copyright owner can obtain her subscriber identification from the Internet Service Provider ("ISP") that provided her with the IP address and seek statutory damages for copyright infringement that can be as high as $150,000. This risk is known among prolific pirates and feared.

3. In 2020, the Wicked Defendants and Doe begin promoting and distributing Popcorn Time from the United States top level domain "APP" under a profitable scheme to take advantage of this knowledge and fear. They distribute and promote Popcorn Time for free while also promoting their paid Virtual Private Network ("VPN") service under the name "Popcorn Time VPN" as an essential tool to pirate copyright protected content on Popcorn Time and "avoid getting into trouble" from their website on a United States domain and in Popcorn Time itself.

20-023I

## II.  NATURE OF THE ACTION

4.      Copyright Plaintiffs bring this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq.* (the "Copyright Act"), and allege that Defendants are liable for direct infringements in violation of 17 U.S.C. §§ 106 and 501, violations under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, secondarily liable for direct infringements in violation of 17 U.S.C. §§ 106 and 501, and for violations under DMCA, 17 U.S.C. § 1202.

5.      Copyright Plaintiffs further allege that the Wicked Defendants are liable for injunctive relief pursuant to 17 U.S.C. §§ 512(j).

6.      Plaintiff 42 brings this action for infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)) and for unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and alleges that the Wicked Defendants and Doe are liable for trademark infringement and false descriptions.

7.      Plaintiff 42 brings this action for breach of contract against Defendant Doe in violation of the law(s) of Hawaii and/or Virginia (Va. Code Ann. §59.1-507.1).

## III.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, *et seq.* (the Copyright Act), 15 U.S.C. § 1121, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition), and 28 U.S.C. § 1367 (supplemental jurisdiction).

9.      Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

20-023I

10.     The Wicked Defendants contracted with the Virginia limited liability company Voxility, LLC ("Voxility") for hosting and network service including IP addresses at locations including the Coresite data center in Reston, Virginia and thus in this District.

11.     Doe contracted and agreed with the Wicked Defendants to host its movie piracy software application "Popcorn Time" and website popcorntime.app on server space leased from Voxility and thus in this District.

12.     Particularly, Faouani, VPN.HT, Doe and Wicked agreed that Wicked would allow Doe to host its piracy application Popcorn Time and website on servers and/or service Wicked obtained from Voxility in Virginia in exchange for Doe promoting VPN.HT and Wicked's VPN service as "Popcorn Time VPN" and including a feature in Popcorn Time that allows users to install the Wicked Defendant's VPN service.

13.     DOES 1-100 are users of Doe's piracy application Popcorn Time, VPN.HT and Wicked's VPN service.  Particularly, DOES 1-100 use Popcorn Time to pirate copyright protected Works including Plaintiffs' "safely and anonymously" as promoted and encouraged by the Wicked Defendants and Doe.

14.     In the alternative, the Court has jurisdiction over the Wicked Defendants and Doe pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiffs' copyright and trademark claims arise under federal law; (2)The Wicked Defendants and Doe purposely direct their electronic activity into the United States and target and attract a substantial number of users in the United States and, more particularly, this District; (3) The Wicked Defendants and Doe do so with the manifest intent of engaging in business or other interactions with the United States; (4) The Wicked Defendants and Doe are not subject to

4

jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

15. The Wicked Defendants and Doe use or have used many United States ("US") based sources for operating their interactive websites and services.

16. Doe uses or have used the nameserver company Cloudflare, Inc. (California) and the APP top level domain owned by the US Company Google (California) for its website and application.

17. Doe agreed to be subject to jurisdiction in the US and to a Court in the US (California) when agreeing to terms of services with Cloudflare for nameserver service and, upon information and belief, Google for domain registration.

18. The Wicked Defendants contracted with the US companies Voxility (Virginia), Quadranet, Inc. (California) and Cogent Communications, Inc. (District of Columbia) for hosting and network service including IP addresses at locations including data centers in the US.

19. The Wicked Defendants contracted with Voxility for hosting and network service including IP addresses at locations including the Coresite data center in Reston, Virginia, the Colohouse data center in Miami, Florida, and the Coresite data center in Los Angeles, California, and thus in the US.

20. The Wicked Defendants use a US payment provider such as Paypal to send payments to Voxility in US dollars, receive funds in US dollars from US residents and store said funds in the US.

21. The Wicked Defendants purposely avail themselves of the advantages of US law. Particularly, the Wicked Defendants take advantage of the safe harbor provisions of the DMCA on their website by reference to the United States Code.

5



## DMCA / COPYRIGHT POLICY

**Digital Millenium Copyright Act Notice**

COPYRIGHT COMPLAINTS AND DESIGNATED COPYRIGHT AGENT THIS NOTICE IS SUBJECT TO MODIFICATION OR TERMINATION AT ANY TIME, WHETHER FOR CHANGES IN THE LAW OR AT THE CONVENIENCE OF VPN.ht, WITHOUT ADVANCE NOTICE. YOU MUST CHECK BACK FREQUENTLY TO ENSURE THAT YOU SEE A CORRECT, CURRENT VERSION OF THE NOTICE.

Pursuant to the Digital Millennium Copyright Act, Title 17, United States Code, Section 512(c), a copyright owner or its authorized agent ("Complainant") may submit a notification alleging copyright infringement to VPN.ht Designated Copyright Agent if Complainant has a good-faith belief that its works are being infringed by material subject to VPN.ht control. To file a notice of infringement with us, you must provide a written communication (by fax or regular mail – not by email, except by prior agreement) that sets forth the items specified below. Please note that you will be liable for damages (including costs and attorneys' fees) if you materially misrepresent that a product or activity is infringing your copyrights.

*See* Decl. of Joshua J. Lee at ¶ 14.

22.     The Wicked Defendants use US social media platforms such as TWITTER and FACEBOOK to promote their services to US consumers.

23.     Faouani uses the US social media platform LINKEDIN to promote himself as the co-founder of VPN.HT.

24.     According to Faouani's LinkedIn profile, he was previously the chief technology officer of the US company UZ4 Network in Dover, Delaware from 2011-2014.

25.     The Wicked Defendants and Doe promote overwhelmingly the availability of US movies to pirate on its website.

26.     The Wicked Defendants use the Github repository of the US company Microsoft (Washington) to host the source code of their VPN service.

27.     Doe uses the Github repository of the US company Microsoft (Washington) to host the source code of its piracy application Popcorn Time.

6

20-023I

28.     Doe consented to be subject to the jurisdiction of a Federal Court in the United States when it made a counternotice to a DMCA complaint made concerning the Popcorn Time software code Doe hosts on the Github repository.

29.     Doe entered into an agreement with the US company Plaintiff 42 (Hawaii) concerning trademark infringement and a dispute over a Twitter account that provided for jurisdiction in the US.

30.     Popcorn Time, as promoted and distributed by the Wicked Defendants and Doe, purposely does not use geoblocking to filter out IP addresses from the United States and/or Virginia.   Rather, the Wicked Defendants and Doe emphasize that Popcorn Time has "No Restrictions".

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and/or (c) Defendants are subject to the court's personal jurisdiction with respect to the present action.   Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides and/or can be found in this District.

### IV.     PARTIES

#### A.   The Plaintiffs

32.     The Copyright Plaintiffs are owners of the copyrights for the motion pictures (hereafter: "Works"), respectively, as shown in Exhibit "1".

33.     Plaintiffs Millennium Funding, Inc., Bodyguard Productions, Inc., LHF Productions Inc., Rambo V Productions, Inc., Hunter Killer Productions, Inc., Millennium IP, Inc., Nikola Productions, Inc. and Outpost Productions, Inc. are corporations organized and existing

20-023I

under the laws of the State of Nevada, have principal offices in Los Angeles, California, and are affiliates of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.  *See* http://millennium-media.net/.

34.     Plaintiffs Eve Nevada, LLC, Gunfighter Productions, LLC, Voltage Holdings, LLC, and Wonder One, LLC are limited liability companies registered under the laws of the State of Nevada, have principal offices in Los Angeles, California and are affiliates of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.  *See* http://www.voltagepictures.com/.

35.     Killing Link Distribution, Inc. ("Killing Link") is a limited liability company organized under the laws of California and having its principal office in California.  Killing Link is an affiliate of CineTel Films, a production company with a notable catalog of major award-winning motion pictures.  *See* http://www.cinetelfilms.com/.

36.     Copyright Plaintiffs are producers of popular motion pictures currently available for sale in online and brick and mortar retail stores. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, and Angela Basset, among others.

37.     Copyright Plaintiffs invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. Massive piracy of these motion pictures on Popcorn Time by subscribers of Doe and the Wicked Defendants' so called Popcorn Time VPN and the willful failure of the Wicked Defendants to deal with this issue despite clear notice of it have hindered this opportunity.

38.     Plaintiff 42 is a limited liability company organized under the laws of Hawaii and having its principal place of business in Kailua Kona, Hawaii.

39.     Plaintiff 42 distributes and streams licensed content to the public from a plurality of means including, but not limited to, websites.

40.     For example, Plaintiff 42 streams in depth humorous movie reviews called "Reel Reviews" and debates concerning motion pictures and pop culture called "Nerd Wars" from the website http://popcorntime4u.com/ under the mark "Popcorn Time" through an agreement with Andy Signore, the creator of the popular YouTube channel Popcorned Planet (since 2009) and former executive producer of the Emmy nominated series Honest Trailers (nominated in 2016 and 2017).

### B.  The Defendants

41.     Wicked is a limited company organized under the laws of Hong Kong Special Administrative Region of the People's Republic of China.

42.     VPN.HT is a limited company organized under the laws of Hong Kong Special Administrative Region of the People's Republic of China.

43.     The principal place of operation of Wicked and VPN.HT is Sheung Wan, Hong Kong.

44.     Faouani is an Algerian national.

45.     Faouani is the sole director in Wicked and VPN.HT.

46.     Upon information and belief, Faouani is the sole shareholder in Wicked and VPN.HT.

47.     Faouani so dominates Wicked that it has become merely the alter ego to Faouani.

48.     Faouani so dominates VPN.HT that it has become merely the alter ego to Faouani.

20-023I

49.     There is such a unity of interest between Wicked, VPN.HT and Faouani that the individuality, or separateness, of Wicked, VPN.HT and Faouani has ceased and the facts are such that an adherence to the fiction of the separate existence of the Wicked, VPN.HT and Faouani would, under the particular circumstances, sanction a fraud or promote injustice.

50.     Faouani controls, participates in, exercises control over, or benefits from the infringements of Wicked and VPN.HT as discussed below.

51.     VPN.HT is a provider of VPN services under the names VPN.HT and Popcorn Time VPN from, upon information and belief, 2015.

52.     Wicked contracts with data centers such as Voxility to obtain IP addresses and services for the VPN service provided by VPN.HT to its subscribers.

53.     The Wicked Defendants' VPN service is for transmitting, routing, and/or providing connections for said transmitting and routing, through a network controlled by the Wicked Defendants ("providing network connections").

54.     A VPN is a type of Internet Service that provides access to the Internet. A conventional ISP will assign its subscriber an IP address and log the subscriber's activities on the Internet while using the assigned IP address.  In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic. *See* Decl. of Stephen M. Bunting at ¶ 20.

55.     The Wicked Defendants advertise its VPN service under the brand name "Popcorn Time VPN" and promotes it as a tool that can be used to pirate copyright protected content without "getting into trouble."  *See* Decl. of Joshua J. Lee at ¶¶ 9-10.

20-023I

56.     Faouani previously sold VPN service under the name VPN.HT through a private share company VPN.HT Ltd that was organized under the laws of Belize.

57.     Faouani dissolved the Belize entity in 2015 shortly after VPN.HT Ltd was named as a Defendant in a lawsuit in Canada along with operators of a previous version of Popcorn Time and then established a new VPN.HT Ltd in Hong Kong.

58.     Despite dissolving this entity, Faouani continues to publish the information of the dissolved entity VPN.HT Ltd in Belize as the abuse contact of IP addresses he controls.

```
ORG-VL243-RIPE translates in https://apps.db.ripe.net/db-web-ui/query?
bflag=false&dflag=false&rflag=true&searchtext=ORG-VL243-RIPE&source=RIPE

        organisation:    ORG-VL243-RIPE
        org-name:        VPN.ht LTD.
        org-type:        OTHER
        address:         16 Lauren Berges Crescent, Belama Phase-3, Belize City, Belize
        abuse-c:         ACRO14008-RIPE
        mnt-ref:         VOXILITY-MNT
        mnt-by:          VOXILITY-MNT
        created:         2018-02-15T07:26:09Z
        last-modified:   2019-10-06T14:04:36Z
        source:          RIPE# Filtered
```

59.     Doe is a group of individuals that developed and operate the notorious BitTorrent Client software application Popcorn Time currently available at the website popcorntime.app that is designed, promoted and used overwhelmingly for movie piracy.

60.     DOES 1-100 are subscribers of the Wicked Defendants' VPN service and users of Doe's Popcorn Time.  Each of DOES 1-100 was assigned an IP address from the Wicked VPN service and used said IP address to download and reproduce Plaintiffs' Works without a license and further share (distribute) copies of Plaintiffs' Works to individuals across the world and/or stream (publicly perform) from said IP address as encouraged and instructed to by the Wicked Defendants and Doe.

20-023I

61.     Defendants DOES 1-100 are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

62.     Plaintiffs are informed and believe that the Wicked Defendants are in possession of identification information or information that will lead to the identities of Doe d/b/a popcorntime.app and DOES 1-100 such as payment information.  However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiffs believe that information obtained in discovery will lead to the identification of each of Defendants Doe and DOES 1-100's true names and permit the Plaintiffs to amend this First Amended Complaint to state the same.  Plaintiffs further believe that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this First Amended Complaint as defendants.  Plaintiffs will amend this First Amended Complaint to include the proper names and capacities when they have been determined.  Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this First Amended Complaint and damages resulting therefrom.

### C.  Non-parties

63.     Voxility is a limited liability company organized under the laws of Virginia with its principal place of operations in San Francisco, California.

64.     Voxility operates datacenters and provides Internet and hosting services.  Voxility provides IP addresses, Internet access, dedicated servers and co-location to its customers.

20-023I

65.     The American Registry of Internet Numbers ("ARIN") is a nonprofit, member-based organization that manages and distributes Internet number resources such as IP addresses and Autonomous System Numbers (ASNs).

66.     Réseaux IP Européens Network Coordination Centre (RIPE) is the regional Internet registry that manages and distributes Internet number resources such as IP addresses for Europe, West Asia, and the former USSR.

67.     Faouani continues to publish the information of the dissolved entity VPN.HT Ltd in Belize as the abuse contact of IP addresses he controls in the RIPE WHOIS records to conceal his identity.

## V.     JOINDER

68.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely subscribers of the Wicked Defendants (such as Defendants DOES 1-100) use its so called Popcorn Time VPN and Doe's Popcorn Time for infringing the copyrights in the Copyright Plaintiffs' Works and Plaintiff 42's trademark, the Wicked Defendants and Doe's direct infringements and contributions to infringements of others; and (b) that there are common questions of law and fact.

69.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants are properly joined because, as set forth in more detail below, Plaintiffs assert that the infringements complained of herein by each of the Defendants (a) arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) there are common questions of law and fact.  That is, each of Defendants DOES 1-100 used Popcorn Time provided by Doe and the Wicked Defendants, the Popcorn Time VPN provided by the Wicked Defendants and promoted by the Wicked Defendants

and Doe to infringe Plaintiffs' copyrights in their Works, and the promotions of Doe and the Wicked Defendants infringe Plaintiff 42's trademark.

## VI.     FACTUAL BACKGROUND

### A. The Copyright Plaintiffs Own the Copyrights to the Works

70.     The Copyright Plaintiffs are the owners of the copyright in the Works, respectively. The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

71.     Each of the Works are motion pictures currently offered for sale in commerce.

72.     Defendants had notice of Copyright Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

73.     Defendants also had notice of Copyright Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

74.     Plaintiff 42 is the owner of a federal trademark registration, Reg. No. 5,963,253, which issued on Jan. 14, 2020 on the principal register of the United States Patent and Trademark Office. This registration for the standard character mark Popcorn Time covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos and audio. A true copy of this registration is attached as Exhibit "2". The registration is valid and subsisting and has never been cancelled.

75.     Plaintiff 42 is also owner of the trademark registrations for Popcorn Time in Iceland and Russia.

76.     Plaintiff 42's US trademark asserts a first date of use of 11/29/2019.

77.     Plaintiff 42 distributes and streams content under the 42 mark throughout the US on one or more websites.

78.     Plaintiff 42 has invested substantial time, effort and financial resources promoting its Popcorn Time trademark in connection with the marketing and sale of its software in interstate commerce.

79.     Plaintiff 42's Popcorn Time trademark is inherently distinctive as applied to 42's software and website that bear the mark.

**B. Defendants DOES 1-100 Used BitTorrent to Infringe the Plaintiffs' Copyrights**

80.     BitTorrent is one of the most common P2P file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

81.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

**1. Each of Defendants DOES 1-100 installed Doe's BitTorrent Client Popcorn Time onto his or her Computer.**

82.     A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

83.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

20-023I

84. Defendants DOES 1-100 installed Doe's BitTorrent Client Popcorn Time onto their respective computers.

85. Doe's Popcorn Time has been referred to in the news media as "Netflix for pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [accessed on March 1, 2021].

86. The United States Trade Representative ("USTR") placed Doe's Popcorn Time on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26, Available at https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20 Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf [last accessed on March 5, 2021].

87. Doe's Popcorn Time provides an interface so that users can easily copy and share copies of copyright protected content, including Plaintiffs'.

88. The home interface of Popcorn Time includes a collection of title art of popular motion pictures and a search bar where a user can enter words associated with a copyright protected motion picture he or she wishes to pirate.

89. Simply entering words associated with a motion picture automatically generates a pull down tab below the search bar with a narrowed selection of motion pictures associated with the words.

### 2. The Initial Seed, Torrent, Hash and Tracker

90. A BitTorrent user who wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

20-023I

91.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

92.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG", "FGT" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her files and attract users to his or her piracy website.

93.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

94.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

95.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

96.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing suggested names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

97.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

98.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

17

20-023I

99.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

100.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites such as the YIFY/YTS website, The Pirate Bay, Kickass Torrents, and Extratorrents.

101.     Upon information and belief, Defendants DOES 1-100 went to the torrent site directly or indirectly via Popcorn Time to download Plaintiffs' copyrighted Works.

102.     Defendant Doe states on the website that "ALL MOVIES ARE PULLED IN FROM THE YIFY MOVIE DATABASE."



*See* Decl. of Joshua J. Lee at ¶ 18.

103.     Defendant Doe states on the website that, "We search for movies uploaded by YTS..."



*See* Decl. of Joshua J. Lee at ¶ 16.

104.     By using a BitTorrent Client such as Popcorn Time, Defendants DOES 1-100 can simply enter words associated with a motion picture to automatically generate a pull down tab

20-023I

below the search bar with a narrowed selection of motion pictures associated with the words and chose one particular motion picture and automatically connect to torrent sites.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

105.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

106.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

107.    Once a peer receives a piece of the computer file, here a piece of one of the copyrighted Works, it starts transmitting that piece to the other peers.

108.    In this way, all of the peers and seeders are working together in what is called a "swarm."

109.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Works.

### 5. The Plaintiffs' Computer Investigator Identified Popcorn Time and IP Addresses as Participants in a Swarm That Was Distributing the Plaintiffs' Copyrighted Works

110.    Popcorn Time distributes and streams copies of Plaintiffs' Works.  *See* Decl. of Stephen M. Bunting at ¶¶ 26-30.

111.    When a subscriber uses Popcorn Times's WATCH NOW button, Popcorn Time streams a copy of the Work to the users from an illegitimate torrent source.   *See Id.* at ¶30 (Figure 11).

112.    When a subscriber uses Popcorn Times's DOWNLOAD button, Popcorn Time transfers a copy of the Work to the user from an illegitimate torrent source.  *See Id.* at ¶¶ 27-30

113.    The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiffs' copyrighted Works.

114.    MEU used forensic software to enable the scanning of P2P networks for the presence of infringing transactions.

115.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

116.    The IP addresses, Unique Hash Number, and hit dates accurately reflect what is contained in the evidence logs, and show that Defendants DOES 1-100 have copied a piece of the Plaintiffs' copyrighted Works as identified by the Unique Hash Number from, for example, IP addresses 104.152.44.26 in Virginia as well as other IP addresses in the US.  *See* Decl. of Arheidt at ¶ 8.

117.    One or more of Defendants DOES 1-100's computers used the IP addresses assigned to Wicked from Voxility and in this District to connect to the investigative server in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

20-023I

118. MEU analyzed each BitTorrent "piece" distributed by the IP addresses and verified that re-assemblage of the pieces using a BitTorrent Client results in fully-playable digital motion pictures of the Works.

119. MEU viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

120. For example, MEU confirmed over 1000 instances of distribution of each of the Works *Angel Has Fallen*, *Hitman's Bodyguard*, *London Has Fallen*, *Mechanic: Resurrection*, *Angel Has Fallen* and *Hellboy* at the IP addresses Voxility assigned to the Wicked Defendants.

***C. Defendants DOES 1-100 knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.***

121. A legitimate file copy of the Works includes copyright management information ("CMI") indicating the title.

122. The initial seeders of the infringing file copies of Plaintiffs' Works added wording to the file titles of the Works to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

123. The initial seeder of the infringing file copies of the Works added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS piracy website.

124. The word YTS is not included in the file title of legitimate copies or streams of the Plaintiff's Works. The initial seeder of the Works altered the title to falsely include the words "YTS" in the CMI.

20-023I

125.     The file copies Defendants DOES 1-100 distributed to other peers in the Swarm included the altered CMI in the file title.

126.     Defendants Doe and DOES 1-100 knew that the torrent source from which they obtained their torrent files was distributing illegal copies of the Works.

127.     Defendants Doe and DOES 1-100 knew that YTS was not the author of Plaintiffs' Works.

128.     The Wicked Defendants, Doe and DOES 1-100 knew that YTS was not a licensed distributor of Plaintiffs' Works.  Indeed, the YTS website includes a warning to this effect.

129.     The Wicked Defendants, Doe and DOES 1-100 knew that the CMI that included YTS in the file names was false.

130.     The Wicked Defendants, Doe and DOES 1-100 knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Works when they distributed the false CMI, altered CMI, or the Works including the false or altered CMI.

131.     Namely, the Wicked Defendants, Defendant Doe and DOES 1-100 knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Works.

132.     Indeed, the Wicked Defendants promote their VPN service as a tool to pirate copyright protected content from the YTS website.

133.     Indeed, Defendant Doe states on the website that the movies are obtained from YTS/YIFY.

134.     By providing the altered CMI to others via Popcorn Time, the Wicked Defendants and Defendant Doe induced, enabled, and facilitated further infringements of the Works.

135.    By providing the altered CMI to others via the Popcorn Time VPN, the Wicked Defendants induced, enabled, and facilitated further infringements of the Works.

136.    By providing the altered CMI to others, Defendants DOES 1-100 induced, enabled, and facilitated further infringements of the Works.

**D. The Wicked Defendants had knowledge that the subscribers were using their Popcorn Time VPN to infringe Plaintiffs' Works and distribute file copies of the Works with altered CMI but failed to take any meaningful action and encouraged said conduct.**

137.    Plaintiffs engaged MEU to generate Notices of infringements ("Notices") styled per 17 U.S.C. §512(c)(3) of the DMCA to be sent to ISPs assigned IP addresses where MEU confirmed infringement of copyright protected content.

138.    Each Notice included at least the name of the copyright owner, the title of the Work, the manner by which it was infringed, the infringing file name which includes the altered CMI, the IP address and port number at where infringement was confirmed and the time of infringement down to the second.

139.    MEU determines the proper abuse contact email address for the ISP assigned the IP addresses at issue from publicly available information from ARIN such as WHOIS records.

140.    Plaintiffs' agent sent the Notices to the abuse contact email address.

141.    MEU relied on publicly available information from ARIN to identify Voxility as the ISP for certain IP addresses at issue.

142.    Voxility is a member of ARIN and receives IP addresses from ARIN.

143.    Voxility is also a member of RIPE and receives IP addresses from RIPE.

144.    Voxility reallocated or reassigned IP addresses it received from ARIN and RIPE to its customer Wicked.

20-023I

145.    Plaintiffs' agent sent hundreds of Notices to Voxility concerning IP addresses associated with confirmed infringing activity of Plaintiffs' Works.

146.    For example, Plaintiffs' agent sent hundreds of Notices to Voxility concerning IP addresses   104.152.44.26;   104.152.45.2;   104.152.45.10;   104.152.44.18;   104.152.45.26; 104.152.45.34; 5.254.46.130; 5.254.46.138; 5.254.46.146; 5.254.46.162; and 5.254.46.170. *See* Decl. of Arheidt at ¶ 8.

147.    Plaintiffs' agent sent over 50 Notices to Voxility concerning IP address 104.152.44.26 (in Virginia) in 2020. *See Id*.

148.    Voxility had allocated IP addresses including the aforementioned to its customer Wicked.

149.    Upon information and belief, other rightsholders had similar Notices sent to Voxility concerning infringing activity at IP addresses assigned to Voxility from ARIN that Voxility had allocated or reassigned to Wicked.

150.    Voxility promptly forwarded these Notices on to their customer Wicked via email.

151.    Counsel for Plaintiffs sent a first letter by certified mail on Sept. 28, 2020 informing Voxility that Plaintiffs' agent had sent hundreds of Notices to Voxility concerning IP addresses that were believed to have been assigned to Voxility's customer Wicked. *See* Exhibit "3".

152.    On December 2, 2020, Voxility informed Wicked that they would block the IP address if Wicked did not take appropriate action.

153.    Wicked failed to take any meaningful action in response to the Notices.

154.    On December 7, 2020, Faouani replied that "We are receiving all abuse emails and acting if there is something we can do."

155.    Voxility terminated Wicked's service on or about January 31, 2021.

### E.   The Wicked Defendants intentionally induce infringements of copyright protected Works, including Plaintiffs' Works and have knowledge of customers' infringements.

156.    The Wicked Defendant actively promote the VPN service for the purpose of movie piracy, including of infringing Plaintiffs' Works.

157.    The Wicked Defendants actively promotes the VPN service as a tool to use the notorious movie piracy application Popcorn Time.

158.    The Wicked Defendants promotes the service under the brand name "Popcorn Time VPN" to be used to "avoid getting into trouble".



*See* Decl. of Joshua J. Lee at ¶ 9.

159.    Wicked blatantly entices and encourages customers to pirate by saying its VPN service can be used to "Be completely anonymous while torrenting on Popcorn Time."

20-023I



*See* Decl. of Joshua J. Lee at ¶ 13.

160.    The Wicked Defendants entered into an agreement with Doe in which the Wicked Defendants' VPN service is promoted on the Popcorn Time website as the "Popcorn Time VPN" and the application itself includes a tool to easily install the VPN service.

161.    When Popcorn Time is launched by the user, a window pops up strongly encouraging the user to buy the Wicked Defendants' Popcorn Time VPN.

20-023I



*See* Decl. of Stephen M. Bunting at ¶ 25 (Figure 1A).

162. Popcorn Time includes the Wicked Defendants' VPN services embedded in the Popcorn Time software and notification of a copyright license grant from VPN.HT

20-023I



*See* Decl. of Stephen M. Bunting at ¶ 32 (Figure 12).

163.    The Wicked Defendants' subscribers such as DOES 1-100 use Popcorn Time exactly as explained and encouraged to them by Wicked – to infringe copyright protected content while logged into Wicked's VPN service so they can conceal their illicit activities.

164.    The Wicked Defendants actively promote their VPN service as a tool to use the notorious movie piracy website YTS.



20-023I

*See* Decl. of Joshua J. Lee at ¶ 12.

165.    The YTS website is known for distributing torrent files of copyright protected motion pictures including Plaintiffs' without a license.



166.    In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that one or more third parties uploaded torrent files of motion pictures to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

167.    YTS is so notorious that the USTR placed the YTS website on a list of examples of Notorious Markets engaged in and facilitating substantial piracy in 2015. *See* USTR, 2014 Out-of-Cycle Review of Notorious Markets, Mar. 5, 2015, pg. 17, Available at https://ustr.gov/sites/default/files/2014%20Notorious%20Markets%20List%20-%20Published_0.pdf [last accessed on March 5, 2021].

20-023I

168.    The Wicked Defendants promotes its VPN service as a tool to engage in massive copyright infringement to entice subscribers to purchase the VPN service.

169.    Based upon The Wicked Defendants' encouragement that its service can be used to "safely" operate piracy apps such as Popcorn Time and visit torrent sites such as YTS, subscribers such as Defendants DOES 1-100 purchase the "Popcorn Time VPN", install piracy apps such as Popcorn Time on their devices and/or visit torrent sites to infringe copyright protected content including Plaintiffs' while using the VPN service.

170.    The Wicked Defendants state without reservation that its VPN service is "P2P friendly" and "You can Bittorrent at will."



*See* Decl. of Joshua J. Lee at ¶ 8.

171.    Defendants DOES 1-100 installed Popcorn Time on their devices so they could watch content in violation of copyright laws (i.e., "free movies").

172.    Defendants DOES 1-100 obtained an IP address from The Wicked Defendants via the VPN service, and used the IP address to download and share copies of copyright protected content including Plaintiffs' by using Popcorn Time as instructed by the Wicked Defendants while concealing their illegal identities.

173.    Wicked knew or had reason to know that its subscribers used Popcorn Time exactly as promoted, resulting in direct infringement of the Copyrights of specific material including Plaintiffs' Works.

**F.  The Wicked Defendants control the conduct of the subscribers.**

174.    The Wicked Defendants can terminate subscribers accounts at any time. For example, the Wicked Defendants state in their terms of service that they will terminate a subscriber account if the subscriber: (1) sends SPAM emails; (2) engages in conduct restricting others from using the service; (3) engages in hacking; and (4) posts hateful conduct.

175.    Upon information and belief, Wicked promptly terminated subscriber accounts when said subscribers failed to pay for the VPN service.

176.    Wicked has the capability to log its subscribers' access to the VPN service but purposefully chooses not to.



*See* Decl. of Joshua J. Lee at ¶ 8.

**G.   The Wicked Defendants profit from the massive piracy conducted by their subscribers.**

177.    The Wicked Defendants encourage subscribers to use its VPN service for piracy.

178.    The Wicked Defendants market the VPN service as "Popcorn Time VPN".

179.    The Wicked Defendants encourage Popcorn Time users to purchase its VPN service so that they can pirate copyright protected content while "avoid[ing] getting in trouble":

20-023I



*See* Decl. of Joshua J. Lee at ¶ 9.

180.    The Wicked Defendants included a feature in the Popcorn Time that allows users to automatically sign up for Wicked's "Popcorn Time VPN" while using the app:



20-023I

*See* Decl. of Joshua J. Lee at ¶ 10.

181.     The Wicked Defendants provide hosting and support for Doe's Popcorn Time in exchange for Doe including their VPN service in Popcorn Time and promoting their VPN service to users of Popcorn Time.

182.     Doe states in the Frequently Asked Questions section of its website that its service "may be illegal in your country. Use at your own risk.":



183.     Doe also warns that users of its Popcorn Time will be seeding and distributing copies of copyright protected Works while they use Popcorn Time.



*See* Decl. of Joshua J. Lee at ¶ 16.

184.     Doe takes advantage of its users' fears by ensuring them that they can use Popcorn Time "safely and anonymously" if they use the Wicked Defendants' VPN service, the so called Popcorn Time VPN.

20-023I



*See* Decl. of Joshua J. Lee at ¶ 16.

185.    Clicking the link Popcorn Time VPN brings the users to the Wicked Defendants' website where they can purchase the VPN service.

186.    Accordingly, the Wicked Defendants and Doe profit worldwide from users of Popcorn Time who wish to pirate copyright protected content including Plaintiffs' "safely and anonymously".

### H. The Wicked Defendants do not have a safe harbor from liability.

187.    As part of the DMCA, Congress created a safe harbor that limits the liability of ISPs for copyright infringement when their involvement is limited to, among other things, "transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(a). To benefit from this safe harbor, however, an ISP must demonstrate that it "has adopted and reasonably implemented ... a policy that provides for the termination in appropriate circumstances of subscribers ... who are repeat infringers." 17 U.S.C. § 512(i)(1)(A)

188.    The Wicked Defendants have failed to terminate any repeat infringers and/or take any meaningful actions against its subscribers in response to these Notices consistent with a reasonably implemented policy ("policy") for termination of subscribers and account holders of the service provider's system or network who are repeat infringers necessary to support a safe harbor from liability.

20-023I

189.   As detailed in a letter Plaintiffs sent Voxility describing infringements on September 28, 2020, MEU confirmed over 140 instances of distribution of Plaintiffs' Works thereafter from only the top five infringing IP addresses.  *See* Exhibit "3"

190.   When Voxility informed Wicked and Faouani that it would terminate its IP addresses if it did not take action, Wicked and Faouani made clear that they intended to do nothing.

191.   Specifically, Plaintiffs described in detail that the subscriber of IP address 104.152.44.26 ("'26 IP address") has "a total of over 16,000 instances of infringement…including nearly 1000 instances just in 2020 alone." *See* Exhibits "3" and "4".

192.   Although Wicked purports to have a policy of terminating repeat infringers, Wicked also plainly states that it is "P2P friendly", and "We don't restrict any usage."  https://vpn.ht/buy-vpn:



*See* Decl. of Joshua J. Lee at ¶ 8.

193.   The Wicked Defendants' conduct renders them ineligible for safe harbor immunity from copyright liability under the DMCA.

194.   Congress also created a safe harbor for service providers for information residing on systems at the direction of users.  *See* 17 U.S.C. § 512(c)(1).

195.    The Wicked Defendants fail to qualify for this safe harbor because they had knowledge that the material (i.e, Popcorn Time) or an activity using the material on its system or network is infringing.

196.    Wicked also fails to qualify for this safe harbor because Wicked and VPN.HT have failed to designate and register an agent with the Copyright Office as provided by 17 U.S.C. § 512(c)(2) including up to now.

### I. The Wicked Defendants and Doe infringe Plaintiff 42's registered Trademark

197.    Notwithstanding Plaintiff 42's established rights in the trademark Popcorn Time, the Wicked Defendants and Doe adopted and used the confusingly similar and/or identical mark Popcorn Time in interstate commerce in connection with the distribution and/or streaming of unlicensed copyright protected content after 42 first adopted the trademark.

198.    The Wicked Defendants and Doe operate the website popcorntime.app that includes the Popcorn Time mark as a spurious designation that is identical with, or substantially indistinguishable from Plaintiff 42's registered Popcorn Time trademark.

199.    The Wicked Defendants provide the infrastructure such as Internet hosting for Doe's website and Popcorn Time.

200.    The Wicked Defendants and Doe stream and distribute unlicensed copyright protected content from similar relevant trade channels as Plaintiff 42 streams and distributes licensed content.

201.    Plaintiff 42's registered trademark is depicted below (see Exhibit "2" for a true copy of the registration):

20-023I

# Popcorn Time

202.    Defendant Doe uses the Popcorn Time mark as it appears on their website popcorntime.app:



*See* Decl. of Joshua J. Lee at ¶ 15.

203.    Defendants begin promoting and distributing Popcorn Time in the US from the US top level domain APP after 42 begin using the trademark Popcorn Time in the United States and after Plaintiff 42 registered the trademark in the United States.

20-023I

204.    Particularly, Defendants begin operating the website popcorntime.app on February 1, 2020, after Plaintiff 42 registered the trademark Popcorn Time on January 14, 2020 and begin using the trademark on Nov. 29, 2019.

205.    Any prior use of the mark Popcorn Time by Defendants is ineligible for senior rights because such use was in a foreign jurisdiction not subject to regulation by US Congress.

206.    Any prior use of the mark Popcorn Time by Defendants is ineligible for senior rights because such use was used for criminal activities and thus unlawful commerce.

***J. The Wicked Defendants and Does' infringements of Plaintiff 42's registered Trademark are willful as Doe breached an agreement with Plaintiff 42 concerning the trademark.***

207.    The Wicked Defendants and Doe continue to operate the website popcorntime.app after receiving actual notice of Plaintiff 42's registered trademark from Plaintiff 42's counsel on or about April 3, 2020.

208.    Plaintiff 42 made a complaint to Twitter concerning Doe's use of an infringing Twitter handle.

209.    Twitter informed Doe that it would be suspending Doe's Twitter account because of trademark infringement on or about April 3, 2020.

210.    Doe contacted Plaintiff 42's counsel by email to discuss the issue of the Twitter account.  In the email exchange between Plaintiff 42 and Doe to discuss an appropriate amount to be paid to Plaintiff 42, Doe stated that "All our infrastructure is hosted and sponsored by VPN.ht in exchange of showing their VPN app".

**Kerry Culpepper**

| | |
|---|---|
| **From:** | Popcorn Time <hello@popcorntime.sh> |
| **Sent:** | Friday, April 3, 2020 8:48 AM |
| **To:** | Kerry Culpepper |
| **Subject:** | Re: Submission from the website form |

All our infrastructure is hosted and sponsored by VPN.ht in exchange of showing their VPN app
for the rest all our software is opensource https://github.com/popcorn-official/popcorn-desktop and developed by
everyone for free

Le ven. 3 avr. 2020 à 19:45, Popcorn Time <hello@popcorntime.sh> a écrit :
We earn nothing its an open source software without ads

Le ven. 3 avr. 2020 à 19:44, Kerry Culpepper <kculpepper@culpepperip.com> a écrit :
It is based on an average of how much you earn monthly from the websites and the apps. Please let me know the
estimate.

211.    To resolve the dispute over the Twitter account, Doe agreed to (i) write an email to VPN.HT discussing the infrastructure arrangement and show Plaintiff 42's counsel VPN.HT's reply as proof of the arrangement, (ii) not to operate the website and Popcorn Time as a peer-to-peer file sharing software in violation of U.S. copyright law, (iii) to remove all films of the Copyright Plaintiffs from Popcorn time, and  (iv) to make a payment of Four Thousand Nine Hundred dollars to Plaintiff 42.

212.    Upon information and belief, the Wicked Defendants told Doe not to comply with the terms of the agreement.

213.    The Wicked Defendants and Doe continue to operate Popcorn Time as a peer-to-peer file sharing software in violation of U.S. copyright law despite Doe agreeing with Plaintiff 42's counsel to cease doing so to resolve the dispute over the Twitter account.

214.    The Wicked Defendants and Doe continue to distribute Popcorn Time as a peer-to-peer software application despite agreeing with Plaintiff 42's counsel to cease doing so to resolve the dispute over the Twitter account.

20-023I

215.    Doe failed to make the payment to Plaintiff 42 despite agreeing to do so to resolve the dispute over the Twitter account.

216.    The Wicked Defendants continue to provide infrastructure support for Doe's website and Popcorn Time despite being informed by Doe of Plaintiff 42's trademark claims.

## VII. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement against all Defendants)

217.    Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

218.    Copyright Plaintiffs are the copyright owners of the Works, each of which contains an original work of authorship.

219.    Defendants DOES 1-100 copied the constituent elements of these copyright-protected Works.

220.    By participating in the BitTorrent swarms with others, Defendants DOES 1-100 distributed at least a piece of each of the copyright protected Works to others.

221.    The Wicked Defendants distribute said at least a piece over their network with knowledge that DOES 1-100 are engaging in infringing activity.

222.    Doe connects DOES 1-100 to torrent sources to provide said at least a piece.

223.    The Wicked Defendants and Doe distribute said at least a piece for Defendants DOES 1-100 with knowledge that said at least a piece infringes Plaintiffs' rights.

224.    The Wicked Defendants and Doe stream Plaintiffs' Works for Popcorn Time users from torrent sources with knowledge that said sources infringe Plaintiffs' rights.

225.    Plaintiffs did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute or perform their Works.

226. As a result of the foregoing, Defendants DOES 1-100 violated the Plaintiffs' exclusive right to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

227. As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

228. As a result of the foregoing, the Wicked Defendants and Doe violated the Plaintiffs' exclusive rights to publicly perform the Works, in violation of 17 U.S.C. §§ 106(4) and 501.

229. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

230. The Copyright Plaintiffs have suffered damages that were proximately caused by the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

231. Wicked is merely the alter ego for Faouani and thus Faouani is liable for the acts of Wicked.

232. VPN.HT is merely the alter ego for Faouani and thus Faouani is liable for the acts of VPN.HT.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement by Intentional Inducement against the Wicked Defendants and Doe)

233. Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

234. The Wicked Defendants and Doe intentionally induced the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Copyright Plaintiffs' exclusive right to reproduce, publicly perform, and distribute copies of their Copyrighted Works.

20-023I

235.     As instructed and encouraged by the Wicked Defendants and Doe, subscribers such as Defendants DOES 1-100 purchase and install the Wicked Defendants Popcorn Time VPN to conceal their identities while using Popcorn Time to engage in movie piracy.

236.     As instructed and encouraged by the Wicked Defendants and Doe, subscribers such as Defendants DOES 1-100 install Doe's piracy app Popcorn Time on their devices while assigned IP addresses by the Wicked Defendants' VPN services to conceal their identities.

237.     The Wicked Defendants' subscribers use Popcorn Time to connect to sources that publicly perform and/or distribute copies of Plaintiffs' Copyrighted Works while anonymously connected to the Internet by the Wicked Defendants' so called Popcorn Time VPN.

238.     The Wicked Defendants and Doe induce direct infringement of Plaintiffs' Works by encouraging their subscribers to use movie piracy apps such as Popcorn Time that facilitate, enable, and create direct links between their customers and infringing sources, and by actively inducing, encouraging, and promoting the VPN service Popcorn Time VPN as a means to "safely" use movie piracy applications for blatant copyright infringement by assuring customers that their identification information will be concealed.

239.     The Wicked Defendants and Doe's intentional inducement of the infringement of Plaintiffs' rights in their Copyrighted Works constitutes a separate and distinct act of infringement.

240.     Wicked is merely the alter ego for Faouani and thus Faouani is liable for the acts of Wicked.

241.     VPN.HT is merely the alter ego for Faouani and thus Faouani is liable for the acts of VPN.HT.

20-023I

## IX. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution against all Defendants)

242.   Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

243.   By participating in the BitTorrent swarms with others, Defendants DOES 1-100 induced, caused, or materially contributed to the infringing conduct of Plaintiffs' copyright protected Works by others.

244.   Copyright Plaintiffs did not authorize, permit, or provide consent to the Defendants DOES 1-100 inducing, causing, or materially contributing to the infringing conduct of others.

245.   Defendants DOES 1-100 knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Copyright Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original.  Indeed, Defendants DOES 1-100 directly participated in and therefore materially contributed to others' infringing activities.

246.   Through their conduct, the Wicked Defendants and DOE knowingly and intentionally induced, enticed, persuaded, and caused their subscribers to infringe Copyright Plaintiffs' Copyrighted Works and continue to do so in violation of Copyright Plaintiffs' copyrights.

247.   Through its activities, the Wicked Defendants and DOE knowingly and intentionally take steps that are substantially certain to result in direct infringement of Plaintiffs' Copyrighted Works, and that have resulted in such direct infringement in violation of Plaintiffs' copyrights.

20-023I

248.     Despite the Wicked Defendants and DOE's knowledge that their subscribers are using their VPN service and Popcorn Time to engage in widescale copyright infringements, the Wicked Defendants and DOE have failed to take reasonable steps to minimize the infringing capabilities of their services.

249.     Not only have the Wicked Defendants and DOE failed to take reasonable steps to minimize the infringing capabilities of their services, the Wicked Defendants and DOE actively promote their VPN service as "Popcorn Time VPN", the means to safely infringe Copyright protected Works, including Plaintiffs' using Popcorn Time.

250.     Despite the Wicked Defendants' knowledge that DOE is using its service to host and support Popcorn Time to engage in widescale copyright infringement of Plaintiffs' Works, the Wicked Defendants failed to take reasonable steps to minimize the infringing capabilities of its service.

251.     The Wicked Defendants are liable as a contributory copyright infringer for the infringing acts of DOE and subscribers of its VPN service.  The Wicked Defendants had actual and constructive knowledge of the infringing activity of its subscribers and of DOE.  The Wicked Defendants knowingly caused and otherwise materially contributed to these unauthorized reproductions and distributions of Plaintiffs' Works from DOE and its subscribers.

252.     Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

253.     By engaging in the contributory infringement alleged in this First Amended Complaint, the Wicked Defendants and Doe deprived not only the producers of the Works from income that could have been derived when the respective films were shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film,

numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

254.    Wicked is merely the alter ego for Faouani and thus Faouani is liable for the acts of Wicked.

255.    VPN.HT is merely the alter ego for Faouani and thus Faouani is liable for the acts of VPN.HT.

## X. FOURTH CLAIM FOR RELIEF
### (Vicarious Infringement against the Wicked Defendants)

256.    Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

257.    The Wicked Defendants are vicariously liable for the infringing acts of its subscribers and DOE.

258.    The Wicked Defendants have the right and ability to supervise and control the copyright infringements that occur through the use of their service, and at all relevant times have derived a direct financial benefit from the infringements complained of herein.

259.    The Wicked Defendants have refused to take any meaningful action to prevent the widespread infringement by its subscribers. Indeed, the ability of subscribers to use the Wicked Defendants' VPN Service to access Popcorn Time to infringe Plaintiffs' Works while concealing their activities acts as a powerful draw for users of the VPN Service, who use that service exactly as encouraged by Wicked to download and distribute copies of Plaintiffs' Works.

260.    Wicked and VPN.HT are merely the alter egos for Faouani, and thus Faouani is liable for the acts of Wicked and VPN.HT.

261.    Faouani, VPN.HT and Wicked are therefore vicariously liable for the unauthorized reproduction, distribution, and public performance of Plaintiffs' Works.

20-023I

## XI. FIFTH CLAIM FOR RELIEF
### (Digital Millennium Copyright Act Violations against DOES 1-100)

262.    Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

263.    Defendants DOES 1-100 knowingly and with the intent to induce, enable, facilitate, and/or conceal infringement of the copyright protected Works distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

264.    Defendants DOES 1-100, without the authority of Copyright Plaintiffs or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of the Copyright Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of Plaintiffs' Copyright protected Works in violation of 17 U.S.C. § 1202(b)(2).

265.    Defendants DOES 1-100, without the authority of the Copyright Plaintiffs or the law, distributed Plaintiffs' Copyright protected Works knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

266.    Particularly, the Defendants DOES 1-100 knew that the CMI in the file names of the pieces of the Work had been altered to include the wording "YTS".

267.    Particularly, the Defendants DOES 1-100 distributed the file names that included CMI that had been altered to include the wording "YTS".

268.    Defendants DOES 1-100 knew that the wording "YTS" originated from notorious movie piracy website.

20-023I

269.    Defendants DOES 1-100's acts constitute violations under the Digital Millennium Copyright Act ("DMCA violation"), 17 U.S.C. § 1202.

270.    Copyright Plaintiffs are entitled to an injunction to prevent Defendants DOES 1-100 from engaging in and/or contributing to further violations of 17 U.S.C. § 1202.

271.    Copyright Plaintiffs are entitled to recover from Defendants DOES 1-100 the actual damages suffered and any profits Defendants DOES 1-100 have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Copyright Plaintiffs are currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

272.    Copyright Plaintiffs are entitled to elect to recover from Defendants DOES 1-100 statutory damages for their violations of 17 U.S.C. § 1202.

273.     Copyright Plaintiffs are further entitled to costs and reasonable attorneys' fees.

## XII. SIXTH CLAIM FOR RELIEF
### (Secondary Liability for Digital Millennium Copyright Act Violations against the Wicked Defendants and Doe)

274.    Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

275.    Through their conduct, the Wicked Defendants and Doe knowingly and intentionally induced, enticed, persuaded, and caused their subscribers to commit DMCA violations.

276.    Through their activities, the Wicked Defendants and Doe knowingly and intentionally take or took steps that are substantially certain to result in their subscribers committing DMCA violations, and that have resulted in DMCA violations.

277.    Through their activities, the Wicked Defendants and Doe knowingly and intentionally take or took steps that are substantially certain to result in their subscribers committing DMCA violations, and that have resulted in DMCA violations.

278.    The Wicked Defendants and Doe encourage subscribers to access torrent files for copying copyright-protected Works from notorious movie piracy websites such the YTS website.

279.    The Wicked Defendants and Doe encourage subscribers to use Doe's Popcorn Time for copying copyright-protected Works from notorious torrent websites such as the YTS website and sharing illicit file copies with altered CMI using the BitTorrent protocol.

280.    Despite the Wicked Defendants and Doe's knowledge that their subscribers use the VPN service to commit DMCA violations, Wicked and Doe have failed to take reasonable steps to minimize the capabilities of the service to facilitate DMCA violations.

281.    The Wicked Defendants and Doe are secondarily liable for the DMCA violations of the Wicked Defendants' subscribers. The Wicked Defendants and Doe have actual and constructive knowledge of subscribers' DMCA violations. The Wicked Defendants and Doe knowingly caused and otherwise materially contributed to these DMCA violations.

282.    The Wicked Defendants and Doe are vicariously liable for the DMCA violations of their subscribers. The Wicked Defendants and Doe have the right and ability to supervise and control the DMCA violations that occur through the use of their service, and at all relevant times have derived a direct financial benefit from the DMCA violations complained of herein. The Wicked Defendants and Doe have refused to take any meaningful action to prevent the widespread DMCA violations by its subscribers.

283.    The ability of subscribers to access torrent sources such as the YTS website and Popcorn Time that the Wicked Defendants promote, and to obtain file copies of the Works with

48

altered CMI and distribute said copies while concealing their activities, acts as a powerful draw for users of the VPN service, who use that service exactly as encouraged by the Wicked Defendants to commit DMCA violations. The Wicked Defendants are therefore vicariously liable for the DMCA violations.

284.    The ability of Popcorn Time users to access torrent sources such as the YTS website that Defendant Doe actual promotes and automatically links users to for obtaining the file copies of the Works with altered CMI and distribute said copies, acts as a powerful draw for users of Popcorn Time, who use that service exactly as encouraged by Doe to commit DMCA violations. Doe is therefore vicariously liable for the DMCA violations.

285.    Wicked and VPN.HT are merely the alter egos for Faouani, and thus Faouani is liable for the acts of Wicked and VPN.HT.

286.    Faouani, VPN.HT and Wicked are therefore vicariously liable for the unauthorized reproduction, distribution, and public performance of Plaintiffs' Works.

287.    Copyright Plaintiffs are entitled to an injunction to prevent Defendants from contributing to further violations of 17 U.S.C. § 1202.

288.    Copyright Plaintiffs are entitled to recover from Defendants the actual damages suffered by Plaintiffs and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

289.    Copyright Plaintiffs are entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

290.     Copyright Plaintiffs are further entitled to costs and reasonable attorneys' fees.

20-023I

## XIII.  SEVENTH CLAIM FOR RELIE
### (Application for Injunctive Relief based upon Contributory Infringement against the Wicked Defendants)

291.    Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

292.    The Wicked Defendants have actual knowledge of their users' infringements of Plaintiffs' exclusive rights under the Copyright Act by accessing notorious piracy websites that are of foreign origin. Indeed, the Wicked Defendants promote some of these notorious piracy websites.

293.    Despite having said actual knowledge, the Wicked Defendants continue to provide services to their users.

294.    The Wicked Defendants' actions of providing transmission, routing, or connections for said copies of the Works to their users are a direct and proximate cause of the infringements of Plaintiffs' Works.

295.    The Wicked Defendants had actual or constructive knowledge of infringement of Plaintiffs' exclusive rights under the Copyright Act by their users. The Wicked Defendants knowingly and materially contributed to such infringing activity.

296.    As a direct and proximate result of the infringement to which the Wicked Defendants' knowingly and materially contribute and contributed, Copyright Plaintiffs are entitled to injunctive or other equitable relief as provided by 17 U.S.C. §§ 512(j)(1)(A) and (B) including but not limited to an order restraining the Wicked Defendants' from providing access to infringing material or activity residing at movie piracy websites including but not limited to: (a) YTS; (b) Piratebay; (c) Rarbg; (d) 1337x; (e) Fmovies; (f) Cimaclub; (g) Phinmoi; (h) Rapidgator; (i)

Rutracker; (j) Torrentz2; (k) Uploaded; and (l) Popcorn Time and/or taking reasonable steps to block access to said movie piracy websites.

## XIV. EIGHTH CLAIM FOR RELIEF
### (Trademark Infringement against the Wicked Defendants and Doe)

297.    Plaintiff 42 re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

298.    The Wicked Defendants and Doe have infringed Plaintiff 42's trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

299.    Plaintiff 42 has distributed and streamed licensed content in United States commerce under the Popcorn Time trademark since at least November 29, 2019.  It has used the Popcorn Time trademark continuously in United States commerce since that time.

300.    Without Plaintiff 42's consent, the Wicked Defendants and Doe have used and continue to use the infringing Popcorn Time mark in connection with the sale, offering for sale, distribution and advertising of goods and/or services at least on the website popcorntime.app in the United States.

301.    The Wicked Defendants and Doe have engaged in their infringing activity despite having actual notice of Plaintiff 42's federal registration rights under 15 U.S.C. § 1072 and actual knowledge of Plaintiff 42's use of the Popcorn Time mark.

302.    Plaintiff 42 has requested in writing that Defendant Doe cease and desist from their infringing actions, but the Wicked Defendants and Doe have failed to comply with Plaintiff 42's demands.

303.    The Wicked Defendants and Doe's actions are likely to mislead the public into concluding that their goods and or services originate with or are authorized by Plaintiff 42, which will damage both Plaintiff 42 and the public. Plaintiff 42 has no control over the quality of goods

20-023I

and services sold by the Wicked Defendants and Doe and because of the source confusion caused by the Wicked Defendants and Doe, Plaintiff 42 has lost control over its valuable goodwill.

304.     Upon information and belief, the Wicked Defendants and Doe have advertised and offered its goods and services for sale using the Popcorn Time mark with the intention of misleading, deceiving or confusing consumers as to the origin of its goods and of trading on Plaintiff 42's reputation and goodwill. the Wicked Defendants' and Doe's use of the YTS mark constitutes willful, deliberate and intentional trademark infringement.

305.     As a direct and proximate result of the Wicked Defendants' and Doe's trademark infringement, Plaintiff 42 has suffered and will continue to suffer irreparable loss of income, profits and goodwill and the Wicked Defendants and Doe have and will continue to unfairly acquire income, profits and goodwill.

306.     Wicked Defendants' and Doe's acts of infringement will cause further irreparable injury to Plaintiff 42 if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

307.     Wicked Defendants' and Doe's acts of infringement associate Plaintiff 42's trademark Popcorn Time with rampant illegal movie piracy and thus hinder Plaintiff 42's ability to establish legitimate business relationships with other content creators.

308.     Wicked and VPN.HT are merely the alter egos for Faouani, and thus Faouani is liable for the acts of Wicked and VPN.HT.

## XV. NINTH CLAIM FOR RELIEF
### (Federal Unfair Competition against the Wicked Defendants and Doe)

309.     Plaintiff 42 re-alleges and incorporate by reference the allegations contained in each of the foregoing paragraphs.

20-023I

310.    The Wicked Defendants and Doe engage in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

311.    The Wicked Defendants' and Doe's unauthorized marketing and sale of their products in interstate commerce using Plaintiff 42's Popcorn Time trademark constitutes a use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' products and/or services as originating from or connected with Plaintiff 42, and constitutes the use of false descriptions or representations in interstate commerce. The actions of the Wicked Defendants and Doe as alleged herein constitute intentional, willful, knowing and deliberate unfair competition.

312.    The Wicked Defendants' and Doe's actions constitute federal unfair competition and violate 15 U.S.C. § 1125(a).

313.    As a direct and proximate result of Wicked Defendants' and Doe's unfair competition, Plaintiff 42 has suffered and will continue to suffer irreparable loss of income, profits and goodwill and Wicked Defendants and Doe have and will continue to unfairly acquire income, profits and goodwill.

314.    Wicked Defendants' and Doe's acts of unfair competition will cause further irreparable injury to Plaintiff 42 if they are not restrained by this Court from further violation of Plaintiff 42's rights. Plaintiff 42 has no adequate remedy at law.

### XVI. TENTH CLAIM FOR RELIEF
### (Breach of Contract against Defendant Doe)

315.    Plaintiff 42 re-alleges and incorporate by reference the allegations contained in each of the foregoing paragraphs.

316.    On or about April 3, 2020, Plaintiff 42 and Defendant Doe entered into a memorandum of agreement ("Agreement") to resolve a trademark dispute.

20-023I

317.   The Agreement is a valid, binding and enforceable contract.

318.   Plaintiff 42 relied upon this contract to its detriment.

319.   Defendant Doe breached the Agreement by continuing to distribute Popcorn Time as a peer-to-peer sharing software in violation of U.S. Copyright law.

320.   Defendant Doe breached the Agreement by failing to pay Plaintiff 42 the total of $4900.

321.   Defendant Doe further breached the Agreement by failing to provide the proof of its arrangement in which the Wicked Defendants host and sponsor the infrastructure of Doe's Popcorn Time in exchange for Doe promoting the Wicked Defendants' VPN service.

322.   Defendant Doe's obligation to make the agreed upon payment and provide the declaration was not excused or relieved.

323.   Defendant Doe's breaches of the agreement were substantial failures to perform that are material.

324.   Plaintiff 42 has been damaged as result of Defendant Doe's breach of contract in an amount to be proven at trial and is entitled to injunctive relief to prevent any further breaches and damages.

325.   Plaintiff 42 is also entitled to attorneys' fees arising from Defendant Doe's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin Defendants from continuing to infringe the Copyright Plaintiffs' copyrighted Works;

20-023I

(B) permanently enjoin the Wicked Defendants and Doe from contributing to infringement of the Copyright Plaintiffs' Works by promoting and encouraging their subscribers to use Popcorn Time and to use the VPN service as a means to conceal use of Popcorn Time and movie piracy websites such as the YTS website for pirating Plaintiffs' Works;

(C) order the Wicked Defendants to block subscribers from accessing notorious piracy websites of foreign origin that are listed in the annual trade report of Notorious Foreign Markets published by the United States Government on the VPN service and any other networks under their control;

(D) order the Wicked Defendants to adopt a policy that provides for the prompt termination of subscribers that engage in repeat infringements of copyright protected Works;

(F) award the Copyright Plaintiffs actual damages and Defendants' profits in such amount as may be found; alternatively, at Copyright Plaintiffs' election, for maximum statutory damages of \$150,000/Work pursuant to 17 U.S.C. § 504-(a) and (c) against (i) each of Defendant DOES 1-100; and (ii) against Doe, Faouani, VPN.HT and Wicked jointly and severally;

(G) award the Copyright Plaintiffs their actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at the Copyright Plaintiffs' election, for maximum statutory damages of \$25,000 for each DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202 against (i) each of Defendant DOES 1-100; and (ii) against Doe, Faouani, VPN.HT and Wicked jointly and severally;

(H) award the Copyright Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 against Defendants;

(I) Enter a judgment that Plaintiff 42's registered trademark Popcorn Time has been and continues to be infringed by the Wicked Defendants and Doe in violation of 15 U.S.C. § 1114(1);

(J) Enter a judgment that the Wicked Defendants' and Doe's use of the Popcorn Time mark on a US domain constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a);

(K) Permanently enjoin and restrain the Wicked Defendants and Doe and each of their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from using the trademark Popcorn Time, alone or in combination with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute or identify products or services where that designation would create a likelihood of confusion, mistake or deception with Plaintiff 42's Popcorn Time mark;

(L) Order the Defendants Wicked, Doe, VPN.HT and Faouani jointly and severally, to pay statutory damages of $2,000,000 pursuant to 15 U.S. Code § 1117(c)(2) for willful infringement of Plaintiff 42's Popcorn Time trademark;

(M) order the domain name register Google to transfer the domain "POPCORNTIME.APP" to Plaintiff 42;

(N) award Plaintiff 42 damages and reasonable attorneys' fees and costs against Defendant Doe for its breach of contract;

(O) Order pursuant to 28 U.S.C §1651(a) that, Cloudflare, Google and any other service provider cease providing service for Defendants Doe, Wicked, VPN.HT and Faouani's websites and software apps and that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage in the aforementioned infringements; and

20-023I

(P) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demand a trial by jury on all issues properly triable by jury.

DATED: Reston, Virginia, March 30, 2021.

Respectfully submitted,


 /s/ Timothy B. Hyland
Timothy B. Hyland
Virginia Bar No. 31163
Counsel for Plaintiffs
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA 20190
Tel.: (703) 956-3566
Fax: (703) 935-0349
Email: thyland@hylandpllc.com

Kerry S. Culpepper, *pro hac vice*
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
kculpepper@culpepperip.com

20-023I