**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MILLENNIUM FUNDING, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:21-cv-00282-RDA-TCB |
| WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC,  MILLENNIUM IP, INC., VOLTAGE HOLDINGS, LLC, KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., and WONDER ONE, LLC ("Copyright Plaintiffs"), and 42 VENTURES, LLC ("Plaintiff 42"), by and through their counsel, submit this Memorandum of Law in Support of their *Ex Parte* Motion for a Temporary Restraining Order, including a temporary asset restraint and expedited discovery pursuant to 17 U.S.C. § 502(a), 15 U.S.C. §1116 and Fed. R, Civ. P. 65.

As explained below, Defendants WICKED TECHNOLOGY LIMITED and VPN.HT Limited are Hong Kong entities controlled by the Algerian national Defendant MOHAMED AMINE FAOUANI. Defendant MOHAMED AMINE FAOUANI has already dissolved a previous Belizean iteration of VPN.HT Limited and reorganized it in Hong Kong when faced with

1

a civil lawsuit in Canada. MOHAMED AMINE FAOUANI continues to provide inaccurate information (such as that of the dissolved Belize entity) of VPN.HT as his public information in sources such as WHOIS records. Defendant MOHAMED AMINE FAOUANI has shown that he has the means and the ability to transfer his and his alter ego entities' assets from Paypal to outside of this Court's jurisdictional reach if he learns of this motion. Accordingly, *ex parte* filing is warranted in this case in the interest of justice.

## I. <u>INTRODUCTION</u>

Copyright Plaintiffs and Plaintiff 42 filed a First Amended Complaint ("FAC") seeking injunctive relief and damages against Defendants WICKED TECHNOLOGY LIMITED ("Wicked"), VPN.HT Limited ("VPN.HT"), MOHAMED AMINE FAOUANI ("Faouani") (Wicked, VPN.HT and Faouani referred to collectively as the "Wicked Defendants"), and JOHN OR JANE DOE d/b/a POPCORNTIME.APP ("Doe"), among others, for direct copyright infringement, contributory copyright infringement, vicarious infringement, Digital Millennium Copyright Act ("DMCA") violations, trademark infringement, federal unfair competition and breach of contract.

Copyright Plaintiffs are the owners of the copyrights of popular motion pictures ("Works") currently available for sale online and in brick and mortar retail stores. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, and Angela Basset, among others. Copyright Plaintiffs invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. Massive piracy of these motion pictures on peer-to-peer ("P2P") networks utilized by

software applications such as Doe's Popcorn Time have hindered this opportunity.  The willful failure of service providers such as the Wicked Defendants to take any action despite clear notice that their customers are using Popcorn Time and other P2P applications to engage in widespread copyright infringement further hinders this opportunity.

Plaintiff 42 is a limited liability company organized under the laws of Hawaii and having its principal place of business in Kailua Kona, Hawaii. Plaintiff 42 distributes and streams licensed content to the public from websites and mobile phone apps.

The Wicked Defendants provide a Virtual Private Network ("VPN") service under the name VPN.HT.  Wicked and VPN.HT are each a private share limited companies organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong").  The Algerian national Faouani is the sole director of Wicked and VPN.HT and apparently the sole shareholder.  Faouani has provided at least three different addresses in three different countries (Belize, United Arab Emirate and Hong Kong) for his entities and himself.

A VPN is a type of Internet Service for transmitting, routing, and/or providing connections for said transmitting and routing, through a network that provides access to the Internet.  A conventional Internet Service Provider ("ISP") will assign its subscriber an Internet Protocol ("IP") address and log the subscriber's activities on the Internet while using the assigned IP address.  In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic. A VPN provider often receives IP addresses and colocation services from a larger data center such as Voxility.  The Wicked Defendants describe their VPN service as a tool to "Fake a location" and use the brand name "Popcorn Time VPN" to

promote it as a tool that can be used to pirate copyright protected content without "getting into trouble."

As alleged in the FAC, the Wicked Defendants and Doe operate and distribute "Popcorn Time" – a piracy software application so notorious that the United States Trade Representative ("USTR") placed it on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* FAC at ¶86 (citing USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26). Particularly, the Wicked Defendants host the Popcorn Time website and application on their servers (leased from the Virginia company Voxility) in exchange for Doe promoting the Wicked Defendants' VPN service as "the Popcorn Time VPN" and including a feature in Popcorn Time that allows users to seamlessly install the Wicked Defendants' VPN service while pirating content. Doe and the Wicked Defendants knowingly and intentionally advertise and promote the VPN service for the purpose of using Popcorn Time to infringe copyright protected subject matter, including Plaintiffs', without getting caught.

Plaintiffs' agent sent hundreds of notices of infringements to Voxility concerning infringements of their Works at IP addresses Voxility had assigned to the Wicked Defendants. Voxility forwarded these notices on to the Wicked Defendants but they were completely ignored.

The Copyright Plaintiffs are overwhelmingly likely to prevail on the merits on their claims of contributory infringement by intentional inducement. The Supreme Court's unanimous decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913 (2005), makes clear that where, as here, a defendant distributes a product "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement," the defendant "is liable for the resulting acts of infringement by third parties." *Id.* at 936-37. The Wicked Defendants and Doe promote and distribute the notorious piracy application Popcorn Time

for pirating content. The Wicked Defendants and Doe promote VPN.HT under the brand name "The Popcorn Time VPN" as an essential tool to use Popcorn Time to pirate copyright protected works, including that of the Copyright Plaintiffs, without getting caught.  The Wicked Defendants' and Doe's subscribers use Popcorn Time and the so-called Popcorn Time VPN exactly as instructed by the Wicked Defendants and Doe – to pirate copyright protected works without getting caught.

The Copyright Plaintiffs are also overwhelmingly likely to prevail on the merits on their claims of contributory infringement based upon Doe and the Wicked Defendants material contribution to their subscribers' direct infringements. A contributory infringer is one who, (1) "with knowledge of the infringing activity," (2) "induces, causes or materially contributes to the infringing conduct of another." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quoting *Gershwin Publ'g v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971).  The Wicked Defendants and Doe provide the means (Popcorn Time) for their subscribers to engage in rampant copyright infringement. The Wicked Defendants further had knowledge of their subscribers' infringements from the over 400 Notices Plaintiffs' agent sent to Voxility that were forwarded on to Wicked.  Wicked continued to provide its VPN service for its subscribers despite having such knowledge. Indeed, Wicked promotes its VPN service as the tool for its subscribers to use Popcorn Time without getting caught.

Plaintiff 42 is overwhelmingly likely to prevail on the merits of its claims of trademark infringement against at least Doe.  Doe begin using Plaintiff 42's Popcorn Time trademark on the US top-level domain .APP in February of 2020 *after* Plaintiff 42 had registered the trademark in Jan. 14, 2020 and *after* Plaintiff 42 begin using the mark in commerce in the US on Nov. 29, 2019. Doe and Plaintiff 42 operate in exactly the same channels (websites and software apps) and

distribute similar goods (movies and shows), albeit Plaintiff 42 distributes and streams licensed content while Doe distributes and streams pirated content including that of the copyright holders.

Plaintiffs respectfully request that this Court grant them a Temporary Asset Restraint and Expedited Discovery Order ("TRO") ordering PayPal, Inc. ("PayPal") to immediately freeze all PayPal accounts associated with the Wicked Defendants and restrain and enjoin Paypal from transfer of any monies held in such accounts until further ordered by the Court. If the PayPal accounts are unfrozen, Plaintiffs will be left without recourse in this case. The Wicked Defendants are likely to transfer the funds from PayPal to a different account, potentially even outside of this Court's jurisdiction. Faouani has demonstrated that he has is willing to dissolve his company and start anew in a completely different country in order to avoid a court action.  Moreover, he conceals his actual address by publishing the address in Belize of his dissolved company VPN.HT Ltd as his address in the WHOIS records for Réseaux IP Européens Network Coordination Centre (RIPE).

Plaintiff 42 further respectfully request that this Court grant it a TRO ordering Google, LLC ("Google") to lock the domain name POPCORNTIME.APP to prevent Doe and the Wicked Defendants from transferring this domain name to a third party.

## II.   STATEMENT OF FACTS

Copyright Plaintiffs are the owners of the copyrights in the Works listed in Exhibit "1" to the FAC.  The Works are currently available for sale in commerce.  *See, e.g.,* Decl. of Jonathan Yunger, attached hereto, at ¶¶ 3-6.

The Wicked Defendants and Defendant Doe distribute and promote the piracy application Popcorn Time from Doe's website, which resolves from the domain name popcorntime.app, for

distributing and streaming Plaintiffs' Works without a license.  *See* Decl. of Joshua J. Lee of the FAC at ¶¶ 15-18, Decl. of Stephen M. Bunting of the FAC at ¶¶ 23, 26-30.

Popcorn Time has been referred to in the news media as "Netflix for Pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [accessed on March 1, 2021].  Even Doe describes Popcorn Time as "…a free alternative to subscription-based video streaming services such as Netflix."  Decl. of Joshua J. Lee of the FAC at ¶15.  The USTR placed Popcorn Time on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26, Available at https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20 Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf [last accessed on March 5, 2021].

Popcorn Time offers its users nearly instantaneous access to huge quantities of infringing content.  As stated by Defendant Doe, "All you need to get started is a proper internet connection." Decl. of Joshua J. Lee of the FAC at ¶15.  The declaration of Stephen Bunting accompanying the FAC describes in detail how Popcorn Time functions. The following is a general overview.

Once installed, Popcorn Time provides a user-friendly interface for searching and watching copyright protected content.  A user can search through thumbnail images of over thousands of titles including Plaintiff Eve Nevada LLC's motion picture *Ava*.



*See* Decl. of Stephen M. Bunting of the FAC at ¶26 (Figure 4).

A user merely needs to enter "Hunter Killer" in the search bar to find the Plaintiff Hunter Killer Production, Inc.'s Work *Hunter Killer*. *See* Id. at ¶27.   By pressing the "DOWNLOAD" button, Popcorn Time connects the user to torrent sources to download a complete high resolution (1080p) copy of Works such as *Hunter Killer*, *Shock and Awe* and *Survivor*.   *See* Id. at ¶¶29-30. These torrent sources are illegal sources of copyrighted content that enable Popcorn Time users to view unauthorized streams or download unauthorized copies of popular motion pictures and television shows, including the Copyright Plaintiffs' Works.

Faouani is the sole director of Wicked and VPN.HT.   *See* Decl. of Kerry S. Culpepper, attached hereto, at ¶29.

8

The Hong Kong registration records for Wicked and VPN.HT state that Faouani is an Algerian national with an Algerian passport.  Id. at ¶30.

Faouani appears to be the sole shareholder in Wicked and VPN.HT.   Id. at ¶¶ 31.

Faouani previously operated this VPN service through an earlier iteration of VPN.HT Ltd that was organized under the laws of Belize.   Id. at ¶23.

Faouani dissolved the Belize version of VPN.HT Ltd and created Wicked and the present version of VPN.HT Limited when VPN.HT Ltd (Belize) was named a Defendant in a civil action in Canada.  Id. at ¶¶ 24-26.

Faouani provides his name and an address in Belize as the administrative and technical contact information for the public WHOIS records of IP addresses assigned to him from RIPE. Id. at ¶22.

Faouani provides the name VPN.HT Ltd and the address of dissolved VPN.HT Ltd in Belize as the organization name for the public WHOIS records of IP addresses assigned to him from RIPE. Id. at ¶22.

Faouani provides the name Wicked Technology Limited and a PO Box address in the United Arab Emirates as Wicked address as his membership information in RIPE. Id. at ¶32.

Faouani is the contact information for invoice and payments for Voxility.  *See* Exhibit "A" to Decl. of Authenticity of Silviu Sirbu, attached hereto, at pg. 6.

Faouani provides his name and a PO Box address in the United Arab Emirates as Wicked's contact information for service with Voxility.   *See* Exhibit "A" to Decl. of Authenticity of Silviu Sirbu at pg. 6.

Doe and the Wicked Defendants distribute and promote the VPN service under the name "Popcorn Time VPN" from Doe's website, which resolves from the domain name

popcorntime.app, as a tool for using "...Popcorn Time...safely and anonymously."  Decl. of Joshua J. Lee of the FAC at ¶16.

Clicking on the link Popcorn Time VPN redirects the user to the Wicked Defendants' website https://vpn.ht/popcorntime, where they state, "Be completely anonymous while torrenting on Popcorn Time" and include a link to create a paid account for the VPN service.  Decl. of Joshua J. Lee of the FAC at ¶¶13, 17.

The Wicked Defendants urge Popcorn Time users to use their Popcorn Time VPN to "stay out of trouble" because "most of the content available is copyrighted".  Id. at ¶9. The Wicked Defendants further promote their VPN service as "P2P friendly – we don't restrict usage. You can Bittorrent at will."  Id. at ¶8.

Plaintiff 42 is the owner of a federal trademark registration, Reg. No. 5,963,253 for the mark Popcorn Time, which issued on Jan. 14, 2020 on the principal register of the United States Patent and Trademark Office. This registration for the standard character mark Popcorn Time covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos and audio. A true copy of this registration is attached as Exhibit "3" to the FAC. The registration is valid and subsisting and has never been cancelled.  Plaintiff 42's US trademark asserts a first date of use of 11/29/2019.

Plaintiff 42 distributes and streams licensed content under the Popcorn Time trademark throughout the US on one or more websites resolving from US top-level domains.  *See* Decl. of Kerry S. Culpepper at ¶29.

For example, Plaintiff 42 streams in depth humorous movie reviews called "Reel Reviews™" and debates concerning motion pictures and pop culture called "Nerd Wars™" from the website http://popcorntime4u.com/ under the registered trademark "Popcorn Time" through an

agreement with Andy Signore, the creator of the popular YouTube® channel Popcorned Planet (since 2009) and former executive producer of the Emmy nominated series Honest Trailers (nominated in 2016 and 2017).  *See* Id.

Plaintiff 42 has invested substantial time, effort and financial resources promoting its Popcorn Time trademark in connection with the marketing and sale of its website and apps in interstate commerce and engaging with content owners for licensed content.  *See* Id. at ¶¶4-7.

Defendant Doe begin operating the website resolving from the domain name popcorntime.app on Feb. 1, 2020 subsequent to Plaintiff 42's adoption of the trademark.  *See* Decl. of Joshua J. Lee of the FAC at ¶21.  From this website, Doe promotes and distributes the piracy application Popcorn Time for the purposes of infringement and promotes the Wicked Defendants' VPN service as an essential tool to use Popcorn Time without getting caught under the brand name "Popcorn Time VPN".  *See* Id. at ¶¶16-17, Decl. of Stephen Bunting of the FAC at ¶¶25, 32.

Plaintiff 42's Popcorn Time trademark is inherently distinctive as applied to Plaintiff 42's goods and/or services that bear the mark.

Plaintiff 42 complained to Twitter when it discovered that Defendant Doe was using Plaintiff 42's trademark to promote Doe's piracy application on Twitter. Twitter promptly suspended Doe's Twitter account.  *See* Decl. of Kerry S. Culpepper at ¶8.

Doe contacted Plaintiff 42's counsel by email to discuss the issue of the Twitter account. In the email exchange between Plaintiff 42 and Doe to discuss resolving the dispute, Doe stated that, "All our infrastructure is hosted and sponsored by VPN.ht in exchange of showing their VPN app".  Id. at ¶¶9-13.

To resolve the dispute between Plaintiff 42 and Doe over the Twitter account, Doe agreed to (i) write an email to VPN.HT discussing the infrastructure arrangement and show Plaintiff 42's

counsel VPN.HT's reply as proof of the arrangement, (ii) not to operate the website and Popcorn Time as a peer-to-peer file sharing software in violation of U.S. copyright law, (iii) to remove all films of the Copyright Plaintiffs from Popcorn time, and (iv) to make a payment to Plaintiff 42. Id. at ¶¶12-15.

Doe continues to operate the website resolving from the domain name popcorntime.app and distribute the piracy app Popcorn Time together with the Wicked Defendants as a peer-to-peer file sharing software in violation of U.S. copyright law despite agreeing with Plaintiff 42's counsel to cease doing so to resolve the dispute over the Twitter account.  Id. at ¶¶16-18.

The Wicked Defendants, specifically Wicked and Faouani contracted with the Virginia company Voxility for server service and IP addresses.  Wicked and Faouani pay for the service with a Paypal account.  Among the IP addresses the Wicked Defendants received from Voxility were IP addresses 104.152.44.26 hosted on a server in Reston, Virginia.  *See* Exhibit "A" to Declaration of Authenticity of Silviu Sirbu at pg. 6.

Plaintiffs engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor P2P/BitTorrent networks to capture evidence of acts of distribution of their Works and to generate infringement notices to be sent by the Plaintiffs' agents to the ISPs assigned the IP addresses at which MEU confirmed instances of actual observed distribution.  *See* Decl. of Daniel Arheidt of the FAC at ¶6.

Plaintiffs' agent sent over 400 notices to Voxility concerning infringements of Plaintiffs' Works at IP addresses Voxility assigned to the Wicked Defendants.  *See* Id. at ¶¶8-9.

Plaintiffs' agent sent over 65 notices to Voxility concerning infringements at IP address 104.152.44.26 on the Reston server assigned to the Wicked Defendants between 4/25/2020 and 1/25/2021 based upon over 1200 acts of distribution of Plaintiffs' Works *Survivor*, *London Has*

*Fallen*, *Act of Vengeance*, *The Hitman's Bodyguard*, *Hunter Killer*, *Homefront*, *Acts of Vengeance*, *Rambo V: Last Blood*, *Angel Has Fallen*, *Kill Chain*, *The Outpost, Tesla*, and *Ava* confirmed by MEU at IP address 104.152.44.26.  *See* Id. at ¶10, Exhibit "4" to the FAC.

The Wicked Defendants took no action in response to the more than 400 notices.  Indeed, when Faouani was pressed by Voxility regarding whether Wicked had taken action on these notices, Faouani's reply was, "We are receiving all abuse emails and acting if there is something we can do."  *See* Exhibit "A" to Declaration of Authenticity of Silviu Sirbu at pg. 3.

## III.   <u>LEGAL STANDARD</u>

Rule 65(b) governs the issuance of temporary restraining orders. Fed R. Civ. P. 65(b).  A temporary restraining order may issue without notice to the adverse party if the movant provides specific facts in an affidavit that clearly show immediate and irreparable injury will result absent the order. Id.

The Copyright Act authorizes courts to grant injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  The Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S. Code § 1116.

The standard for a temporary restraining order is identical to the standard for a preliminary injunction.  *See, e.g., U.S. ex rel. $12,642.00 U.S. Currency v. Com. of Va.*, 2003 WL 23710710, at *1 (E.D. Va. 2003) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991) ("The standard for granting either a TRO or a preliminary injunction is the same.")).  A party can obtain a preliminary injunction by showing that (1) it is "likely to succeed on the merits," (2) it is

"likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

## IV.   PLAINTIFFS' REQUESTED TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED.

Without the temporary restraining order requested, Plaintiffs will likely suffer irreparable harm because the Wicked Defendants will transfer the funds from Paypal to a different provider in a foreign jurisdiction.  Although Plaintiffs do not know the balance of the Wicked Defendants' Paypal accounts, it is likely that the amount of damages to which Plaintiffs are entitled as set forth in the FAC far exceed any amount contained in any of their PayPal accounts. For example, the Copyright Plaintiffs' prayer for relief requests statutory damages of $150,000/Work and $25,000/DMCA violation, a total that is likely to amount to $3,650,000 for the 21 Works. Plaintiff 42's prayer for relief requests statutory damages of $2,000,000 for willful infringement of Plaintiff 42's Popcorn Time trademark.  This District has granted orders preventing the fraudulent transfer of assets in numerous instances. *See Volkswagen AG, et al v. The Unincorporated Associations Identified in Schedule A*, 17-cv-970-LMB-IDD [ECF 12] (E.D. Va. Sept. 5, 2017) (granting a TRO ordering PayPal to freeze funds of defendants); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 [ECF 18]  (E.D. Va. Jan 5, 2018) (same).   As explained below, Plaintiffs satisfy all four of the *Winter* requirements for a preliminary injunction.

### A.  Plaintiffs Will Succeed on the Merits of Their Claims

Plaintiffs are overwhelmingly likely to succeed in their copyright and trademark claims against the Wicked Defendants and Doe.  Personal jurisdiction is appropriate over the Wicked Defendants and Doe because they purposefully availed themselves of the privileges of conducting

business in Virginia.  The Wicked Defendants contracted with the Virginia company Voxility to obtain IP addresses and server services.  The Wicked Defendants and Doe host their piracy application Popcorn Time, website and the VPN service on servers in Virginia and provide IP addresses on a server in Reston, Virginia to their subscribers (including subscribers in Virginia), at least one of which was used for pirating copyright protected content. This civil action arises directly from the Wicked Defendants' and Doe's subscribers using at least one IP address in Virginia to pirate Plaintiffs' Works.

**1.  The Copyright Plaintiffs Will Succeed on the Merits of Their Claims**

To prevail on their direct copyright infringement claims, the Copyright Plaintiffs need only (1) "show ownership" and (2) a violation of "at least one exclusive right" under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiffs satisfy both requirements. First, there is no dispute about Plaintiffs' ownership of the Copyrighted Works. The Copyright Office has issued certificates of registration for the Copyrighted Works as listed in Exhibit "1" to the FAC.  Plaintiffs Eve Nevada, LLC, Bodyguard Productions, Inc., Gunfighter Productions, LLC, Killing Link Distribution, LLC, LHF Productions, Inc., Rambo V Productions, Inc., Wonder One, LLC, Hunter Killer Productions, Inc. Nikola Productions, Inc. and Outpost Productions, Inc. are the original authors (from work by hire agreements) indicated in the certificates.   These certificates create a presumption of copyright validity and of ownership.  *See* 17 U.S.C. § 410(c).  The remaining Plaintiffs are parent or affiliate companies of the original authors.  *See*, *e.g.* Decl. of Jonathan Yunger at ¶4.

Second, the Copyright Plaintiffs will prevail on their claims that Doe and the Wicked Defendants directly infringed their exclusive rights of distribution and public performance of their Works in violation of 17 U.S.C. §§ 106(3) and (4).  As stated by Doe and the Wicked Defendants

on their website, "Popcorn Time uses sequential ***downloading*** to ***stream*** video listed by several torrent websites…"  Decl. of Joshua J. Lee of the FAC at ¶15 (emphasis added).  Doe and the Wicked Defendants have violated the Copyright Plaintiffs' exclusive right of distribution by distributing copies of Plaintiffs' Works from Popcorn Time when subscribers choose DOWNLOAD to download a copy of Plaintiffs' Works via Popcorn Time.  *See* Decl. of Stephen M. Bunting of the FAC at ¶¶29-30.  The Fourth Circuit has interpreted distribution to include not only actual dissemination, but also making a protected work available to the public. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997).  Doe and the Wicked Defendants have violated the Copyright Plaintiffs' exclusive right of public performance by streaming copies of Plaintiffs' Works from Popcorn Time when subscribers choose WATCH IT NOW to stream copies of Plaintiffs' Works.  *See* Decl. of Stephen M. Bunting of the FAC at ¶30 (Figure 11).  When a party transmits a performance of a Copyrighted Work to a public audience, that party directly infringes the public performance right. *See American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509 (2014) (service that made Internet streams of content performed publicly: "Aereo communicates the same contemporaneously perceptible images and sounds to a large number of people who are unrelated and unknown to each other."); *see also, e.g., WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ("undisputed" that defendant's Internet streaming of television programs infringed public performance right).

Third, the Copyright Plaintiffs will prevail on their claims that Doe and the Wicked Defendants contributed to infringement of the Copyrighted Works. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005). Doe and the Wicked Defendants intentionally induce and encourage direct infringement of users of Popcorn

Time. They promote and distribute Popcorn Time from the website which resolves from the domain name popcorntime.app. The Wicked Defendants provide the infrastructure such as hosting for Popcorn Time and Doe's website in exchange for Doe advertising their VPN service as Popcorn Time VPN. *See* Decl. of Stephen M. Bunting of the FAC at ¶¶25, 32; Decl. of Kerry S. Culpepper at ¶¶12-13, 15. This is not a situation in which Doe and the Wicked Defendants are providing a service that has lawful uses without knowledge that their users are using the service for infringement. Rather, Doe and the Wicked Defendants promote Popcorn Time blatantly for the purposes of copyright infringement. *See* Decl. of Joshua J. Lee of the FAC at ¶15.

When the Wicked Defendants' subscribers use their so-called Popcorn Time VPN to download, stream, share and/or reproduce copies of the Copyright Plaintiffs' Works, these subscribers directly infringe Plaintiffs exclusive rights of public performance, distribution and reproduction. The Wicked Defendants also contribute to these infringements by providing the Popcorn Time VPN for its subscribers to "safely" pirate Plaintiffs' Works using Popcorn Time without getting caught. The Wicked Defendants also have knowledge that the subscribers are using its Popcorn Time VPN to pirate Plaintiffs' Works from the hundreds of notices that Plaintiffs' agent sent to Voxility that were forwarded onto Wicked and acknowledged by Wicked. The Wicked Defendants also had knowledge that its subscribers are using its VPN service to pirate copyright protected works including Plaintiffs' Works because this is exactly how Wicked instructed its subscribers to use the VPN service. Indeed, Doe and the Wicked Defendants promote the VPN service as "Popcorn Time VPN". *See* Decl. of Joshua J. Lee of the FAC at ¶¶16-17.

The Wicked Defendants have no safe harbor from liability because they fail to implement a policy for terminating repeat infringers and have not registered a DMCA agent with the Copyright office. *See BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th

17

Cir. 2018).  Moreover, the Wicked Defendants cannot use their policy of "we don't keep logs, so we don't know what you do with our service" (*See* Decl. of Joshua J. Lee of the FAC at ¶8) as an excuse for not terminating repeat infringers.  A defendant who disables itself from doing anything to prevent infringement does not reasonably implement a repeat infringer policy.  *See In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003).

### 2.   Plaintiff 42 Will Succeed on the Merits of its Trademark Claims

Plaintiff 42's mark has been registered in the U.S. Patent and Trademark office, Russia and Iceland.  *See* Exhibit "2" to the FAC, Decl. of Kerry S. Culpepper at ¶2.   A Defendant is liable for trademark infringement based upon counterfeiting where: (1) the Defendant intentionally used a counterfeit mark in commerce; (2) the Defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offer for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers. 15 U.S.C. § 1114(1); *Match.Com, LLC. v. Fiesta Catering Int'l Inc.*, No. 1:12cv363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013).   The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

Doe and the Wicked Defendants have intentionally used Plaintiff 42's Mark Popcorn Time in US commerce without authorization or license by distributing the piracy application Popcorn Time from the US website, resolving from the domain name popcorntime.app, that is hosted by the Wicked Defendants.  Defendant Doe's Popcorn Time mark uses the exact standard characters

of Plaintiff 42's registered trademark. There can be absolutely no doubt that Doe and the Wicked

Defendants know they are distributing software under Plaintiff 42's trademark because Doe and

Plaintiff 42 discussed this issue in connection with the suspension of Doe's Twitter handle at the

request of Plaintiff 42 for trademark infringement. *See* Decl. of Kerry S. Culpepper at ¶¶8-14. Doe

and Plaintiff 42 had agreed that Doe would make a payment to Plaintiff 42 and cease using the

name Popcorn Time for movie piracy to resolve this issue, but Doe breached this agreement after

discussing the issue with the Wicked Defendants. Id. Doe and the Wicked Defendants have no

senior user rights in the US because any prior use was in a foreign country (on the .SH domain

registry of the British overseas territory of Saint Helena) concerning distribution of the piracy

application for free and thus not in commerce that Congress can lawfully regulate.  *See Int'l*

*Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco,* 329 F.3d 359,

370 (4th Cir. 2003) ("…commerce under the Lanham Act comprises all commerce that Congress

may lawfully regulate..")

Assuming *arguendo* that Doe and the Wicked Defendants used the mark in the US, such

use still does not qualify as prior use because such use was for criminal copyright infringement.

*See In re JJ206, LLC,* 120 USPQ2d 1568, 1570 (TTAB 2016) (finding applicant's use and intended

use of the applied for marks on marijuana vaporizers unlawful because the goods constitute illegal

drug paraphernalia under the Controlled Substances Act).

Finally, Defendants' distribution of the counterfeit software bearing Plaintiff 42's Mark is

likely to confuse consumers since the two marks are identical.  Plaintiff 42 distributes software

with licensed content under the name Popcorn Time, while Doe and the Wicked Defendants

distribute software for pirating content under the name Popcorn Time.  Where a party produces

counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c)

19

(2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).  As discussed above, Defendants used, and continue to use, the website resolving from the domain name popcorntime.app to promote and distribute their piracy app Popcorn Time. These actions are sufficient to create a presumption of consumer confusion and a likelihood that Plaintiff 42 will succeed on its claim for trademark infringement.

Plaintiff 42 is also likely to prevail on its claim for unfair competition. As with trademark infringement, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Because Plaintiff 42's registered mark Popcorn Time is identical to Defendants' mark Popcorn Time, there is a high likelihood of confusion.  Therefore, because Plaintiff 42 has established the merits of its trademark infringement claims against Defendants, including that consumers are likely to be confused, a likelihood of success is also shown as to Plaintiff 42's claims for federal unfair competition.

**B.      Doe and the Wicked Defendants are causing Plaintiffs Irreparable Harm**

Without the temporary restraining order requested, Plaintiffs will likely suffer irreparable harm because the Wicked Defendants will transfer their funds from Paypal to a different provider in a foreign jurisdiction.  *See* Decl. of Kerry S. Culpepper at ¶¶47-49.

Plaintiff 42 is "…entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection … upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."  15 U.S.C. §1116(a),

Doe and the Wicked Defendants' Popcorn Time is undoubtedly causing the Copyright Plaintiffs irreparable harm. *See* Yunger Decl. at ¶¶14-17 and 21-23.   First, by inducing unauthorized distributing and streaming of the Copyright Plaintiffs' Works, Popcorn Time deprives the Copyright Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors.").

Second, the availability of free, infringing copies of the Copyrighted Works for unrestricted distribution via Popcorn Time inevitably and irreparably undermines the legitimate market in which consumers can purchase access to the same works. *See* Decl. of Yunger at ¶¶16, 20-23. Defendant intentionally competes with authorized and legitimate offerings, including licensed VOD services and promotes itself as a means for consumers to avoid the need to pay for those offerings. *See* Id. at ¶¶22-23.

Third, the Defendant threatens harm to Plaintiffs' relationships and goodwill with authorized licensees, which demonstrates irreparable harm. *See* Id. at ¶17, *see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) ("substantial evidence … that VidAngel's service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees").

**C.     The Balance of Hardships Strongly Favors Plaintiffs**

The hardship Plaintiffs will face if the Court denies Plaintiffs' application for a temporary restraining order greatly outweighs any harm to the Defendants' interests in transferring funds from Paypal to a different account or transferring the popcorntime.app domain name to a third party. The Plaintiffs are not asking for seizure of inventory or for the domain name to be transferred.

**D.      Enjoining the Defendants and Their Registrar Will Advance the Public Interest**

The public has a compelling interest in protecting copyright owners' marketable rights to their works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause...is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)).

Further, the public has an interest in being protected from being misled by Doe and the Wicked Defendants' advertising into installing Popcorn Time and using it to illegally stream and downloads copyright protected Works. Enjoining the Defendants' illegal conduct plainly furthers the public interest.

**E.      No security should be required by Plaintiff.**

Rule 65(c) requires Plaintiffs to give "security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained".  Fed. R. Civ. P. 65(c).  However, the "district court retains the discretion to set the bond amount as it sees fit or waive the security requirement."  *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)) (internal citation and quotation marks omitted);  *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir.1999) ("[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.")

Because of the strong and unequivocal nature of Doe and the Wicked Defendants' copyright and trademark infringements, the Plaintiffs respectfully request this Court use its discretion to not require security.  To put it simply, there is absolutely nothing legitimate about

Defendants' promotion and distribution of Popcorn Time and their so called "Popcorn Time VPN". Further, the requested injunctive relief is narrowly tailored.  Plaintiffs are merely requesting that Paypal freeze the Wicked Defendants' accounts to prevent them from transferring funds outside of this Court's jurisdiction and that Google lock the domain name popcorntime.app to prevent Doe from transferring the domain name to a third party. Plaintiffs are not requesting the seizure of Defendants' products. Alternatively, Plaintiffs submit that a minimal bond amount such as $1000 should more than suffice.  *See Volkswagen Grp. of Am., Inc. v. Unincorporated Ass'ns Identified in Schdule A*, No. 1:19-cv-01574-AJT-MSN, Doc. #21 (E.D. Va. Dec. 20, 2019) (Order granting Plaintiff's *ex parte* motion for TRO and requiring cash or security of $1000) [Attached hereto as Exhibit "1"].

## V.     PLAINTIFFS ARE ENTITLED TO LIMITED EXPEDITED DISCOVERY

The Court should permit Plaintiffs to conduct expedited third-party discovery regarding Defendant Doe's identit(ies) and the location and value of each of Defendants' financial accounts. Courts have "broad discretion" to supervise discovery. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). This latitude includes the ability to permit discovery to commence prior to a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) (allowing a party to conduct discovery without a Rule 26(f) conference if ordered by the court).

This Court has regularly permitted expedited discovery in the interest of justice in order to allow Plaintiffs to identify Doe defendants under Federal Rule of Civil Procedure 26(d)(1).  *See Headhunter, LLC v. Doe,* No. 1:17-cv-00793-CMH-TCB, 2017 U.S. Dist. LEXIS 227792 (E.D. Va. July 14, 2017), *Cell Film Holdings, LLC v. Does*, No. 3:16-cv-749, 2016 U.S. Dist. LEXIS 180445 (E.D. Va. Dec. 29, 2016), *Hard Drive Prods. v. Doe*, No. 2:11-c-v345, 2011 U.S. Dist. LEXIS 73159 (E.D. Va. July 1, 2011)  (granting motion for leave to take discovery before a Rule

26(f) conference after finding plaintiff made showing of irreparable harm and need to proceed *ex parte*, when plaintiff could not determine unknown defendants' identities except through third-party subpoenas to defendants' Internet Service Providers ("ISPs")).

Plaintiffs' have shown the irreparable harm that is being caused to their trademark and copyrights as discussed above.  Because the Wicked Defendants use Paypal to receive payments from their subscribers and to make payments to Voxility, Paypal will have information providing the scope of the Wicked Defendants' activities giving rise to this action and identification information.  Because Cloudflare provides nameserver service for the website, Cloudflare should have identification and payment information that will provide identification of Doe.  Additionally, GitHub should have identification and payment information that will provide identification of Doe. Because Doe made a counternotice to a DMCA notice, he or she provided identification information under penalty of perjury to GitHub.  *See* Exhibit "C" to Decl. of Kerry Culpepper.

Accordingly, Plaintiffs respectfully request that the Court grant them permission to conduct limited expedited third-party discovery directed to PayPal, Github and CloudFlare for the purpose of seeking to identify Defendants and the scope of each Defendants' activities giving rise to this action.

## VI.   <u>CONCLUSION</u>

For the reasons stated, Plaintiffs respectfully request that the Court enter the proposed temporary restraining order freezing the assets of each of the Defendants' PayPal accounts, permit expedited discovery to determine each of the Defendants' identities and the amount and location of the profits of each of the Defendants counterfeiting and infringement and the scope of Defendants' activities, and grant such further relief as this Court deems proper

DATED: Reston, Virginia, March 31, 2021.

Respectfully submitted,

 /s/ Timothy B. Hyland
Timothy B. Hyland
Virginia Bar No. 31163
Counsel for Plaintiffs
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA 20190
Tel.: (703) 956-3566
Fax: (703) 935-0349
Email: thyland@hylandpllc.com

Kerry S. Culpepper, *pro hac vice*
Hawaii Bar No. 9837
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
kculpepper@culpepperip.com