IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MILLENNIUM FUNDING, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-282 (RDA/TCB) |
| ) | |
| WICKED TECHNOLOGY LIMITED d/b/a ) | |
| VPN.HT, VPN.HT LIMITED, MOHAMED ) | |
| AMINE FAOUANI, JOHN OR JANE DOE ) | |
| d/b/a POPCORNTIME.APP, and DOES ) | |
| 1-100, ) | |
| ) | |
| Defendants. ) | |

## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
## REGARDING PRELIMINARY INJUNCTION

This matter comes before the Court on an *ex parte* motion for a Temporary Restraining Order brought by Plaintiffs Millennium Funding, Inc.; Eve Nevada, LLC; Hunter Killer Productions, Inc.; Bodyguard Productions, Inc.; Gunfighter Productions, LLC; Millennium IP, Inc.; Voltage Holdings, LLC; Killing Link Distribution, LLC; LHF Productions, Inc.; Rambo V Productions, Inc.; Nikola Productions, Inc.; Outpost Productions, Inc.; Wonder One, LLC; and 42 Ventures, LLC ("Plaintiffs"). Dkt. 9. For the reasons that follow and for good cause shown, the Court GRANTS Plaintiffs' motion.

### I. BACKGROUND

Plaintiffs seek a TRO granting temporary asset restraint and expedited discovery pursuant to 17 U.S.C. § 502(a) and Federal Rule of Civil Procedure 65. Plaintiffs allege Defendants "promote and distribute" "the notorious piracy software application Popcorn Time" in an alleged "massive piracy" of Defendants' motion pictures. Dkt. 7 ¶ 1. Defendants are limited liability companies organized in Hong Kong, an Algerian national named Mohamed Amine Faouani, and

unknown individuals who developed and operate the software application Popcorn Time. *Id.* ¶¶ 41-62.

The Motion asserts that Popcorn Time, which has been referenced "in the news media as 'Netflix for Pirates,'" permits its users nearly immediate access to content that infringes Plaintiffs' trademarks and copyrights. Dkt. 10, 7. Defendants Wicked Technology Limited, VPN.HT Limited, and Faouani (the "Wicked Defendants") provide a Virtual Private Network ("VPN") under the name VPN.HT, which facilitates the transmitting and routing—or providing connections for transmitting and routing—"through a network that provides access to the Internet." *Id.* at 3. According to the Motion and a supporting declaration submitted with the First Amended Complaint, a user who clicks on a link to the Popcorn Time VPN will be redirected to the Wicked Defendants' website, which promises users will remain "completely anonymous while torrenting on Popcorn time." *See id.* at 10 (citing Dkt. 7-5 (Decl. of Joshua Lee, ¶¶ 13-17)). Plaintiff 42 Ventures, LLC ("Plaintiff 42"), the owner of a federal trademark registration for the mark Popcorn Time, has made numerous attempts to put an end to Defendant Doe's piracy application. Dkt. 10, 11-12. Still, Plaintiffs allege Defendant Doe continues to operate the website and distribute pirated content with the Wicked Defendants in violation of copyright law. *Id.* at 12. The Wicked Defendants, including Defendant Faouani, contracted with Voxility, a Virginia company to provide Internet Protocol ("IP") addresses. *Id.* They purportedly pay Voxility through a PayPal account. *Id.* One of these IP addresses is hosted on a server in Reston, Virginia. *See id.* (citing Dkt. 10-4 (Ex. A to Decl. of Authenticity of Silviu Sirbu)). Out of the approximately 400 notices Plaintiffs' agent sent to Voxility regarding infringement of Plaintiffs' works, more than 65 were sent to the IP address hosted on the Reston server. *See id.*

Plaintiffs initiated suit in this Court by filing a Complaint on March 5, 2021.  Dkt. 1. They filed an Amended Complaint on March 31, 2021, the same day they brought their *ex parte* Motion for a Temporary Restraining Order.  Dkt Nos. 7; 9.  Plaintiffs request that the Court issue a temporary restraining order freezing the assets of each of the Wicked Defendants' PayPal accounts, enjoining PayPal from transferring any monies held in those accounts until further order of the Court, and permitting limited expedited discovery directed to third parties PayPal, GitHub, and Cloudfare.  Dkt. 10.  In addition, Plaintiffs argue that the need to prevent Defendant Faouani from placing his and his alter ego entities' assets beyond the jurisdiction of the Court necessitate their *ex parte* motion.  *Id.* at 2.

## II. STANDARD OF REVIEW

A motion for a temporary restraining order is subject to the requirements of Federal Rule of Civil Procedure 65(b).  To obtain this relief without first providing notice to the adverse party, a movant must show specific facts that clearly demonstrate the risk of immediate and irreparable injury if the order does not issue.  "While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).  A grant of temporary injunctive relief requires the movant to establish the same four factors that govern preliminary injunctions: (1) the likelihood of irreparable harm to the plaintiff if the TRO is denied; (2) the likelihood of harm to the defendants if the TRO is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Copyright Act, a court may grant injunctive relief "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  Courts have the "power to grant

3

injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116.

## III. ANALYSIS

The Court finds that personal jurisdiction is appropriate over the Wicked Defendants and Doe because they purposefully availed themselves of the privileges of conducting business in Virginia. This action arises directly from the Wicked Defendants' and Doe's subscribers using at least one IP address in Reston, Virginia to pirate Plaintiffs' works.

### A. Temporary Restraining Order

Having reviewed the papers, declarations, and memorandum filed in support of Plaintiffs' *ex parte* Motion for a Temporary Restraining Order, the Court hereby makes the following findings of fact and conclusions of law.

#### 1. Likelihood of Irreparable Harm

The fact that Popcorn Time offers freely available, infringing copies of Plaintiffs' copyrighted works suggests that the application is undermining the legitimate market in which consumers may pay to access those same works. *See* Dkt. 10-2 (Decl. of J. Yunger), ¶¶ 16, 20-23. The goodwill and relationships Plaintiffs maintain with licensees also cuts in favor of finding irreparable harm. *See id.* ¶ 17; *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017). Additionally, without a TRO, Defendants may transfer funds from PayPal to a provider beyond the Court's jurisdictional reach, thereby continuing the ongoing infringements Plaintiffs allege.

Furthermore, where the moving party clearly establishes a likelihood of success on the merits in a trademark case, the prospect of irreparable harm is often inferred. *See Lone Star*

*Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement."). As discussed *infra*, there is a strong likelihood that Plaintiffs will succeed on the merits. In addition, Plaintiffs would be irreparably harmed absent a TRO because Defendants would have the incentive and capacity to transfer their assets from any account within the United States, depriving Plaintiffs of the ability to obtain monetary relief. This factor therefore favors granting the TRO.

### 2. Harm to Defendants

Defendants are unlikely to suffer any cognizable harm from the TRO as they will merely be prevented from profiting from past infringement and moving their funds beyond the reach of the Court. *Cf. Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (holding that any harm a defendant would suffer by being prevented from deliberately infringing a plaintiff's trademark does not alter the balance of hardship analysis). This factor thus weighs in favor of granting the TRO.

### 3. Likelihood of Success on the Merits

Plaintiffs are likely to succeed on the merits of their claims for (a) copyright infringement, including direct infringement on Plaintiffs' exclusive rights of distribution and public performance, contributory infringement, and vicarious infringement; (b) trademark counterfeiting; and (c) unfair competition.

Plaintiffs are likely to succeed on the merits of their claim for direct copyright infringement because they can show "ownership of a valid copyright" and Defendants' "copying of constituent elements of the work that are original" as required by 17 U.S.C. § 106. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004). Their claim for infringement of a public performance right is similarly likely to succeed: Plaintiffs have demonstrated that Defendants have made protected works available to the public, which amounts to distribution.

*See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 448 (2014); *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). They are also likely to succeed on their contributory infringement claims because they have shown that Doe and the Wicked Defendants promote and distribute Popcorn Time, which suggests these Defendants are "infring[ing] contributorily by intentionally inducing or encouraging direct infringement." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 307 (4th Cir. 2018) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930)).

To prevail on their claim for trademark counterfeiting, Plaintiffs must prove that the Defendants (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive users. 15 U.S.C. § 1114(1); *Match. Com, L.L.C. v. Fiesta Catering Int'l, Inc.*, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). Plaintiffs have put forward compelling evidence that Defendants are providing access to their copyrighted and trademarked works. Defendants' distribution of the counterfeit software is available for free, which—at the very least—creates an interference that the mark is counterfeit. *See United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (noting that prices well below wholesale suggest awareness or deliberate indifference that goods were counterfeit). Finally, there is a presumption of likelihood of confusion where a party sells counterfeit goods. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Because the public is likely to be deceived or confused by the similarity of Plaintiffs' protected works and Defendants' marks, Plaintiff 42's unfair competition claim is similarly likely to succeed. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

Plaintiffs have thus shown likelihood of success on the merits of their trademark infringement, copyright infringement, and unfair competition claims.

4. Public Interest

Finally, the public's interest underlying the prohibition of copyright and trademark infringement is to prevent consumer confusion and deception. *See AMP, Inc. v. Foy*, 540 F.2d 1181, 1185 (4th Cir. 1976). Trademark infringement deceives consumers and there is a "public interest in making the misconduct unprofitable." *Synergistic Int'l v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). This factor therefore also favors granting the TRO.

B. Security Bond

In addition, courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although the district court has discretion to set the bond amount 'in such sum as the court deems proper,' it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co.*, 174 F.3d at 421. Plaintiffs argue that no security should be required in this case, or that an amount as low as $1,000 is sufficient given the "strong and unequivocal nature" of Defendants' alleged copyright and trademark infringements. *See* Dkt. 10, 22. The Court determines that Plaintiffs should be compelled to post a bond in the amount of $50,000, which is proportionate with the amount this Court has ordered in other *ex parte* TROs. *Cf.* Order, *DXC Tech. Co. v. John Does 1-2*, No. 1:20-cv-814 (Mar. 31, 2021) (Dkt. 43) (ordering that $50,000 TRO surety bond be returned to plaintiff); *Ex Parte* Temporary Restraining Order, *Microsoft Corp. v. Does 1-2*, No. 117-cv-1224 (E.D. Va. Oct. 27, 2017) (Dkt. 26) (ordering plaintiffs to deposit $50,000 surety bond).

C. Expedited Discovery

District courts enjoy "broad discretion" to supervise discovery, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014), and may allow discovery to begin

7

before a Rule 26(f) conference occurs. *See* Fed. R. Civ. P. 26(d)(1). In this case, the interests of justice permit limited, expedited discovery of certain third parties because Plaintiffs have shown irreparable harm to their trademarks and copyrights. The Court orders that limited discovery of the following third parties may begin upon entry of this Order.

First, because PayPal may have access to information regarding the scope of Defendants' activities identified in Plaintiffs' Motion, the Court permits limited discovery to begin for the purpose of discovering the scope of those activities.

Second, because Cloudfare and GitHub may have identification and payment information that will aid efforts to identify Defendant Doe, the Court permits limited discovery of those third parties for the scope of seeking to identify Defendants' identities.

### D. Notice and Service

There is good cause to permit notice of this Order, notice of the preliminary injunction hearing, and service of the First Amended Complaint by formal and alternative means, given the exigency of the circumstances and the need for prompt relief. The formal and alternative means of service this Order identifies below are authorized by law, satisfy due process, and satisfy Federal Rule of Civil Procedure 4(f)(3) and are reasonably calculated to notify Defendants of this Order, the preliminary injunction hearing, and of this action. *See WhosHere, Inc. v. Orun*, No. 1:13-cv-00526, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014).

### IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motion is hereby GRANTED; and it is further

ORDERED that PayPal shall immediately freeze all PayPal accounts associated with

Defendants WICKED TECHNOLOGY LIMITED, VPN.HT Limited, and MOHAMED AMINE FAOUANI of the First Amended Complaint and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court; and it is further

ORDERED that Google or any reseller under its control shall immediately lock the domain name POPCORNTIME.APP owned by Defendant JOHN OR JANE DOE d/b/a POPCORNTIME.APP to prevent transfer to a third party; and it is further

ORDERED that Plaintiffs may immediately serve limited discovery on PayPal sufficient to discover the amounts of any monies held by PayPal in association with Defendants WICKED TECHNOLOGY LIMITED, VPN.HT Limited, and MOHAMED AMINE FAOUANI as well as any name, email address, address, telephone number, and bank account associated with such PayPal account(s); and it is further

ORDERED that Plaintiffs may immediately serve limited discovery on GitHub and Cloudflare sufficient to learn the identities of Defendant JOHN OR JANE DOE d/b/a POPCORNTIME.APP of the First Amended Complaint, as well as any name, email address, address, telephone number, PayPal account, or other payment accounts associated with such GitHub and Cloudflare account(s); and it is further

ORDERED that any information disclosed to Plaintiffs in response to discovery issued pursuant to this Order may be used solely for the purpose of protecting Plaintiffs' rights as set forth in the First Amended Complaint; and it is further

ORDERED, pursuant to Federal Rule of Civil Procedure 65(b), that Defendants shall appear before this Court in Courtroom 601 of the Albert V. Bryan Courthouse on April 15, 2021 at 10:30 a.m. to show cause, if any, why this Court should not enter a Preliminary Injunction, pending final ruling on the Complaint against Defendants, enjoining Defendants from the conduct temporarily restrained by the preceding provisions of this Order; and it is further

ORDERED that Plaintiffs shall post bond in the amount of $50,000 to be paid into the Court registry pursuant to Federal Rule of Civil Procedure 65(c); and it is further

ORDERED that copies of this Order, notice of the preliminary injunction hearing, and service of the First Amended Complaint may be served by any means authorized by law, including (1) transmission by email, facsimile, mail and/or personal delivery to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements, (2) publishing notice on a publicly available Internet website, (3) by personal delivery upon Defendants, to the extent Defendants provided accurate contact information in the United States; and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendants, to the extent Defendants provided accurate contact information in foreign countries that are signatories to such treaties; and it is further

ORDERED that this Temporary Restraining Order shall remain in effect until the date for the preliminary injunction hearing set forth above, or until such further date as set by the Court or stipulated to by the parties.

It is SO ORDERED.

Alexandria, Virginia
April 8, 2021

/s/ 
Rossie D. Alston, Jr.
United States District Judge