IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MILLENNIUM FUNDING, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-282 (RDA/TCB) |
| ) | |
| WICKED TECHNOLOGY LIMITED d/b/a ) | |
| VPN.HT, VPN.HT LIMITED, MOHAMED ) | |
| AMINE FAOUANI, JOHN OR JANE DOE ) | |
| d/b/a POPCORNTIME.APP, and DOES ) | |
| 1-100, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the unresolved portions of a Motion for Temporary Asset Restraint, Preliminary Injunction, and Expedited Discovery brought by Plaintiffs Millennium Funding, Inc., Eve Nevada, LLC, Hunter Killer Productions, Inc., Bodyguard Productions, Inc., Gunfighter Productions, LLC, Millennium IP, Inc., Voltage Holdings, LLC, Killing Link Distribution, LLC, LHF Productions, Inc., Rambo V Productions, Inc., Nikola Productions, Inc., Outpost Productions, Inc., Wonder One, LLC, and 42 Ventures, LLC ("Plaintiffs"). Dkt. 9. On April 15, 2021, the Court held a show cause hearing regarding whether the Temporary Restraining Order ("TRO") the Court previously granted should be converted to a preliminary injunction. Dkt. 25. For the reasons that follow, the Court GRANTS Plaintiffs' preliminary injunction motion (Dkt. 9) and Second *Ex Parte* Motion for a TRO (Dkt. 19).

I. BACKGROUND

A. Factual Background

Plaintiffs—business entities involved in the film industry—seek a preliminary injunction ordering temporary asset restraint and other relief pursuant to the Copyright Act, 17 U.S.C. §

502(a), the Lanham Act, 15 U.S.C. § 1116, and Federal Rule of Civil Procedure 65. Plaintiffs allege Defendants "promote and distribute" "the notorious piracy software application Popcorn Time" in an alleged "massive piracy" of Defendants' motion pictures. Dkt. 7 ¶ 1. Defendants are limited liability companies organized in Hong Kong, an Algerian national named Mohamed Amine Faouani, and unknown individuals who developed and operate the software application Popcorn Time. *Id.* ¶¶ 41-62.

The Motion asserts that Popcorn Time, which has been referenced "in the news media as 'Netflix for Pirates,'" permits its users nearly immediate access to content that infringes Plaintiffs' trademarks and copyrights. Dkt. 10, 7. Defendants Wicked Technology Limited, VPN.HT Limited, and Faouani (the "Wicked Defendants") provide a Virtual Private Network ("VPN") under the name VPN.HT, which facilitates the transmitting and routing—or providing connections for transmitting and routing—"through a network that provides access to the Internet." *Id.* at 3. According to the Motion and a supporting declaration submitted with the First Amended Complaint, a user who clicks on a link to the Popcorn Time VPN will be redirected to the Wicked Defendants' website, which promises users will remain "completely anonymous while torrenting on Popcorn time." Dkt. 7-5 (Decl. of Joshua Lee, ¶¶ 13-17)). Plaintiff 42 Ventures, LLC ("Plaintiff 42"), the owner of a federal trademark registration for the mark Popcorn Time, has made numerous attempts to put an end to Defendant Doe's piracy application. Dkt. 10, 11-12.

Still, Plaintiffs allege Defendant Doe continues to operate the website and distribute pirated content with the Wicked Defendants in violation of copyright law. *Id.* at 12. The Wicked Defendants, including Defendant Faouani, contracted with Voxility, a Virginia company to provide Internet Protocol ("IP") addresses. Dkt. 10-3 (Decl. of Kerry S. Culpepper, ¶¶ 24-26). They purportedly pay Voxility through a PayPal account. Dkt. 10, 12. One of these IP addresses is hosted on a server in Reston, Virginia. *See* Dkt. 10-4 (Ex. A to Decl. of Authenticity of Silviu

Sirbu). Out of the approximately 400 notices Plaintiffs' agent sent to Voxility regarding infringement of Plaintiffs' works, more than 65 were sent to the IP address hosted on the Reston server. *See id.*

### B. Procedural Background

Plaintiffs initiated suit in this Court by filing a Complaint on March 5, 2021. Dkt. 1. They filed an Amended Complaint on March 31, 2021, the same day they brought their *ex parte* Motion for a Temporary Restraining Order. Dkt Nos. 7; 9. Plaintiffs filed their TRO Motion *ex parte* to prevent Defendant Faouani from placing his and his alter ego entities' assets beyond the jurisdiction of the Court necessitate their *ex parte* TRO Motion. Dkt. 9, 2.

On April 8, 2021, the Court issued a Temporary Restraining Order ("TRO Order") freezing the assets of each of the Wicked Defendants' PayPal accounts; enjoining PayPal from transferring any monies held in those accounts until further order of the Court; and permitting limited expedited discovery directed to third parties PayPal, GitHub, and Cloudfare. Dkt. 16. The Court ordered Plaintiffs to serve Defendants with copies of the First Amended Complaint and the Court's TRO by any means authorized by law. *Id.* at 10. The TRO Order also required Defendants to show cause as to why a preliminary injunction should not issue. *Id.* at 9. On April 15, 2021, Plaintiffs appeared before the Court to present oral argument. Dkt. 25. At the hearing, counsel for Plaintiffs pointed to Defendants' prior efforts to escape liability for their alleged copyright violations and trademark-infringing activity—efforts that included shuttering a Belize-based entity in response to substantially similar litigation that sought to end a previous version of Popcorn Time. *Id.*; Dkt. 7 ¶¶ 56-57. After no representative for any Defendant responded to Plaintiffs' motion or appeared at the hearing on April 15, 2021, the matter was taken under advisement. To date, Defendants have failed to appear or respond in any capacity.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue preliminary injunctions. Because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012). A preliminary injunction is "never awarded as of right." *Winter*, 555 U.S. at 24. And "granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way." *Hughes Network Sys. v. InterDitgital Comm'cns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). Courts do not lightly award this extraordinary relief, and preliminary injunctions are therefore "to be granted only sparingly." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003)).

To prevail on a motion for a preliminary injunction, the movant must establish that each of four factors weighs in its favor: (1) the likelihood that the moving party will succeed on the merits; (2) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (3) the balance of the equities; and (4) the public interest. *Winter*, 555 U.S. at 20. A grant of temporary injunctive relief requires the movant to establish the same four factors that govern preliminary injunctions. *See id.*

## III. ANALYSIS

### A. Jurisdiction

As a threshold matter, the Court is satisfied that personal jurisdiction over the Wicked Defendants and Doe is established at this time because they purposefully availed themselves of the privileges of conducting business in Virginia. *See LHF Prods., Inc. v. Does*, No. 3:16-cv-748, 2016 WL 7422657, at *1 (E.D. Va. Dec. 22, 2016) ("To establish personal jurisdiction in this

4

District, [Plaintiff] used 'geolocation technology' to trace the IP addresses of all the Defendants to a point of origin within this District.'"). This action arises directly from the Wicked Defendants' and Doe's subscribers using at least one IP address in Reston, Virginia to pirate Plaintiffs' works. *See* Dkt. 10-3 ¶ 30; Dkt. 10-4 (Ex. A to Decl. of Authenticity of Silviu Sirbu). The Court also finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1338, "the statute conferring exclusive jurisdiction upon the federal courts in copyright infringement." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 647 (E.D. Va. 2011), *aff'd*, 498 F. App'x 341 (4th Cir. 2012).

### B. Preliminary Injunction

Under the Copyright Act, a court may grant injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Similarly, courts applying the Lanham Act have the:

> power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C. § 1116. Having reviewed the papers, declarations, oral argument, and memorandum filed in support of Plaintiffs' request for a preliminary injunction, the Court hereby makes the following findings of fact and conclusions of law.

### 1. Likelihood of Success on the Merits

Plaintiffs are likely to succeed on the merits of their claims for (a) copyright infringement, including direct infringement on Plaintiffs' exclusive rights of distribution and public performance, contributory infringement, and vicarious infringement; (b) trademark counterfeiting; and (c) unfair competition.

*a. Copyright Infringement*

Plaintiffs are likely to succeed on the merits of their claim for direct copyright infringement because they can show "ownership of a valid copyright" and Defendants' "copying of constituent elements of the work that are original" as required by 17 U.S.C. § 106. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004). Their claim for infringement of a public performance right is similarly likely to succeed: Plaintiffs have demonstrated that Defendants have made protected works available to the public, which amounts to distribution. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 448 (2014); *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). They are also likely to succeed on their contributory infringement claims because they have shown that Doe and the Wicked Defendants promote and distribute Popcorn Time, which suggests these Defendants are "infring[ing] contributorily by intentionally inducing or encouraging direct infringement." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 307 (4th Cir. 2018) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930) (2005)).

*b. Trademark Counterfeiting*

To prevail on their claim for trademark counterfeiting, Plaintiffs must prove that the Defendants (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive users. 15 U.S.C. § 1114(1); *Match. Com, L.L.C. v. Fiesta Catering Int'l, Inc.*, 1:21-cv-363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). Plaintiffs have put forward compelling evidence that Defendants are providing access to their copyrighted and trademarked works. For example, Defendants' distribution of the counterfeit software is available for free, which—at the very least—creates an interference that the mark is counterfeit. *See United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (noting that prices

well below wholesale suggest awareness or deliberate indifference that goods were counterfeit). Finally, there is a presumption of likelihood of confusion where a party sells counterfeit goods. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

*c. Unfair Competition*

Because the public is likely to be deceived or confused by the similarity of Plaintiffs' protected works and Defendants' marks, Plaintiff 42's unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is similarly likely to succeed. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

Plaintiffs have thus shown likelihood of success on the merits of their trademark infringement, copyright infringement, and unfair competition claims.

2. Irreparable Harm

The fact that Popcorn Time offers freely available, infringing copies of Plaintiffs' copyrighted works suggests that the application is undermining the legitimate market in which consumers may pay to access those same works. *See* Dkt. 10-2 (Decl. of J. Yunger) ¶¶ 16, 20-23. The goodwill and relationships Plaintiffs maintain with licensees also cuts in favor of finding irreparable harm. *See id.* ¶ 17; *see also VMC Satellite, Inc. v. Direct Cable, Inc.*, No. 1:04-cv-818, 2005 WL 937844, at *2 (E.D. Va. Mar. 7, 2005), report and recommendation adopted, No. 04-cv-818, 2005 WL 940569 (E.D. Va. Apr. 20, 2005); *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017). Additionally, without a preliminary injunction, Defendants may transfer funds from PayPal to a provider beyond the Court's jurisdictional reach, thereby continuing the ongoing infringements Plaintiffs allege.

Furthermore, where the moving party clearly establishes a likelihood of success on the merits in a trademark case, the prospect of irreparable harm is often inferred. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e

7

recognize that irreparable injury regularly follows from trademark infringement."). As the Court has explained, there is a strong likelihood that Plaintiffs will succeed on the merits. In addition, Plaintiffs would be irreparably harmed absent a preliminary injunction because without such an order, Defendants may have the incentive and capacity to transfer their assets from any account within the United States, depriving Plaintiffs of the ability to obtain monetary relief. This factor therefore favors granting preliminary injunctive relief.

### 3. Balance of the Equities

Defendants are unlikely to suffer any cognizable harm from the preliminary injunction as they will merely be prevented from profiting from past infringement and moving their funds beyond the reach of the Court. *Cf. Toolchex*, 634 F. Supp. 2d at 593 (holding that any harm a defendant would suffer by being prevented from deliberately infringing a plaintiff's trademark does not alter the balance of hardship analysis). Defendants' past conduct is also instructive on this point. After the Wicked Defendants learned they had been sued in Canada in 2015 for similar infringing conduct, they dissolved a Belize-based entity. *See* Dkt. 10-3 ¶¶ 32-33. Based on subsequent public statements Defendants made acknowledging the lawsuit, their actions seemed to be aimed at escaping legal liability. *Id.* ¶ 34. The lack of any demonstrable hardship to Defendants thus weighs in favor of granting the preliminary injunction.

### 4. Public Interest

Finally, the public's interest underlying the prohibition of copyright and trademark infringement is to prevent consumer confusion and deception. *See AMP, Inc. v. Foy*, 540 F.2d 1181, 1185 (4th Cir. 1976). Trademark infringement deceives consumers and there is a "public interest in making the misconduct unprofitable." *Synergistic Int'l v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). This factor therefore also favors granting preliminary injunctive relief.

Having considered the foregoing facts and case law, the declarations and affidavits submitted as part of the record, and oral argument at the show cause hearing, the Court finds that a preliminary injunction is warranted. Although the Court does not lightly grant this form of relief, Plaintiffs have put forward compelling evidence that Defendants' conduct constitutes infringing activity. Thus, preliminary injunctive relief is appropriate pending a final trial on the merits.

### C. Second *Ex Parte* Motion for Temporary Asset Restraint

Plaintiffs have also moved for a TRO and preliminary injunctive relief for temporary asset restraint and for leave to conduct expedited discovery of a bank account in Defendant Wicked Technology Limited's name. Dkt. 19. After the Court granted Plaintiffs' request to conduct limited, expedited discovery in response to their first *ex parte* motion for a TRO, Plaintiffs learned of an account with the Tennessee-based Evolve Bank & Trust, a subsidiary of the company Evolve Bancorp, Inc. *See* Dkt. 20-1 (Aff. of Kerry S. Culpepper, ¶¶ 4-5)). The same factors articulated above apply to this request. In particular, Plaintiffs have demonstrated a likelihood of irreparable harm because Defendants may attempt to "transfer the funds from Evolve to a foreign banking institution beyond this Court's jurisdictional reach," Dkt. 20, including multiple different foreign countries. *See id.* at 2. The risk is compounded by the fact that PayPal has now frozen Defendants' accounts on that platform.

For these reasons, the Court grants Plaintiffs' second *ex parte* motion seeking a TRO that orders temporary asset restraint of the Evolve bank account. Unless Defendants show cause within fourteen days of the entry of this order pursuant to Federal Rule of Civil Procedure 65(b), the preliminary injunctive relief this Memorandum Opinion and Order affords shall attach to this related temporary asset restraint.

Plaintiffs may also conduct limited discovery for the purpose of discovering the scope of Defendants' activities conducted through the Evolve bank account. *See Russell v. Absolute*

9

*Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (observing that district courts have "broad discretion" to supervise discovery); *see also* Fed. R. Civ. P. 26(d)(1) (stating that a district court may allow discovery to begin before a Rule 26(f) conference occurs). Because Plaintiffs have already deposited the $50,000 security bond ordered by the Court, no additional bond will be required for this related request. *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (noting that the "district court retains the discretion to set the bond amount as it sees fit or waive the security requirement.").

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiffs' Motion for a Preliminary Injunction (Dkt. 9) is hereby GRANTED; and

IT IS FURTHER ORDERED that Plaintiffs' Second *Ex Parte* Motion for a Temporary Restraining Order (Dkt. 19) is GRANTED; and

IT IS FURTHER ORDERED that EVOLVE BANK & TRUST shall immediately freeze all accounts associated with Defendants WICKED TECHNOLOGY LIMITED, VPN.HT LIMITED, and MOHAMED AMINE FAOUANI of the First Amended Complaint and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court; and

IT IS FURTHER ORDERED that Plaintiffs may immediately serve limited discovery on EVOLVE BANK & TRUST sufficient to discover the amounts of any monies held by EVOLVE BANK & TRUST in association with Defendants WICKED TECHNOLOGY LIMITED, VPN.HT LIMITED, and MOHAMED AMINE FAOUANI as well as any name, email address, address, telephone number; and

IT IS FURTHER ORDERED that any information disclosed to Plaintiffs in response to discovery issued pursuant to this Order may be used solely for the purpose of protecting Plaintiffs' rights as set forth in the First Amended Complaint; and

IT IS FURTHER ORDERED that copies of this Order be served by any means authorized by law, including (1) transmission by email, facsimile, mail and/or personal delivery to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements, (2) publishing notice on a publicly available Internet website, (3) by personal delivery upon Defendants, to the extent Defendants provided accurate contact information in the United States; and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendants, to the extent Defendants provided accurate contact information in foreign countries that are signatories to such treaties; and

IT IS FURTHER ORDERED that this Preliminary Injunction shall remain in effect until further order of the Court.

The Clerk is DIRECTED to unseal Dkt Nos. 9; 10; 19; and 20, including all supporting exhibits and attachments.

It is SO ORDERED.

Alexandria, Virginia
April 21, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge