# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, VOLTAGE HOLDINGS, LLC, MILLENNIUM IP, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., WONDER ONE, LLC, and 42 VENTURES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI,<br>JOHN OR JANE DOE d/b/a POPCORNTIME.APP, and DOES 1-100,<br><br>Defendants. | Civil Action No. 1:21-cv-00282-RDA-TCB |

i

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.  THE WICKED DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.................................................................................3

    A.  The Wicked Defendants Are Not Subject to Specific Jurisdiction in this Court..........................................................................................................5

        1.  The Wicked Defendants Did Not Purposefully Avail Themselves of This Forum. ............................................................7

        2.  Plaintiffs' Claims Do Not Arise Out of Activities Directed at Virginia. ....................................................................................10

        3.  The Exercise of Personal Jurisdiction Over the Wicked Defendants Is Not Constitutionally Reasonable. .......................14

    B.  The Wicked Defendants Are Not Subject to General Jurisdiction in this Court..........................................................................................................15

II. THE WICKED DEFENDANTS HAVE NOT BEEN LAWFULLY SERVED. ..............16

III. THE INJUNCTIONS MUST BE DISSOLVED .................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ............................................................................ *passim*

*America Online, Inc. v. Huang*,
    106 F. Supp. 2d 848 (E.D. Va. 2000) ...............................................................4, 16

*Asahi Metal Ind. Co. v. Superior Court*,
    480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)............................................15

*Attkisson v. Holder*,
    925 F.3d 606 (4th Cir. 2019) ..............................................................................16

*Baker v. Patterson Med. Supply, Inc.*,
    No. 4:11cv37, 2011 WL 7153948 (E.D. Va. Nov. 17, 2011)................................16

*Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*,
    283 F.3d 208 (4th Cir. 2002) ................................................................................5

*Burger King Corp. v. Rudzewicz*,
    *471 U.S. 462 (1985)* ...............................................................................5, 6, 10

*Calder v. Jones*,
    465 U.S. 783 (1984).........................................................................................7, 13

*Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*,
    334 F.3d 390 (4th Cir. 2003) .............................................................................9, 13

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
    551 F.3d 285 (4th Cir. 2009) ................................................................................5

*Consulting Engineers Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ........................................................... *passim*

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)..........................................................................................15

*Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*,
    218 Va. 533, 238 S.E.2d 800 (1977)...................................................................16

*ESAB Group, Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) .....................................................................6, 13, 15

iii

*FireClean, LLC v. Tuohy,*
   2016 U.S. Dist. LEXIS 96294 (E.D. Va., July 21, 2016) ......................................10

*Foster v. Arletty 3 Sarl,*
   278 F.3d 409 (4th Cir.2002) ......................................................................................15

*Graduate Mgmt. Admission Council v. Raju (GMAC),*
   241 F.Supp.2d 589 (E.D. Va. 2003) ..........................................................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984)....................................................................................................15

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310, 66 S. Ct. 154 (1945)..............................................................................5

*Koehler v. Dodwell,*
   152 F.3d 304 (4th Cir. 1998) ...............................................................................16, 17

*Walden v. Fiore,*
   134 S.Ct. 1115 1122, 188 L.Ed.2d 12 (2014) ...........................................................11

*Zaletel v. Prisma Labs, Inc.,*
   226 F.Supp.3d 599 (E.D. Va. 2016) ..........................................................4, 5, 6, 13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
   952 F. Supp. 1119 (W.D Pa. 1997)......................................................................6, 10

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants WICKED TECHNOLOGY LIMITED d/b/a VPN.HT ("Wicked"), VPN.HT LIMITED ("VPN.HT"), and MOHAMED AMINE FAOUANI ("Faouani"), (collectively, "the Wicked Defendants") by counsel and by special appearance for the limited purpose of challenging personal jurisdiction, respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. As grounds therefor, Defendants state as follows:

## STATEMENT OF FACTS

The Copyright Plaintiffs in this case are companies that produce and distribute movies. First Amended Compl. ("FAC") ¶¶ 33-36. All of the Plaintiffs are Nevada corporations or Nevada limited liability companies except for Killing Link Distribution, Inc., which is a California limited liability company and Plaintiff 42, which is a Hawaii limited liability company. *Id.* at ¶¶ 33-36, 38. Other than Plaintiff 42, which has its principal place of business in Kailua Kona, Hawaii, all of the Plaintiffs have their principal offices in California. *Id.* Plaintiff 42 distributes and streams licensed content to the public "from a plurality of means including, but not limited to, websites." *Id.* at ¶ 39. Plaintiff 42 allegedly streams movie-related content from the website http://popcorntime4u.com/ under the mark "Popcorn Time" through an agreement with the creator of a YouTube channel called "Popcorned Planet" (since 2009). *Id.* at ¶ 40.

Faouani is an Algerian citizen who lives and works in Algeria. *See Declaration of Mohamed Amine Faouani in Support of Motion to Dismiss*, attached hereto ("Faouani Decl."), ¶ 2. Faouani is a director and shareholder of Wicked and VPN.HT (collectively, "Wicked"). *Id.* at ¶ 3. Both Wicked entities are Hong Kong companies that, at various times, operated the website

1

VPN.ht and provided a Virtual Private Network (VPN) service. *Id.* at ¶ 4. Wicked conducts its business operations out of Hong Kong and Algeria. *Id.* at ¶ 5.

Faouani has never traveled to the United States, and had never heard of the state of Virginia prior to this lawsuit. *Id.* at ¶ 2. He does not have an interest in, use, or possess any real property in Virginia. *Id.* He has not transacted any business in Virginia or contracted to supply services or things in Virginia. *Id.* He does not regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Virginia. *Id.* He has not used a computer or computer network located in Virginia. *Id.*

Wicked does not maintain offices or agents in Virginia, own property in Virginia, solicit or initiate business in Virginia, has not deliberately engaged in significant or long-term business activities in Virginia, has not entered into any contracts in Virginia, and has not had any in-person contact or knowingly corresponded electronically with anyone in Virginia. *Id.* at ¶ 6.

Wicked has a business relationship with a company called Voxility SRL (for Eastern Europe), which is located in Bucharest, Romania. *Id.* at ¶ 7. The parties did not sign a formal contract governing the relationship. *Id.* In the arrangement with Voxility SRL, Wicked received invoices from and made payments to Voxility LLC in California. *Id.*

The Wicked Defendants do not have any relationship with the CoreSite company or the CoreSite data center in Reston, Virginia. *Id.* at ¶ 8. The Wicked Defendants believe, but do not personally know, that CoreSite is a sub-contractor of Voxility, and that Voxility contracts with CoreSite for use of CoreSite's data centers. *Id.* at ¶ 9. The Wicked Defendants did not instruct or direct Voxility to do business with CoreSite in Virginia. *Id.* at ¶ 10.

2

None of the Wicked Defendants own the popcorntime.app domain or host the popcorntime.app domain. *Id.* at ¶¶ 11-12. The VPN service provided by Wicked functions like most other VPN services. *Id.* at ¶ 14. Wicked's VPN does not have any special features and is not specially adapted for using the Popcorn Time application. *Id.* A VPN is like an internet relay. The VPN blindly receives data on one side and blindly retransmits the data on the other side. The VPN does not inspect the data it sends or receives. *Id.* at ¶15.

Plaintiffs allege that the Wicked Defendants' VPN services are a vehicle for copyright and trademark infringement by the VPN subscribers (Defendants DOES 1-100 in this case). Plaintiffs filed this lawsuit against the Wicked Defendants as an action for direct copyright infringement under 17 U.S.C. §§ 106(1), (3), and (4) and 501, contributory copyright infringement by intentional inducement under the Copyright Act, contributory copyright infringement based upon material contribution, vicarious infringement, secondary liability for DMCA Copyright Act Violations, trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Federal Unfair Competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and requested injunctive relief based on contributory infringement under the Copyright Act. The Wicked Defendants now move to dismiss the claims in the First Amended Complaint against them for lack of personal jurisdiction.

## **ARGUMENT**

## I.     **THE WICKED DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.**

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action when the Court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When the exercise of personal jurisdiction is challenged pursuant to Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, "with the burden on the plaintiff ultimately to prove the existence of a

ground for jurisdiction by the preponderance of the evidence." *America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 852 (E.D. Va. 2000) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

A federal district court may only exercise personal jurisdiction over a foreign person or corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits, and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1. *Consulting Engineers Corp. v. Geometric Ltd*., 561 F.3d 273 (4th Cir. 2009). Under Fourth Circuit law, resolution of a personal jurisdiction challenge involves a two-step inquiry. *Zaletel v. Prisma Labs, Inc.,* 226 F.Supp.3d 599 (E.D. Va. 2016) (citing *Universal Leather, LLC v. Koro AR, S.A.,* 773 F.3d 553, 558 (4th Cir. 2014)). The first step is to determine whether Virginia's long-arm statute, Va. Code § 8.01–328.1, by its terms, reaches defendant's conduct. If the long-arm statute does not reach defendant's conduct, the inquiry ends; there is no personal jurisdiction over defendant. *See id.* But if the long-arm statute, by its terms, reaches defendant's conduct, then analysis turns to the second step—the due process inquiry—to determine whether the long-arm's reach exceeds its constitutional grasp. *Id.*

The relevant portion of Virginia's long arm statute provides for personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's "[t]ransacting any business" in Virginia,  "[c]ausing tortious injury by an act or omission" in Virginia, or "[c]ausing tortious injury" in Virginia by an act or omission outside Virginia if he (i) regularly does or solicits business, or (ii) engages in any other persistent course of conduct, or (iii) derives substantial revenue from goods used or consumed or services rendered, in Virginia. Va. Code. Ann. § 8.01-328.1(A)(1), (3), and (4). Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the Due Process Clause, the

4

statutory inquiry merges with the constitutional inquiry and the court may consider solely whether due process is satisfied. *Consulting Eng'rs Corp.,* 561 F.3d at 277; *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009).

Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945). A court conducts the same due process analysis under Federal Rule of Civil Procedure 4(k)(2), only the analysis is applied to all fifty states, as opposed to the single forum state. *See Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002).

Personal jurisdiction that meets the requirements of due process can be established under either general or specific jurisdiction. *Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).* Where, as here, a defendant's alleged contacts with the forum also constitute the asserted basis for the suit, analysis properly focuses on specific jurisdiction. *Zaletel,* 226 F.Supp.3d at 606 (citing *Tire Eng'g v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 301 (4th Cir. 2012) (where plaintiff "argues only that the court possess[es] specific jurisdiction over [defendants] ... our analysis is confined to that model")).

### A.     The Wicked Defendants Are Not Subject to Specific Jurisdiction in this Court.

Plaintiffs have failed to allege facts and purposeful minimum contacts sufficient to establish specific personal jurisdiction over the Wicked Defendants in this Court. The Fourth Circuit has synthesized the due process requirements for asserting specific jurisdiction into a three-part test. This test requires the Court to consider, in order, "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether

5

the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 279 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

The Fourth Circuit has noted that the constitutional standard relevant to personal jurisdiction over persons conducting business on the Internet has evolved as necessary to accommodate the nature of the Internet and opined that the three-part test should be used to determine whether a defendant is subject to jurisdiction in a State because of its electronic transmissions to that State. *See Zaletel,* 226 F.Supp.3d at 606 (citing *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013)). The minimum contacts test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174. It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued. *Consulting Eng'rs Corp.,* 561 F.3d at 277 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980)). Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that "they amount to a surrogate for presence and thus render the exercise of sovereignty just." *Consulting Eng'rs Corp,* 561 F.3d at 277-278; *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

The Fourth Circuit has adopted and adapted the *Zippo* test, described in further detail in the following sections herein, which identified as a guiding principle in Internet-contact cases that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the

6

Internet." *ALS Scan* at 713 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D Pa. 1997)).

      **1.**     **The Wicked Defendants Did Not Purposefully Avail Themselves of This Forum.**

      The Wicked Defendants' alleged contacts with Virginia do not constitute purposeful availment. The first prong of the three-part test articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state. *Consulting Eng'rs Corp*, 561 F.3d at 278. Purposeful availment cannot be satisfied by the unilateral activity of those who claim some relationship with a nonresident defendant. *Kulko v. Superior Court of California In and For City and County of San Francisco*, 436 U.S. 84, 93-94, 98 S.Ct. 1690 (1978) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958)). Instead, a defendant must purposefully direct its actions toward a forum in order to be found to have purposefully availed itself of the benefits and protections of the forum's laws. *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174. There must be knowing direction of harm towards the forum state to satisfy this prong. *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The Supreme Court has long held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791, 104 S. Ct. 1482 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California."). In this case however, none of the Plaintiffs suffered their alleged harm or injuries in Virginia, and none are Virginia companies.

      In assessing the first prong of the test, courts in the Fourth Circuit have considered a variety of nonexclusive factors in determining whether a defendant has purposefully availed

himself of the forum at issue. *Consulting Eng'rs Corp.*, 561 F.3d at 278. "In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." *Id.*

Applying the foregoing principles here, it is clear that the Wicked Defendants have not "purposefully availed" themselves of the privilege of conducting business in Virginia, and thus are not subject to specific personal jurisdiction in this forum. None of the business-related factors referenced in *Consulting Eng'rs Corp.* support a finding that the Wicked Defendants purposefully availed themselves of the benefits and protections of Virginia's laws, or that they have engaged in purposeful conduct directed towards Virginia. *See* 561 F.3d at 278. The Wicked Defendants have never had an office, agent, or property in Virginia. There are no allegations regarding any physical presence of any Wicked Defendant in Virginia via offices, agents, property or in-person contact. This case does not involve a business relationship between Plaintiffs and the Wicked Defendants, and there are no allegations regarding a contractual agreement that Virginia law governed disputes, communications between the parties about any business being transacted, or any contractual duties to be performed in Virginia. Faouni has no

significant or ongoing business activity in Virginia, has never traveled to Virginia or the United States, and had never even heard of Virginia prior to this suit.

Plaintiffs do not allege that the Wicked Defendants reached into Virginia to initiate business via in-person or electronic contacts, but rather that they merely "contracted with" Voxility, a limited liability company organized under the laws of Virginia with its principal place of operations in San Francisco, California, to provide IP addresses to unknown users in unknown locations, one of which traced to a data center in Reston, Virginia provided by a different company, CoreSite. Wicked's business relationship was actually with Voxility SRL in Romania. *See* Faouani Decl. ¶ 7. The Wicked Defendants have had no interaction with CoreSite or anyone else in Virginia. While the personal jurisdiction analysis focuses on Defendants' purposeful contacts, it was third-party company Voxility, not the Wicked Defendants, that unilaterally elected to do business with the CoreSite data center in Virginia, which does not demonstrate any purposeful targeting of Virginia by the Wicked Defendants. Plaintiffs' bare contention that a server hosting or transmitting data via Defendants' VPN service may be located in Virginia is insufficient for personal jurisdiction.  Instead, this contention illustrates that, to the extent that Voxility provided the IP address at issue which transmitted data through the CoreSite server in Virginia, both Voxility and the VPN user(s) took unilateral actions directed to Virginia – not the Wicked Defendants. Further, the Fourth Circuit has described the level of contact created by the connection between an out-of-state defendant and a web server located within a forum as "de minimis." *See Carefirst of Maryland v. Carefirst Pregnancy Ctrs*., 334 F.3d 390 (4th Cir. 2003) (holding that defendant's employment of Maryland-based web-hosting company did not ground specific jurisdiction over defendant in Maryland and it is unreasonable to expect defendant could have foreseen that it could be haled into a Maryland court and held to account for the contents of

its website merely by utilizing servers owned by a Maryland-based company); *see also FireClean, LLC v. Tuohy,* 2016 U.S. Dist. LEXIS 96294, *18 (E.D. Va., July 21, 2016) (finding that unilateral actions by hosting companies transmitting defendant's online content through servers located in Virginia were not evidence of defendant's purposeful targeting of Virginia and affirming dismissal for lack of personal jurisdiction).  The only possible contact with Virginia is through the offering of the single allegedly infringing IP address associated with the server in Virginia, that was provided to Voxility through RIPE or ARIS, then provided to the Wicked Defendants through Voxility, which utilized the CoreSite data center in Reston, Virginia. *See* FAC ¶¶141-144. It appears completely "random, fortuitous, or attenuated" that one IP address transmitted data through a server in Virginia secured by Voxility through CoreSite. Contacts of that kind do not indicate purposeful targeting of Virginia. Thus, the Wicked Defendants' contacts with Virginia are not of the quantity, nature, or quality that give rise to personal jurisdiction. In no meaningful way did the Wicked Defendants purposefully avail themselves of the privilege of conducting business in Virginia [or the United States], and Plaintiffs cannot satisfy the first prong of the three-part test required to exercise personal jurisdiction over the Wicked Defendants.

### 2.     Plaintiffs' Claims Do Not Arise Out of Activities Directed at Virginia.

The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit. *See Consulting Eng'rs Corp.,* 561 F.3d at 279; *Burger King*, 471 U.S. at 472, 105 S. Ct. 2174. If the plaintiff satisfies prongs one and two, prong three comes into play. *Id.*

The Fourth Circuit has adopted a modified version of the *Zippo* sliding scale for defining when electronic contacts with a state constitute sufficient purposeful conduct. *See Zippo Mfg. Co.*

*v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *ALS Scan*, 293 F.3d at 714. Using the sliding scale, a court may exercise jurisdiction over an out-of-state defendant only when that entity "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that the activity creates, in a person within the State, a potential cause of action." *ALS Scan, Inc*., 293 F.3d at 714. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. *Id.* In the Fourth Circuit's view, "[s]uch passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State." *Id.*

Relatedly, the Supreme Court has underscored that a defendant's relationship to the forum state "must arise out of contacts that 'the defendant *himself*' creates with the forum state." *Walden v. Fiore*, 134 S.Ct. 1115 1122, 188 L.Ed.2d 12 (2014) (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174). The *Walden* Court further emphasized that the "minimum contacts analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with *persons who reside there*." *Id.* (emphasis added). Thus, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174).

Here, the claims do not arise out of activities directed at Virginia, and the Wicked Defendants did not direct electronic activity into Virginia with the manifested intent of engaging in business or other interactions. Moreover, any activity by the Wicked Defendants could not

have created, in a person within Virginia, a potential cause of action, as no Plaintiffs are or were ever located in Virginia. Plaintiffs' claims arise out of alleged copyright and trademark infringement by and related to alleged subscribers of the Wicked Defendants' VPN services, i.e. Defendants DOES 1-100. More specifically, Plaintiffs allege that Defendants DOES 1-100 obtained an IP address from the Wicked Defendants via their VPN service, and used the IP address to download and reproduce or share copies of copyright protected content, including Plaintiffs' works, to individuals across the world and/or stream (publicly perform) from said IP address. *See* FAC ¶¶ 60, 172.

The facts giving rise to Plaintiffs' claims in this case involve online activity and VPN services that were not expressly directed at Virginia, but to an undefined group of Internet users around the world. Nothing indicates that the Wicked Defendants specifically directed advertising or web activity at Virginia or to Virginia or U.S. users. The Wicked Defendants did not direct the sales of VPN services to Virginia or any Virginia consumers, nor did it require or request that Voxility subcontract to the CoreSite data center in Reston, Virginia. The Wicked Defendants did not specifically structure the relationship with Voxility to facilitate anything or provide any services in Virginia. The IP address at issue was obtained indirectly, as Voxility reallocated or reassigned IP addresses it received from ARIN and RIPE to its customer Wicked, and Wicked offered the IP addresses to subscribers via its VPN service. *See* FAC, ¶¶ 142-144. Plaintiffs allege that Defendants DOES 1-100, after obtaining an IP address from Wicked, then used the IP address to commit acts of copyright and trademark infringement. The data transmitted through Wicked's VPNs is encrypted and the VPN does not inspect the data it sends or receives, nor does Wicked control subscribers' web activity.

The Fourth Circuit has made it clear that personal jurisdiction requires purposeful targeting of a forum, not just the level of interactivity of the website at issue, with manifest intent to engage in business there. *ALS Scan*, 293 F.3d at 714; *Graduate Mgmt. Admission Council v. Raju (GMAC),* 241 F.Supp.2d 589, 594 (E.D. Va. 2003). The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state. *Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390 (4th Cir. 2003); *see also ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625-26 (emphasizing importance, in light of *Calder*, of evidence that defendant expressly aimed or directed its conduct toward forum state and noting that business activities focusing "generally on customers located throughout the United States and Canada without focusing on and targeting" forum state cannot yield personal jurisdiction). The *ALS Scan* approach reconciles the increased interconnectivity of the Internet Age with the maxim that "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." *See ALS Scan*, 293 F.3d at 711.

In this case, the subscriber of IP address 104.152.44.26 (the IP address associated with the CoreSite data center in Virginia) is alleged to have had a high number of instances of infringement. *See* FAC ¶ 191. Even if said subscriber obtained the IP address at issue through Wicked by way of Voxility by way of CoreSite, any interaction between the subscriber (who could be located anywhere) and the server in Virginia was in the subscriber's unilateral control as Wicked did not control subscribers' VPN activity, and is far too "random, fortuitous, or attenuated" to form the basis for personal jurisdiction over the Wicked Defendants. *See Zaletel v. Prisma Labs, Inc*., 226 F.Supp.3d 599, 610 (E.D. Va. 2016) (finding user-initiated contact to be fortuitous and not arising out of defendant created contacts with the forum). Wicked functioned from Hong Kong and Algeria as a VPN service provider, and in that role provided IP addresses

to users all over the world to enable them to relay encrypted information over the Internet. Wicked did not select or knowingly transmit infringing works specifically to Virginia with the intent of engaging in business or any other transaction in Virginia. Rather, its role as a VPN provider was passive at most. Thus, under the sliding scale test, the Wicked Defendants did not direct electronic activity specifically at any target in Virginia; did not manifest an intent to engage in a business or some other interaction in Virginia; and none of its conduct in enabling VPN use created a cause of action in a person in Virginia, as no Plaintiff is a Virginia resident or entity, and all are companies organized in and/or operating out of Nevada, California, or Hawaii.

Accordingly, Plaintiffs cannot satisfy the second prong of the three-part test because its claims do not arise out of activities directed at Virginia.

### 3. The Exercise of Personal Jurisdiction Over the Wicked Defendants Is Not Constitutionally Reasonable.

Finally, under the third prong of the Fourth Circuit's test, a Court may consider "additional factors to ensure the appropriateness of the forum once it has determined that a defendant purposefully availed itself" of the forum. *Consulting Eng'rs Corp.* 561 F.3d at 279. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *Id.* (citing *Burger King*, 471 U.S. at 477, 105 S. Ct. 2174).

The Wicked Defendants contend that they have not purposefully availed themselves of this forum. However, even if purposeful availment were established, the third prong of the specific jurisdiction test also weighs against exercising personal jurisdiction over the Wicked Defendants, an Algerian citizen and two Hong Kong corporations. As the Supreme Court has

14

explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026 (1987); *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002).

As Plaintiffs cannot satisfy the third prong, or any prong, of the three-part test, Virginia cannot exercise specific personal jurisdiction over the Wicked Defendants.

### B. The Wicked Defendants Are Not Subject to General Jurisdiction in this Court.

General jurisdiction exists for claims entirely distinct from the defendant's in-state activities when a defendant's activities in the state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984). General jurisdiction may be asserted over a defendant "whose activities in the forum state have been continuous and systematic.... But the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group*, 126 F.3d at 623. *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002). General jurisdiction exists only when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] *essentially at home* in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846 (2011)) (emphasis added).

Plaintiffs have not alleged jurisdiction on the basis that the Wicked Defendants engaged in continuous and systematic activities within Virginia, and as there are insufficient contacts for specific jurisdiction over the Wicked Defendants, there can be no general jurisdiction over the

Wicked Defendants.   The Wicked Defendants' VPNs that were routed through a server in Virginia do not provide a basis for general jurisdiction. In *ALS Scan*, the Fourth Circuit stated:

> We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly transmit electronic signals into the State via the Internet solely on those transmissions. Something more would have to be demonstrated.

293 F.3d at 715.

Plaintiffs have not made any showing that the Wicked Defendants' activities come close to demonstrating "something more" such that the Court's exercise of general jurisdiction would be constitutionally permissible. *See also Baker v. Patterson Med. Supply, Inc.*, No. 4:11cv37, 2011 WL 7153948, at *8 (E.D. Va. Nov. 17, 2011) (finding that plaintiff cannot make out a prima facie case for general jurisdiction over out-of-state defendant based upon defendant's minimally interactive website); *America Online v. Huang* (by registering the two domain names at issue here, eAsia did not purposefully direct its activities at this forum, and due process would be offended were personal jurisdiction granted based on those contacts); *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 534, 238 S.E.2d 800, 801-02 (1977) (nonresident purchaser did not have minimum contacts with Virginia, even though it ordered plywood panels from a Virginia company, for delivery F.O.B. Danville, Virginia).

Accordingly, the Court may not exercise general personal jurisdiction over the Wicked Defendants.

## II.   THE WICKED DEFENDANTS HAVE NOT BEEN LAWFULLY SERVED.

A court generally lacks personal jurisdiction over unserved parties. *See, e.g., Attkisson v. Holder*, 925 F.3d 606 (4th Cir. 2019) (affirming dismissals without prejudice for unnamed John Doe defendants not served within 90 days after the complaint per Rule 4(m)), *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant.").

On April 30, 2021, Plaintiffs' counsel filed a "Request for Entry of Default" stating that "Defendants were served… by registered email" and declares that service was proper under Rule 4(f)(3) and the Court's order of April 8, 2021.  *See* Request for Entry of Default, Dkt. No. 027 at 1; Temporary Restraining Order, Dkt. No. 016 at 10.

FRCP 4(f)(3) provides that service may be effectuated "by other means not prohibited by international agreement, as the court orders" and the Court's April 8, 2021 order stated that process "may be served by any means authorized by law."  Service via "registered email" is not authorized by law and was not ordered by the Court.  Accordingly, the Wicked Defendants have not been lawfully served and the Court lacks personal jurisdiction over the Wicked Defendants. *See Koehler v. Dodwell*, 152 F.3d at 306 (4th Cir. 1998).

## III.   THE INJUNCTIONS MUST BE DISSOLVED

On April 8, 2021 the Court entered a temporary restraining order freezing a Paypal account.  *See* Dkt. No. 016 at 8.  On April 21, 2021, the Court determined that it had personal jurisdiction over the Wicked Defendants and issued a preliminary injunction.  *See* Dkt. No. 026 at 4-5.  For the reasons set forth in Section I, *supra*, the Court does not have personal jurisdiction over the Wicked Defendants and the injunction freezing the PayPal account at issue must be dissolved.  Additionally, the Paypal account frozen pursuant to the Court's April 8, 2021 order does not belong to the named Wicked Defendants, but instead to Wicked Technology UAE ("Wicked UAE").  Faouani Decl. ¶ 17.  Wicked UAE is a company formed under the laws of the United Arab Emirates and a non-party to this proceeding.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Amended Complaint should be dismissed as to the

Wicked Defendants based on a lack of personal jurisdiction pursuant to Rule 12(b)(2).


Date:   May 6, 2021                              Respectfully Submitted,

                                                 WICKED TECHNOLOGY LIMITED d/b/a
                                                 VPN.HT, VPN.HT LIMITED, and
                                                 MOHAMED AMINE FAOUANI



                                                 /Benjamin E. Maskell/
                                                 Benjamin E. Maskell, Esquire
                                                 Va. State Bar No. 78791
                                                 MASKELL LAW PLLC
                                                 937 N. Daniel St.
                                                 Arlington, VA 22201
                                                 Telephone: (703) 568-4523
                                                 Email: Ben@MaskellLaw.com
                                                 *Counsel for Defendants Wicked Technology
                                                 Limited, VPN.HT Limited, and Mohamed
                                                 Amine Faouani*

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2021, a true copy of the foregoing Memorandum in Support of Motion to Dismiss Plaintiffs' First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
kculpepper@culpepperip.com
*Counsel for Plaintiffs*

Timothy B. Hyland
HYLAND LAW PLLC
1818 Library Street, Suite 500
thyland@hylandpllc.com
*Counsel for Plaintiffs*

/Benjamin E. Maskell/_____
Benjamin E. Maskell, Esquire
Va. State Bar No. 78791
MASKELL LAW PLLC
937 N. Daniel St.
Arlington, VA 22201
Telephone: (703) 568-4523
Email: Ben@MaskellLaw.com
*Counsel for Defendants Wicked Technology Limited, VPN.HT Limited, and Mohamed Amine Faouani*