**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

MILLENNIUM FUNDING, INC., et al,

      Plaintiffs,

      v.

WICKED TECHNOLOGY LIMITED d/b/a
VPN.HT et al.,

      Defendants.

Civil Action No. 1:21-cv-00282-RDA-TCB

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

1

**Table of Contents:**

Table of Authorities................................................................................................. 3

I.      Introduction……...........................................................................................…. 5

II.     Brief Procedural History......................................................................... 6

III.    Brief Statement of Facts………………………………………………………….. 9

IV.    Legal Standard…………………………………………………………………….. 12

V.     Argument............................................................................................. 15

        A.    Specific-type Personal Jurisdiction over the Wicked Defendants is appropriate under Virginia's long-arm statute…………........................................... 15

               1.    The Wicked Defendants Purposefully Availed themselves of the Privileges of Conducting Business in Virginia………………………………………….. 15

               2.    Plaintiffs' Claims arise out of Defendants' contacts in Virginia……….. 18

               3.    The Exercise of Personal Jurisdiction over the Wicked Defendants is Constitutionally Reasonable…………………………………………………… 19

        B.    Defendant Faouani's Declaration is not credible…............................................. 20

        C.    Personal Jurisdiction is alternatively appropriate under the Federal long-arm statute…………………………........................................................... 24

        D.    The Asset Restraint of the Preliminary Injunction should be maintained............ 25

               1.    The Wicked Defendants' lack standing to contest the Asset Restraint… 26

               2.    The Wicked Defendants control the PayPal accounts…………………. 26

         E.    The Wicked Defendants' Motion should be dismissed for not being timely filed………………………………………………………………………….... 28

VI.    Conclusion.......................................................................................... 29

**Table of Authorities:**

*Statutes and Rules*

17 U.S.C. § 512(c)……………………………………………………………………… 25

Fed. R. Civ. P. 4(f)(3)…………………………………………………………………… 8

Fed. R. Civ. P. 4(k)(1)………………………………………………………………... 13

Fed. R. Civ. P. 4(k)(2)………………………………………………………………... 13

Fed. R. Civ. P. 12(a)(1) ……………………………………………………………… 28

Fed. R. Civ. P 12(b)(2)……………………………………………………………. 12, 28

Fed. R. Civ. P. 65(d)(2)(C)………………………………………………………... 27-28

LR 7(H)………………………………………………………………………………… 28

*Cases*

*Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002)………………………………………………………………………………. 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)…………………………………………………………………………………… 14

*Carter v. Lee*, F.3d 240, 252 n. 11 (4th Cir. 2002)………………………………………… 24

*CFA Institute v. Financial Analysts of India*, 551 F.3d 285 (4th Cir. 2009)………………… 19-20

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ………………………………….. 12-13

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)…………….. 14-15

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021)………. 14, 19

*Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)…………………………………… 13

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, (1945)………………... 13

*Locklear v. Bergman & Beving AB*, 457 F.3d 363, 368 n. 2 (4th Cir. 2006)…………………… 24

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)………………………………………….. 26

*Richardson v. Ramirez*, 418 U.S. 24, 36 (1974)…………………………………………………… 26

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018)………………………………………………………………………………………… 15

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)……………………………… 26

*Tire Eng'g & Distrib., LLC v. Shandong LingLong Rubber Co., Ltd.,* 682 F.3d 292, 303 (4th Cir. 2012)………………………………………………………………………………………… 18-20

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020)………………... 13, 16-17

*Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)………………… 14

*Warth v. Seldin*, 422 U.S. 490, 498 (1975)……………………………………………………… 26

**Other Authorities**

Chris Matthews, *The 'Netflix for Pirates' Is Making a Triumphant Return*, Fortune (Feb. 26, 2016), available at http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/……………………….. 9

James W. Moore et al*., Moore's Federal Practice*, vol. 2A, § 12.07 [2.-2] (2d ed, 1997)……… 12

U.S. Const. art. III, § 2……………………………………………………………………………... 26

United States Trade Representative, *2020 Review of Notorious Markets*, Jan. 14, 2021, pg. 26, available at https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of %20Notorious%20Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf……… 9

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## I.      INTRODUCTION

Defendants WICKED TECHNOLOGY LIMITED, VPN.HT Limited and MOHAMED AMINE FAOUANI ("Wicked Defendants") admit to receiving invoices from and making payments to the Virginia company Voxility, LLC ("Voxility") – the arrangement which is the genesis of this lawsuit – yet in the same breath argue that they have not purposefully availed themselves of the privilege of conducting business in Virginia.   The Wicked Defendants make this contention while: (1) not denying that they were provided Internet Protocol addresses in Virginia by the Virginia company Voxility; (2) not denying that they received the hundreds of notices of infringement of Plaintiffs' Works from Voxility; and (3) not denying that their subscribers include Virginia residents that used their so-called Popcorn Time VPN to pirate copyright protected content exactly as they encouraged their subscribers to do so.  Even worse, Defendant MOHAMED AMINE FAOUANI ("Faouani") makes declarations under penalty of perjury that are half-truths at best and out right deceptions at worse.   Defendant Faouani's declarations are easily disprovable by documents from PayPal, CloudFlare, GitHub, LinkedIn and *emails he himself sent to Plaintiffs' counsel*.  For example, Defendant Faouani declares under penalty of perjury that he does not "…host the Popcorn Time domain" yet he pays and maintains the CloudFlare account for hosting Popcorn Time, uses his CloudFlare account to control the Popcorn Time domain, has login privileges for the GitHub account where the Popcorn Time software code is hosted and offered to redirect the Popcorn Time website to a different website in an email.  Defendant Faouani further declares that he does not do any business in Virginia, yet his own PayPal statements show that he has regular subscribers in Virginia who pay him monthly. Defendant Faouani says he has never been to the United States or heard of Virginia, yet in his

LinkedIn profile he says that he was CTO of a US company two states over in Delaware for four years.  The Wicked Defendants' Motion to Dismiss should be denied and the Clerk should enter default against the Wicked Defendants.

## II.     BRIEF PROCEDURAL HISTORY

On March 5, 2021 Plaintiffs FALLEN PRODUCTIONS, INC., EVE NEVADA, LLC, MILLENNIUM FUNDING, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, VOLTAGE HOLDINGS, LLC, HB PRODUCTIONS, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., and WONDER ONE, LLC filed the original Complaint [Doc. #1] against the Wicked Defendants, JOHN OR JANE DOE d/b/a POPCORNTIME.APP ("Doe"), DOES 1-100, and Voxility alleging *inter alia* direct copyright infringement, contributory copyright infringement, vicarious infringement, and Digital Millennium Copyright Act ("DMCA") violations.

On March 31, 2021 MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, MILLENNIUM IP, INC., VOLTAGE HOLDINGS, LLC, KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., and WONDER ONE, LLC and 42 VENTURES, LLC ("Plaintiffs") filed a First Amended Complaint ("FAC") [Doc. #7] seeking injunctive relief and damages against Defendants for *inter alia* direct copyright infringement, contributory copyright infringement, vicarious infringement, Digital Millennium Copyright Act ("DMCA") violations, trademark infringement, federal unfair competition and breach of contract.  Voxility is not included as a Defendant in the FAC.

6

The allegations common to both the original complaint and the FAC are that the Wicked Defendants and DOE directly infringe and contribute to infringement of the Copyright Plaintiffs' copyright protected motion pictures ("Works") by promoting and distributing the piracy software application Popcorn Time, and a Virtual Private Network ("VPN") service branded as "Popcorn Time VPN" to their subscribers for the purpose of concealing piracy. *See* Complaint at ¶¶133-140, FAC at ¶¶156-173   Particularly, Plaintiffs allege that the Wicked Defendants' subscribers use Internet Protocol ("IP") addresses in Virginia, among other locations, that were allocated to the Wicked Defendants from the Virginia company Voxility to pirate their Works as directed and encouraged to by the Wicked Defendants. *See id.* at ¶146.

On that same day of filing the FAC, Plaintiffs filed a First *Ex Parte* motion for a Temporary Restraining Order, Asset Restraint and Expedited Discovery [Doc. #9].

On April 8, 2021 the Court issued the TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION ("TRO Order") [Doc. #16]. The TRO Order set a Show Cause Hearing for April 15, 2021 on why the TRO should not become a Preliminary Injunction (TRO Order at pg. 9) and gave Plaintiffs permission to serve the TRO Order, the notice of the show cause hearing, and the FAC "…by any means authorized by law, including (1) transmission by email… to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements." Id. at pg. 10. The TRO Order further granted Plaintiffs' request for permission to conduct limited discovery on PayPal, GitHub and Cloudflare. *See id.* at pg. 8.

On April 8, 2021 Plaintiffs served a copy of the TRO Order, the notice of the show cause hearing, and the FAC ("pleadings") by registered e-mail using the third-party company RPost

pursuant to the TRO Order and Rule 4(f)(3) of the *Federal Rules of Civil Procedure*. *See* AFFIDAVIT OF SERVICE OF WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI AND JOHN OR JANE DOE d/b/a POPCORNTIME.APP [Doc. #22] at ¶2.  Plaintiffs sent copies of the pleadings by registered email to: (1) the email address (cocca-live-1api@registrymail.net) provided by Defendant Faouani in the WHOIS records for the Wicked Defendants' website VPN.HT; (2) the email address (wallacez@dzlearn.net) Defendant Faouani provided for Wicked Technology Limited in the RIPE NCC membership records; (3) the email addresses (abuse@vpn.ht and david@vpn.ht) that Defendant Faouani used to communicate with Voxility; and (4) the email address (faouani@uz4.net) that Defendant Faouani used to communicate with Plaintiffs' counsel.  *See* id. (explanatory chart showing the email address and basis).  Defendant Faouani opened the email on April 9, 2021 at "07:43 PM (UTC)".  Exhibit "2" [Doc. #22-2] (Certified Record of Opening).

On April 9, 2021 Plaintiffs filed a Second *Ex Parte* motion for a Temporary Restraining Order ("TRO") and Asset Restraint [Doc. #19].

On April 15, 2021 the Court held the Show Cause Hearing and hearing on Plaintiffs' Second TRO requests.  Doe and the Wicked Defendants did not attend the hearing.  *See* Civil Minutes [Doc. #25].

On April 21, 2021, the Court issued the Order granting the Preliminary Injunction ("Preliminary Injunction Order") that included the relief requested in Plaintiffs' first and second TRO requests [Doc. #26].

On April 30, 2021 Plaintiffs filed a Request for Entry of Default [Doc. #27]. The Wicked Defendants have not filed an opposition to Plaintiffs' Request for Entry.

On May 6, 2021 the Wicked Defendants filed the Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. #29] and Memorandum [Doc. #30] ("Motion").

## III.   BRIEF STATEMENT OF FACTS

Copyright Plaintiffs are the owners of the copyrights in the Works listed in Exhibit "1" [Doc. #7-1] of the FAC.  The Works are currently available for sale in commerce.  *See, e.g.,* Decl. of Jonathan Yunger [Doc. #10-2] at ¶¶ 3-6.

The Wicked Defendants and Defendant Doe distributed and promoted the piracy application Popcorn Time from the website popcorntime.app for distributing and streaming Plaintiffs' Works without a license.  *See* Decl. of Kerry S. Culpepper at ¶9 (Faouani states, "…we have ended our partnership with Popcorn Time…"); Decl. of Joshua J. Lee [Doc. #7-5] to the FAC at ¶¶ 15-18; Decl. of Stephen M. Bunting [Doc. #7-6] to the FAC at ¶¶ 23, 26-30, 198.

The Wicked Defendants and DOE promoted the Wicked Defendants' VPN service as "Popcorn Time VPN" on the website and encouraged Popcorn Time users to use Popcorn Time VPN to pirate copyright protected content.  *See* Decl. of Lee at ¶15-16; FAC at ¶¶161, 169

Popcorn Time has been referred to in the news media as "Netflix for Pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [accessed on May 18, 2021].   Even Doe describes Popcorn Time as "…a free alternative to subscription-based video streaming services such as Netflix."  Decl. of Lee at ¶15.  The USTR placed Popcorn Time on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26, Available at https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20 Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf [last accessed on March 5, 2021].

The Wicked Defendants and Doe's Popcorn Time can be used to stream, download and distribute copies of Plaintiffs' copyright protected Works. *See* Decl. of Bunting at ¶¶ 26-31.

The Wicked Defendants operate a VPN service they promote under the brand name "Popcorn Time VPN" as a tool to "avoid getting into trouble". The VPN service is promoted and distributed from the website VPN.ht. *See* Decl. of Lee [Doc. #7-5] at ¶9; FAC at ¶¶158-159.

To operate the VPN service, the Wicked Defendants made payments to the Virginia limited liability company Voxility and received 160 IP addresses from Voxility in exchange for the payments. *See* Exhibit "A" to Decl. of Authenticity of Silviu Sirbu [Doc. #10-4] at pg. 1; Decl. of Eric Albert Smith at ¶¶6, 9. Of the IP addresses the Wicked Defendants received from Voxility: 56 of the 160 IP address (35%) are in Virginia; 144 of the 160 IP addresses (90%) are in the US (VA, FL and CA); and only the remaining 16 (10%) are in Romania. *See* id. at ¶37.

The Wicked Defendants hosted the website popcorntime.app. *See* FAC at ¶210; Decl. of Culpepper at ¶9 (Faouani states, "…we have ended our partnership with Popcorn Time…").

The website popcorntime.app was hosted by using the domain name system ("DNS") service from the California company CloudFlare. *See* id. at ¶16; Exhibit "3" at pg. 14 (pending on Defendant Fauoni's zone); Decl. of Culpepper at ¶14 (Faouani executed zone delete command on April 19 to remove popcorntime.app from his account).

Defendants Wicked Technology Limited and Faouani paid for and maintained the CloudFlare account that provided the DNS service for hosting the popcorntime.app website. *See* Exhibit "3" at pgs. 2-5, 10, 13 (account information and payment records in name of Wicked Technology Limited in Hong Kong and Faouani); Decl. of Culpepper at ¶¶11-12.

Doe and the Wicked Defendants designed Popcorn Time to include the Wicked Defendants' VPN service embedded therein so that Popcorn Time users can operate the VPN

service "to stay protected while torrenting" while using Popcorn Time.  FAC at ¶¶161-163; Decl. of Bunting at ¶¶25, 32; Decl. of Lee at ¶10 ("Popcorn Time makes it easy to set up your VPN right in the application…click on the lock…enter your username…After that, you can quickly connect any time you need to and get started downloading safely!  Popcorn TIME VPN …our goal is to keep you safe while downloading")

The Wicked Defendants received money for their VPN service from their subscribers by PayPal.  *See* Decl. of Stephanie Kessner at ¶¶6-9, 20; FAC at ¶20.

The Wicked Defendants generated invoices to receive PayPal payments from their subscribers in the name of Defendant Wicked Technology Limited in Hong Kong.  *See* Decl. of Kessner at ¶20.

Approximately 24 percent of the Wicked Defendants' PayPal transactions were with counterparties in the US.  *See* id. at ¶5.

The Wicked Defendants had at least 680 confirmed PayPal transactions with Virginia residents, and it is further estimated that 1885 of the US counterpart transactions are with Virgina residents. *See* id. at ¶¶8-9.  Some of the PayPal transactions include the name and physical address in Virginia of the Virginia resident who subscribed for VPN service with the Wicked Defendants. *See* id. at ¶6.

Defendant Faouani is the account holder for PayPal account wallacez@dzlearn.net.  *See* Decl. of Culpepper at ¶3.

Defendant Faouani is the user account informational name for PayPal accounts contact@uz4.net, wallydz@vpn.ht, and paypal@vpn.ht that were frozen by PayPal per the TRO Order.  *See* id. at ¶4.

The Wicked Defendants use their PayPal account to receive subscription payments for their VPN service.  *See* Decl. of Kessner at ¶5.

The Wicked Defendants used the email address teampct@tuta.io for their CloudFlare account and as login credentials to the GitHub account, and used the email address support@dzlearn.net as login credentials to the GitHub account and the Wicked Defendants' email address for their RIPE records. An email address from the domain "dzlean.net" is used both for Defendant Faouani's PayPal account and as a login credential for the GitHub account.  The email address wallacez@dzlearn.net  is used for both Faouani's PayPal account and for his registration email address with RIPE.  *See* Decl. of Culpepper at ¶¶3-6, 11-14; Exhibits "1"-"3".

 Plaintiffs' agent sent over 400 of notices of infringement of their motion pictures by subscribers of the Wicked Defendants to Voxility, who forwarded the notices to the Wicked Defendants.  *See* Decl. of Sirbu at pg. 3 (Email from Defendant Faouani states, "We are receiving all abuse emails and acting if there is something we can do."); Decl. of Daniel Arheidt [Doc. #7-7] at ¶8.

## IV.     LEGAL STANDARD

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion…the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. para. 12.07[2.-2]).  However, when the Court decides the issue of personal jurisdiction on the pleadings, the Plaintiff only needs to make a *prima facie* showing of personal jurisdiction. *See id*. The *prima facie* standard is a "tolerant" one, under which courts construe the allegations in the complaint and the available evidence in the light most favorable to the plaintiff. *See id.* at 676-77. This Court also draws "all reasonable inferences arising from the

proof, and resolve[s] all factual disputes, in the plaintiff's favor." In considering whether a plaintiff

has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to

assure itself of personal jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016).

A court must also "construe all relevant pleading allegations in the light most favorable to the

plaintiff, assume credibility, and draw the most favorable inferences for the existence of

jurisdiction." *Combs*, 886 F.2d at 676.

Rule 4(k)(1) provides that the district court may exercise personal jurisdiction over the

Wicked Defendants if they are "subject to the jurisdiction of a court of general jurisdiction in the

state where the district court is located," i.e., Virginia. Fed. R. Civ. P. 4(k)(1).  Virginia's long-

arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted

by the Due Process Clause of the Fourteenth Amendment. *See UMG Recordings, Inc. v. Kurbanov*,

963 F.3d 344, 351 (4th Cir. 2020).

Rule 4(k)(2) similarly provides that the district court may exercise personal jurisdiction

over Defendants if they are "not subject to jurisdiction in any state's courts of general jurisdiction"

and doing so would be consistent with constitutional due process. Fed. R. Civ. P. 4(k)(2).  The

district court performs the same due process analysis as the analysis under Rule 4(k)(1), only the

analysis is applied to the entire United States. *UMG Recordings*, 963 F.3d at 351(citing *Base Metal

Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002)).

Due process under either Rule 4(k)(1) for Virginia or Rule 4(k)(2) requires that the Wicked

Defendants have "minimum contacts" with the forum such that "the maintenance of the suit does

not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326

U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, (1945). The minimum contacts inquiry requires

Plaintiffs to show that the Wicked Defendants "purposefully directed [their] activities at the

13

residents of the forum" and that Plaintiffs' causes of action "arise out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citation and quotation omitted). The inquiry is designed to ensure that a Defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475.  The Supreme Court recently clarified that minimum contacts inquiry demands that the suit arise out of *or relate* to Defendant's contacts with the forum.  *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) ("The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing.")  The Supreme Court has also stressed that the minimum contacts analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

The Fourth Circuit applies a three-prong test for determining whether specific jurisdiction is appropriate.  "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

The Fourth Circuit has set forth set forth a list of various nonexclusive factors to consider when determining purposeful availment while emphasizing that the first prong should not be mechanically applied: (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding

the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted. *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

## V.  ARGUMENT

### A.  Specific-type Personal Jurisdiction over the Wicked Defendants is appropriate under Virginia's long-arm statute.

Plaintiffs do not assert general personal jurisdiction.

1.   The Wicked Defendants Purposefully Availed themselves of the Privileges of Conducting Business in Virginia.

The Wicked Defendants reached into Virginia to initiate business and make payments to the Virginia limited liability company Voxility for hosting and network service including IP addresses.  *See* FAC at ¶10.  Defendant Faouani admits that the Wicked Defendants "received invoices from and made payments to Voxility LLC in California."  Decl. of Mohamed Amine Faouani [Doc. #30-1] at ¶7.  However, the Wicked Defendants did not make payments "in California" as stated by Faouani; rather, they made their payments to Voxility by PayPal.  *See* Decl. of Authenticity of Silviu Sirbu, Exhibit "A" at pg. 5 ("Customer used to pay his invoices through PayPal to Voxility LLC.")  In the Motion, the Wicked Defendants incorrectly argue that this matter concerns only one IP address in Virgina.  *See* Motion at pg. 10.  Among the IP addresses allocated to the Wicked Defendants from Voxility, the greatest portion (56 which is more than 1/3 of the 160 allocated IP addresses) are in Virginia.  *See* Decl. of Eric Albert Smith at ¶44. Accordingly, the Wicked Defendants' contracts with Voxility required performance of duties in the State.  It cannot reasonably be argued that these IP address assignments were "random,

fortuitous, or attenuated" when the bulk of the IP addresses allocated to the Wicked Defendants from the Virginia company Voxility are in Virginia, particularly in view of the fact that the Wicked Defendants' have marketed their VPN service as a tool to unblock US geo-blocked Content by providing US IP addresses. *See* Decl. of Kessner at ¶¶16-17 (Wicked Defendants promoting access to "US Blocked content" on their website and "US…Geo-blocked Content" on their Facebook site).

The Wicked Defendants transact business in Virginia and have infringed Plaintiffs' exclusive right of distribution in Virginia with full knowledge that their acts would cause injury in Virginia. *See* FAC at ¶9.  In addition to transacting business with Voxility, the Wicked Defendants have many Virginia subscribers who pay for their so-called Popcorn Time VPN *monthly* by the Virginia licensed payment provider PayPal.  *See* Decl. of Kessner at ¶9 (over 15 percent of the Wicked Defendants' US PayPal transactions between April 8, 2020 and April 10, 2021 were with Virginia residents).   Among these were Virgina residents in Midlothian, McLean and Fairfax who have made monthly payments to the Wicked Defendants via PayPal transactions that included their complete name and address. *See id.* at ¶6.

When the Wicked Defendants' subscribers use the Popcorn Time VPN to access one of the Wicked Defendants' 56 IP addresses in Virginia to conceal their true location while using Popcorn Time to download and share copies of Plaintiffs' Works exactly as instructed and encouraged to do by the Wicked Defendants, the Wicked Defendants directly infringe Plaintiffs' exclusive right of distribution in Virginia when their service "receives data [from their subscribers in Virginia] and blindly retransmits the data…"  Decl. of Faouani at ¶15.

The Wicked Defendants' contacts with Virgina are more substantive than that of the Defendant in *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020).  In *UMG*

16

*Recordings*, the Fourth Circuit determined that a Defendant that offered a free website hosted in Russia and used by Virginia residents without charge to allegedly infringe copyrights of the Plaintiffs had purposefully availed himself of the privilege of conducting business in Virginia. *See id*. at 348-349, 353.  In comparison, the Wicked Defendants' have *paying* subscribers in Virginia that use the IP addresses in Virginia the Wicked Defendants *paid* the Virginia company Voxility to receive.  Moreover, the Wicked Defendants' VPN service is more interactive than the stream ripping website in *UMG Recordings* since the Wicked Defendants require their subscribers to create paid accounts for monthly charges and provide IP addresses for their subscribers to use to pirate content while using Popcorn Time.  Moreover, the Wicked Defendant hosted the Popcorn Time software on the servers of Voxility.  *See* FAC at ¶12.

The Wicked Defendants argue that they did "not deliberately engage in significant or long-term business activities in Virginia."  Motion at pg. 2.  Particularly, the Wicked Defendants assert that they only had a business relationship with a company called Voxility SRL (although conceding that they made payments to Voxility LLC) and that they did not instruct nor direct Voxility to do business with CoreSite in Virginia.  Id.  In *UMG Recordings* the Fourth Circuit rejected a similar argument made by the Defendant that he was not responsible for the advertisements generated by his advertising brokers because "the fact remains that he earns revenues precisely because the advertising is targeted to visitors in Virginia."  *UMG Recordings,* 963 F.3d 354.  Similarly, here the Court should reject the Wicked Defendants attempt to argue that they should not be held responsible for Voxility assigning them IP addresses in Reston, VA because the fact remains that the Wicked Defendants earned revenue precisely because their subscribers could use these IP addresses in Virginia to pirate copyright protected content.  The

Wicked Defendants promoted their VPN service as a tool to access geo-blocked US content.  *See* Decl. of Kessner at ¶¶16-17.

2.      Plaintiffs' Claims arise out of Defendants' contacts in Virginia.

Plaintiffs' claims for copyright and trademark infringement arise from the Wicked Defendants use of the IP addresses and services provided by the Virginia company Voxility to encourage their customers to use Popcorn Time to "safely" engage in widespread piracy. Plaintiffs' agent sent over 400 infringement notices to Voxility concerning infringements at the IP addresses allocated to the Wicked Defendants, at least 68 of which were concerning IP address 104.152.44.26 in Virginia.  *See* Decl. of Arheidt [Doc. #7-7] at ¶8.  At just this one IP address there were over 16,000 instances of distribution of copyright protected Works.  *See* Exhibit "4" [Doc. #7-4] (left column labeled "NO" shows the distribution number).  Plaintiff 42's claims for trademark infringement further arise from the Wicked Defendants use of the IP addresses and services provided by the Virginia company Voxility to host the website popcorntime.app. FAC at ¶¶198-199.  According to Defendant Faouani, he had a "partnership with Popcorn Time".   Decl. of Culpepper at ¶9 (Faouani states, "...we have ended our partnership with Popcorn Time...");

The Wicked Defendants argue that the claims do not arise out of their contacts in Virginia because any infringements at the IP address in Virginia were done by their "subscriber's unilateral control".  Motion at pg. 13.  The Wicked Defendants are attempting to blur the purposeful analysis of the first prong with the arising out of analysis of the second prong.  The analysis of the second prong is not complicated – where activity in the forum state is the genesis of Plaintiffs' claims, this prong is easily satisfied.  *See Tire Eng'g & Distrib., LLC v. Shandong LingLong Rubber Co., Ltd.,* 682 F.3d 292, 303 (4th Cir. 2012).  Such is the case here.  The Wicked Defendants provided IP addresses in Virginia to their subscribers that were used to pirate Plaintiffs' content.  The

Wicked Defendants hosted the popcorntime.app website on server space provided to them by Voxility. The Wicked Defendants have subscribers in Virginia that make monthly payments. Plaintiffs' claims arise from the Wicked Defendants' plentiful contacts with Virginia.

Assuming *arguendo* that this lawsuit does not arise from the Wicked Defendants' contacts with Virginia, the lawsuit at least *relates to* the Wicked Defendants' contacts. Some relationships that relate to the contacts also "support jurisdiction". *Ford Motor Co*, 141 S. Ct. at 1026. The Wicked Defendants paid for IP addresses from the Virginia company Voxility and have numerous monthly paying subscribers that are Virginia residents that use these IP addresses to pirate Plaintiffs' Works. The Wicked Defendants contacts are at the very least related to Plaintiffs' claims for copyright and trademark infringement.

3.     The Exercise of Personal Jurisdiction over the Wicked Defendants is Constitutionally Reasonable.

Courts consider (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiff's interest in obtaining relief when determining whether the exercise of personal jurisdiction is reasonable. *CFA Institute v. Financial Analysts of India,* 551 F.3d 285, 296 (4th Cir. 2009).

The Wicked Defendants merely argue conclusively that the exercise of jurisdiction is not reasonable because Defendant Faouani is "…an Algerian citizen" and his two companies are organized under the laws of Hong Kong. Motion at pg. 14. However, foreign defendants are "not shielded from civil liability in Virginia" because they are located in another country. *CFA Inst.*, 551 F.3d at 296; *see also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 304-05 (4th Cir. 2012). The Wicked Defendants have already secured counsel to represent their interests in Virginia and their "litigation burden is thus no more substantial than

19

that encountered by other entities that choose to transact business in Virginia." *CFA Inst.*, 551 F.3d at 296; *Tire Eng'g*, 682 F.3d at 304-05.

Because the Wicked Defendants conduct their nefarious piracy activities by obtaining IP addresses in Virginia from a Virginia company and encouraging and allowing their Virginia-resident monthly subscribers to use these IP addresses in Virginia to pirate US content, it was reasonably foreseeable that Virginia would have an interest in this dispute and that they would be haled into a Court in Virginia. *See CFA Inst.,* 551 F.3d at 296 (holding that the "inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there.").

The Fourth Circuit has held that Virginia has an interest in not allowing the Commonwealth to become a safe haven for copyright infringement. *See Tire Eng'g*, 682 F.3d at 305. Such is the case here. The Wicked Defendants promote and provide Popcorn Time – one of the most notorious piracy applications in the World – and promote their VPN service as "Popcorn Time VPN", the tool to "safely" pirate copyright protected content while using Popcorn Time. The Wicked Defendants further promote their VPN service as a tool to access geo-blocked US content. *See* Decl. of Kessner at ¶¶16-17.

**B.    Defendant Faouani's Declaration is not credible.**

Defendant Faouani's declaration is replete with deceptive and false statements.

Defendant Faouani declaration that he "had never heard of the state of Virginia prior to this lawsuit" cannot be taken credibly because more than 1/3 of the IP addresses he received from Voxility are in Virginia. *See* Decl. of Smith at ¶44 ("I find it strange that Mr. Faouani would never had heard of the state of Virginia when over 1/3 of VPN.ht's US IP addresses were in Virginia.").

Defendant Faouani's declarations that he has never traveled to US or heard of Virginia should also be viewed dubiously because in his publicly available LinkedIn profile he states that he previously worked just two states over as "…chief technology officer of the US company UZ4 Network in Dover, Delaware from 2011-2014".  FAC at ¶2; *see* Decl. of Culpepper at ¶15.



One of the email addresses Defendant Faouani uses for his PayPal account is "contact@uz4.net". Decl. of Culpepper at ¶¶4, 16.

In view of the fact that the Wicked Defendants made payments to the Virginia company Voxility for IP addresses (the plurality of which are in Virginia) and receive money *monthly* from Virginia residents from PayPal – transaction payments which include the subscriber's Virginia address to use the VPN service – Defendant Faouani's declaration that he does not "regularly do

business, engage in any other persistent course of conduct, or derive substantial revenue from…services rendered in Virginia" can only be considered a complete falsehood.

But Defendant Faouani's declaration includes even more dubious statements. Defendant Faouani states that "None of the Wicked Defendants host the popcorntime.app domain." However, Defendant Faouani emailed Plaintiffs' counsel on April 4, 2021 and stated, "We…disabled all URL" and on April 5, 2021 in a subsequent email he stated that he would "redirect [the popcorntime.app website] as soon as we get an agreement." Decl. of Culpepper at ¶8. It would be difficult for Defendant Faouani to have disabled the website or redirected it if he were not hosting it. Moreover, the documents CloudFlare provided to Plaintiffs per the Court's order permitting expedited discovery make clear that Mr. Faouani at least hosts the DNS service for popcorntime.app and popcorntime.sh (the previous iteration of the website). *See* Decl. of Culpepper at ¶¶8-14. The user account name for the CloudFlare account for popcorntime.app is "M. Amin Fouani". Id. The billing account information for the CloudFlare account includes the name "Mohammed Amin Fouani" and company name "Wicked Technology Limited" and an address in Hong Kong. Id. CloudFlare also provided an "audit log" that shows the access records for Mr. Fouani's CloudFlare account. The screenshot of the audit log shows that Mr. Fouani executed a "Zone_Delete" command for the domains "popcorntime.sh" and "popcorntime.app" on April 19, 2021.

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | user_id | zone_id | ip | event | ts | notes | | | | | |
| 2 | 3798535 | 89696329 | 105.104.17 | ZONE_DELETE | 2021-04-19 11:47:1 | zone_name:popcorntime.app | | | | | |
| 3 | 3798535 | 2.6E+08 | 105.104.17 | SUB_CANCEL | 2021-04-19 12:40:2 | sub_label:PRO_ZONE, zone_name:api-fetch.sh | | | | | |
| 4 | 3798535 | | 105.104.17 | LOGIN | 2021-04-19 11:46:2 | user_email:teampct@tuta.io | | | | | |
| 5 | 3798535 | 23044888 | 105.104.17 | SUB_CANCEL | 2021-04-19 11:47:C | sub_label:PRO_ZONE, zone_name:popcorntime.sh | | | | | |
| 6 | 3798535 | 2.6E+08 | 105.104.17 | ZONE_DELETE | 2021-04-19 12:40:2 | zone_name:api-fetch.sh | | | | | |
| 7 | 3798535 | 23044888 | 105.104.17 | ZONE_DELETE | 2021-04-19 11:47:C | zone_name:popcorntime.sh | | | | | |
| 8 | 3798535 | 89696329 | 105.104.17 | SUB_CANCEL | 2021-04-19 11:47:1 | sub_label:PRO_ZONE, zone_name:popcorntime.app | | | | | |
| 9 | 3798535 | | 105.104.48 | LOGIN | 2021-04-04 13:20:5 | user_email:teampct@tuta.io | | | | | |
| 10 | 3798535 | | 76.102.68. | USER_REND | 2020-10-29 14:34:51.928307+00 | | | | | | |
| 11 | 3798535 | | 76.102.68 | USER_REND | 2020-10-28 22:59:11.805906+00 | | | | | | |

Perhaps Defendant Faouani thought he was being slick when he stated "None of the Wicked Defendants host the popcorntime.app domain" by using the *present tense* of the verb since he tried to destroy evidence of his prior hosting of the website by deleting the control records from CloudFlare. Nonetheless, the deceptive nature of his declaration is clear.

Defendant Faouani declares that his VPN service "is not specially adapted for using the Popcorn Time application." However, the Wicked Defendants state on their website that they have made their Popcorn Time VPN easy to use for Popcorn Time users. *See* Decl. of Lee at ¶10 ("Popcorn Time makes it easy to set up your VPN right in the application…click on the lock…enter your username…After that, you can quickly connect any time you need to and get started downloading safely! Popcorn TIME VPN …our goal is to keep you safe while downloading"). Similarly, on the Wicked Defendants' YouTube channel they point out how easy that have made it to set up their VPN service while running Popcorn Time. *See* Decl. of Kessner at ¶13.



But the more important point is not that the Wicked Defendants designed Popcorn Time VPN to be specially adapted for using Popcorn Time, but rather that the Wicked Defendants designed Popcorn Time to be specially adapted to include the Wicked Defendants' VPN service and branded it as "Popcorn Time VPN".   The records Plaintiffs received from GitHub show that Defendant Faouani has logged into the GitHub account to access to the software code for Popcorn Time.  *See* Decl. of Culpepper at ¶¶5-7.   This makes sense since Popcorn Time includes the Wicked Defendants VPN service.  *See* Decl. of Kessner at ¶13; Decl. of Bunting [Doc. #7-6] at ¶32.

Not only is Defendant Faouani's declaration not credible, but it is also incredible.  The Court should disregard Defendant Faouani's declaration entirely.

**C.**      **Personal Jurisdiction is alternatively appropriate under the Federal long-arm statute.**

Plaintiffs pleaded that personal jurisdiction was alternatively appropriate pursuant to the Federal long-arm statute.  *See* FAC at ¶14.  The Wicked Defendants have not made any arguments in the contrary in their Motion.  Accordingly, they have waived this argument. *See Locklear v. Bergman & Beving AB*, 457 F.3d 363, 368 n. 2 (4th Cir. 2006) (Where a party "did not clearly raise" an argument in the opening brief, the court deems it waived.) (citing *Carter v. Lee*, F.3d 240, 252 n. 11 (4th Cir. 2002)).

Nonetheless, the Wicked Defendants have also clearly purposefully availed themselves of the privilege of conducting activities in US.  As discussed above, the Wicked Defendants made payment to the Virginia company Voxility to receive IP addresses.  Of the 160 IP addresses Voxility allocated to VPN.ht, 56 are in Virginia, 40 are in California, and 48 are in Florida.  *See* Decl. of Smith at ¶37.  The Wicked Defendants use the DNS service of the California company CloudFlare to host popcorntime.app.  *See* Exhibit "3".  The Wicked Defendants are currently receiving IP addresses and server service from the California company Quadranet, Inc. and the

24

District of Columbia company Cogent Communications, Inc. FAC at ¶18.  The Wicked Defendants use a US payment provider such as PayPal to send payments to Voxility and receive payments from their subscribers in US dollars.  *See* Decl. of Kessner at ¶5.  24 percent of the Wicked Defendants' PayPal transactions are with US counterparts.  *See* id.

The Wicked Defendants use the US social media platforms such as TWITTER and FACEBOOK to promote their services to US consumers. *See* id at ¶11, 18.

In YOUTUBE, the Wicked Defendants include images of the US flag in the promotion of their service to make clear subscribers could access US IP addresses.  *See* id at ¶14.

The Wicked Defendants promote their service as a means to access US content. Particularly the Wicked Defendants promote their VPN as a tool to "Unblock US…Geo-blocked Content".  *See* id at ¶18.

The Wicked Defendants *explicitly* purposely avail themselves of the advantages of US law by stating that they are taking advantage of the safe harbor provisions of the DMCA on their website by reference to the United States Code (17 U.S.C. § 512(c)).  FAC at ¶21; Decl. of Lee at ¶13.

Plaintiffs' claims for copyright and trademark infringement arise from the Wicked Defendants use of these US resources to promote and distribute Popcorn Time for widespread piracy and their Popcorn Time VPN for the purposes of allowing their subscribers to conceal their widespread piracy.

Accordingly, personal jurisdiction under the Federal long-arm statute is alternatively appropriate.

**D.    The Asset Restraint of the Preliminary Injunction should be maintained**

The Wicked Defendants argue that the Preliminary Injunction should be dissolved because the Court does not have personal jurisdiction.  As argued above, this Court has personal jurisdiction over Defendants by either the Virginia long-arm statute or the Federal long-arm statute.  The Wicked Defendants did not even contest personal jurisdiction under the Federal long-arm statute.

1.   The Wicked Defendants' lack standing to contest the Asset Restraint.

The Wicked Defendant argue that the injunction freezing the PayPal accounts should be dissolved because the accounts do not belong to them, but rather to Wicked Technology UAE. Motion at pg. 17.  By their own admission, the Wicked Defendants have no standing to contest the asset restraint of the preliminary injunction.  "Standing" refers to the right of a particular litigant "to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  According to the Supreme Court, Article III of the US Constitution's limitation of the judicial power to "cases" and "controversies" requires a limitation of the federal courts to "adjudication of actual disputes between adverse parties."  *Richardson v. Ramirez*, 418 U.S. 24, 36 (1974).  To establish Article III standing, a litigant must show three things: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)).  Defendant Faouani declares under penalty of perjury that "…The Paypal account at issue belongs to Wicked Technology UAE."  Decl. of Faouani at ¶17.   Accordingly, the Wicked Defendants have no 'injury in fact' from the asset restraint.  Therefore, the Wicked Defendants lack standing to contest the restraint of the PayPal accounts.

2.   The Wicked Defendants control the PayPal accounts.

Assuming *arguendo* that the Wicked Defendants have standing to contest the asset restraint, the preliminary injunction should still be maintained because Wicked Technology UAE is associated with the Wicked Defendants and is "in active concert or participation" with the Wicked Defendants as provided in Fed. R. Civ. P. 65(d)(2)(C).

Defendant Faouani declares under penalty of perjury that "Wicked Technology UAE…*is not a non-party* to this proceeding."  Either this declaration includes a typographical error or Defendant Faouani is admitting that Wicked Technology UAE is a party to this proceeding. Regardless, the TRO Order "ORDERED that PayPal shall immediately freeze all PayPal accounts associated with Defendants WICKED TECHNOLOGY LIMITED, VPN.HT Limited, and MOHAMED AMINE FAOUANI…" TRO Order at pgs. 8-9.  Without conceding that Wicked Technology UAE is the owner of the frozen PayPal accounts, Defendant Faouani clearly controls Wicked Technology UAE and therefore Wicked Technology UAE is *associated* with the Wicked Defendants.  The PayPal account records clearly state that the user info is "MOHAMED AMINE FAOUANI".  *See* Decl. of Culpepper at ¶4 (partial screenshot below).

| USER INFO | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| First Name: | Middle Name: | Last Name: | SSN: | TIN: | DOB: | Credit Ca Email: |
| Mohamed Amine | | Faouani | | | REDACTED VPN.HT | contact@u24.net, wallydz@vpn.ht, paypal@vpn.ht |
| **BUSINESS INFO** | | | | | | |
| Name: | URL: | Customer Service Phone: | | | | |
| Wicked Technology Limited | http://vpn.ht | | | | | |
| **ACCOUNT INFO** | | | | | | |
| Account Status: | Account #: | Account Type: | Time Created: | | | |
| Limited | | Business - Emirati Verifi | Oct 22, 2015 19:42:20 GMT+04:00 | | | |
| **FINANCIALS** | | | | | | |
| Account Balance: | Total Amount Sent | Total Amount Received: | Amount Received:A month | Pending Balance To Be Relea: | Minimum Rolling R Release Amount: | |
| | | | | | $0.00 USD | $0.00 USD $0.00 USD* (9 % - 0 days) |
| **E-MAIL** | | | | | | |
| E-mail | Primary | Confirmed | Active | | | |
| contact@u24.net | | X | X | | | |
| wallydz@vpn.ht | | X | X | | | |
| paypal@vpn.ht | X | X | X | | | |

The Wicked Defendants issue invoices in the name of Wicked Technology Limited in Hong Kong for their VPN service.  *See* Decl. of Kessner at ¶20.  Moreover, the party to whom Voxility issued invoices for the IP addresses was Wicked Technology Limited with the address in

UAE with contact name MOHAMED AMINE FAOUANI and the details for the customer were Defendant "VPN.ht LTD". *See* Exhibit "A" to Decl. of Authenticity of Silviu Sirbu [Doc. #10-4] at pg. 6 ("We have the following details in our system. VPN.ht LTD…Invoices were issued to: Wicked Technology Limited Mohamed Amine Faouani…")  Therefore, assuming *arguendo* that Wicked Technology UAE is the owner of the frozen PayPal accounts, the preliminary injunction is still appropriate because Wicked Technology UAE is "in active concert or participation" with the Wicked Defendants as provided in Fed. R. Civ. P. 65(d)(2)(C).

 Accordingly, the asset restraint of the preliminary injunction should be maintained.

**E. The Wicked Defendants' Motion should be dismissed for not being timely filed.**

 LR 7(H) requires all "motions…be timely filed with the Clerk's Office of the division in which the case is pending."  Fed. R. Civ. P. 12(a)(1) provides that "the time for serving a responding pleading is as follows…within 21 days after being served with the summons and complaint…"  Plaintiffs served the Wicked Defendants with a copy of the FAC, TRO [Doc. #16] and the Notice of the Preliminary Injunction Hearing by registered email on April 8, 2021 *See* AFFIDAVIT OF SERVICE OF WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI AND JOHN OR JANE DOE d/b/a POPCORNTIME.APP [Doc. #18].  The TRO Order was a summons because it ordered the Wicked Defendants to appear at the Courthouse and was signed by the District Judge.  A responsive pleading such as the Wicked Defendants' Motion pursuant to Fed. R. Civ. P. 12(b)(2) was due on April 29, 2021 per Rule 12(a)(1).  However, the Wicked Defendants' Motion was filed on May 6, 2021 without a request for an extension of time.  Therefore, the Motion is untimely.

 The Wicked Defendants argue that service via registered email was not "authorized by law and not ordered by the Court." Motion at pg. 17.  However, the TRO Order clearly states,

28

"ORDERED that copies of this Order, notice of the preliminary injunction hearing, and service of the First Amended Complaint may be served by any means authorized by law, including (1) transmission by *email*…to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting…"  TRO Order at pg. 10 (emphasis added).  Plaintiffs went further than required in the TRO Order and sent the pleadings via *registered* email to not only the email address provided by Defendant Faouani for the WHOIS records, but also to the email addresses Defendant Faouani used to communicate with Plaintiffs' counsel and Voxility.

Accordingly, the Wicked Defendants' Motion is untimely and should be stricken. Moreover, the Court should order the Clerk to enter default against the Wicked Defendants as requested.  *See* REQUEST FOR ENTRY OF DEFAULT [Doc. #27].

## VI.    CONCLUSION

For the reasons stated, the Wicked Defendants' Motion to Dismiss should be denied.

DATED: Kailua-Kona, Virginia May 19, 2021.

Respectfully submitted,

 /s/ Kerry S. Culpepper
_____

Kerry S. Culpepper*,*
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
Fax.: (202) 204-5181
kculpepper@culpepperip.com
***Attorney for Plaintiffs***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 19, 2021, a true and correct copy of the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Benjamin E. Maskell, Esquire
MASKELL LAW PLLC
937 N. Daniel St.
Arlington, VA 22201
Email: Ben@MaskellLaw.com
*Counsel for Defendants Wicked Technology*
*Limited, VPN.HT Limited, and Mohamed*
*Amine Faouani*

DATED: Kailua Kona, HI, May 19, 2021.

Respectfully submitted,

  /s/ Kerry S. Culpepper

Kerry S. Culpepper*,*
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
Fax.: (202) 204-5181
kculpepper@culpepperip.com
***Attorney for Plaintiffs***

,