UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, VOLTAGE HOLDINGS, LLC, MILLENNIUM IP, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., WONDER ONE, LLC, and 42 VENTURES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI, JOHN OR JANE DOE d/b/a POPCORNTIME.APP, and DOES 1-100,<br><br>Defendants. | Civil Action No. 1:21-cv-00282-RDA-TCB |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT**

i

**TABLE OF CONTENTS**

**Page(s)**

I.  PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SPECIFIC PERSONAL JURISDICTION OVER THE WICKED DEFENDANTS UNDER VIRGINIA'S LONG-ARM STATUTE OR THE DUE PROCESS CLAUSE. ..................................................................................................................2

    A.  The Wicked Defendants do not Transact Business in Virginia. ...............................3

    B.  The Wicked Defendants do not Derive Substantial Revenue from Virginia. ..................................................................................................................3

    C.  The Wicked Defendants' Contacts with Third-Party Company Voxility and Alleged Subscribers in Virginia Do Not Constitute Purposeful Availment.................................................................................................................4

    D.  The Opposition Fails to Establish Jurisdiction is Appropriate under the *Zippo* Factors. ...........................................................................................................9

    E.  The Exercise of Personal Jurisdiction Over the Wicked Defendants Is Not Constitutionally Reasonable. ............................................................................10

    F.  The Faouani Declaration is True and Correct.........................................................11

II.  PLAINTIFFS CANNOT RELY ON THE FEDERAL LONG-ARM STATUTE AFTER ALLEGING JURISDICTION IS APPROPRIATE IN VIRGINIA. ................................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Memory & Micro, Inc. v. K & Q Enter., Inc.*,
   20 F. Supp. 2d 948 (E.D. Va. 1998) ..............................................................................7

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ....................................................................................9, 10

*America Online, Inc. v. Huang*,
   106 F.Supp.2d 848 (E.D. Va. 2000) ...........................................................................2, 3

*Asahi Metal Ind. Co. v. Superior Court*,
   480 U.S. 102, 107 S.Ct. 1026 (1987).............................................................................11

*Bay Tobacco, LLC v. Bell Quality Tobacco Products*,
   261 F.Supp.2d 483 (E.D. Va. 2003) ...........................................................................3, 4

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)........................................................................................................10

*Consulting Engineers Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) .........................................................................................5

*Decision Insights, Inc. v. Quillen*,
   No. 05-0335, 2005 U.S. Dist. LEXIS 27482 (E.D. Va. 2005).....................................7

*DeSantis v. Hafner Creations, Inc.*,
   949 F.Supp. 419 (E.D.Va.1996) ...................................................................................4

*Foster v. Arletty 3 Sarl*,
   278 F.3d 409 (4th Cir.2002) ........................................................................................11

*Grayson v. Anderson*,
   816 F.3d 262 (4th Cir. 2016) ..................................................................................1, 14

*Jackson v. National Linen Serv. Corp.*,
   248 F.Supp. 962 (W.D.Va. 1965)..................................................................................4

*Kolbe v. Chromodern Chair Co.*,
   211 Va. 736, 180 S.E.2d 664 (1971)..............................................................................2

*Pearson v. White Ski Co.*,
   228 F. Supp. 2d 705 (E.D. Va. 2002) ...........................................................................8

*Processing Research, Inc. v. Larson*,
    686 F.Supp. 119 (E.D.Va.1988) ..................................................................................4, 7

*Sneha Media & Entm't, LLC v. Associated Broad. Co.*,
    911 F.3d 192 (4th Cir. 2018) ......................................................................................1, 14

*TELCO Communications v. An Apple A Day*,
    977 F.Supp. 404 (E.D.Va.1997) .......................................................................................3

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ................................................................................8, 9, 15

*Unidyne Corp. v. Aerolineas Argentinas*,
    590 F. Supp. 391 (E.D. Va. 1984) ....................................................................................7

*Village Lane Rentals, LLC v. The Capital Fin. Grp.*,
    159 F. Supp. 2d 910 (W.D. Va. 2001) .............................................................................8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997).................................................................................9

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants WICKED TECHNOLOGY LIMITED d/b/a VPN.HT ("Wicked"), VPN.HT LIMITED ("VPN.HT"), and MOHAMED AMINE FAOUANI ("Faouani"), (collectively, "the Wicked Defendants"), by counsel, respectfully submit this reply brief to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opposition" or "the Opposition"). If any of the arguments in Plaintiffs' Opposition are not specifically addressed herein, it is because the Wicked Defendants believe that they have adequately addressed those arguments in their Memorandum in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"), and should not be construed by the Court as a concession regarding the merits of those arguments.

## INTRODUCTION

Under Federal Rule of Civil Procedure 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Plaintiffs have failed to meet their burden to establish personal jurisdiction over the Wicked Defendants in this case. Plaintiffs have relied on contacts that are constitutionally insufficient to justify specific personal jurisdiction over the Wicked Defendants in Virginia, even if their burden were only to make a *prima facie* showing. *Sneha Media & Entm't, LLC v. Associated Broad. Co.*, 911 F.3d 192 (4th Cir. 2018).

Accordingly, Plaintiffs' First Amended Complaint against the Wicked Defendants should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**ARGUMENT**

**I.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SPECIFIC PERSONAL JURISDICTION OVER THE WICKED DEFENDANTS UNDER VIRGINIA'S LONG-ARM STATUTE OR THE DUE PROCESS CLAUSE.**

As set forth in the Wicked Defendants' Motion to Dismiss, the Wicked Defendants do not have the necessary minimum contacts with Virginia to satisfy Virginia's long-arm statute or the Due Process Clause of the Constitution. Plaintiffs' First Amended Complaint ("FAC") alleges that Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. FAC, ¶ 9. Thus, Plaintiffs presumably contemplate the extension of personal jurisdiction over the Wicked Defendants under Va. Code § 8.01-328.1(A)(1) (transacting business in this Commonwealth) or, given that the Wicked Defendants are all non-U.S. residents who have never been to Virginia, subdivision (A)(4) (causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth…) thereof.

Resolution of personal jurisdiction challenges involve a two-step inquiry. First, courts must ascertain whether a plaintiff has made a *prima facie* showing that Virginia's long-arm statute reaches the nonresident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts. Second, a court must determine whether the exercise of personal jurisdiction in the circumstances is consistent with the Due Process Clause, that is, whether the long-arm statute's reach in the circumstances exceeds its constitutional grasp. *America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 853-54 (E.D. Va. 2000). The language extending jurisdiction to the transaction of business in Virginia allows a court "to assert jurisdiction over nonresidents ... to the extent permissible under the due process clause." *Kolbe v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971). Nonetheless, it is possible that an entity's contacts with

Virginia may satisfy due process, and still not fall within a particular provision of the long-arm statute. It is therefore appropriate to begin with the statutory analysis. *See TELCO Communications v. An Apple A Day*, 977 F.Supp. 404, 405 (E.D.Va.1997) (citing *DeSantis*, 949 F.Supp. at 423). *America Online, Inc. v. Huang*, 106 F.Supp.2d 848 (E.D. Va. 2000).

### A.   The Wicked Defendants do not Transact Business in Virginia.

In their Opposition, Plaintiffs allege that specific personal jurisdiction over the Wicked Defendants is appropriate under Virginia's long-arm statute, but only discuss Due Process. Per the long arm statute, a non-resident defendant may be subject to personal jurisdiction as to a cause of action "arising from" the person's transacting any business in Virginia. *See* Va. Code § 8.01-328.1(A)(1).

Here, the only connection this matter has to Virginia is Voxility. But, the mere fact that Voxility happens to be a Virginia company is insufficient to confer jurisdiction over the Wicked Defendants. Instead, Plaintiffs must make credible allegations that the Wicked Defendants did business with Voxility in Virginia – facts that are sorely lacking. Instead, the record indicates that the Wicked Defendants did business with Voxility SLR in Romania, paid invoices issued by Voxility in California, and there is no formal agreement governing the relationship. *See Declaration of Mohamed Amine Faouani in Support of Motion to Dismiss* (Dkt. No. 30-1), ("Faouani Decl."), ¶ 7.

The Wicked Defendants simply do not transact business in Virginia with Voxility.

### B.   The Wicked Defendants do not Derive Substantial Revenue from Virginia.

An analysis under Va. Code § 8.01-328.1(A)(4) requires, among other things, for a Plaintiff to show that the defendant either regularly does business in the Commonwealth, engages in some persistent course of conduct in the Commonwealth, or derives substantial

3

revenue from goods used or consumed in the Commonwealth. *Bay Tobacco, LLC v. Bell Quality Tobacco Products*, 261 F.Supp.2d 483 (E.D. Va. 2003).

Although no court has established an absolute dollar amount that satisfies the "substantial revenue" requirement, courts have generally found that the amount must exceed $300. *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 427-27 (E.D.Va.1996). *See also, Ajax Realty*, 493 F.2d at 821-22 (finding that $37,000 constituted substantial revenue for purposes of subsection (A)(5)); *Processing Research, Inc. v. Larson*, 686 F.Supp. 119, 122 (E.D.Va.1988) (holding that $119,850 received by defendant for the sale of an aircraft satisfied the substantial revenue provision); *Jackson v. National Linen Serv. Corp.*, 248 F.Supp. 962, 965 (W.D.Va. 1965) (determining that $25,000 was sufficient to meet the substantial revenue test). The Court may also consider the percentage of total sales of the nonresident corporation that occur in Virginia. *Id. Bay Tobacco, LLC v. Bell Quality Tobacco Products*, 261 F.Supp.2d 483 (E.D. Va. 2003).

Plaintiffs, who have had the benefit of discovery from Paypal, are only able to specifically identify *four* transactions with Virginia persons that purportedly paid money to the Wicked Defendants out of over 50,000 transactions. *See* Decl. of Kessner (Dkt. No. 36-3) at ¶¶ 4 and 6. Just four. Also, according to the Kessner Declaration, the services of the Wicked Defendants cost just $1 per month. *Id* at ¶ 20. Assuming the figures cited in Kessner's declaration are correct, this means that the Wicked Defendants derive at most $4 per month from Virginia. This falls well short of "substantial revenue" required under Va. Code § 8.01-328.1(A)(4).

### C. The Wicked Defendants' Contacts with Third-Party Company Voxility and Alleged Subscribers in Virginia Do Not Constitute Purposeful Availment.

In their Opposition, Plaintiffs argue that the Wicked Defendants purposefully availed themselves of the privileges of conducting business in Virginia, alleging that the Wicked

4

Defendants contracted with and "reached into Virginia to initiate business and make payments to" Voxility LLC ("Voxility"), a third-party limited liability company, for hosting and network service including IP addresses. *See* Opp. at pg. 15.  Voxility was formed in Virginia, but operates out of its principal office in San Francisco, California, and is registered as a foreign entity in California. The alleged contacts and contracts with Voxility – none of which any of the Plaintiffs are a party to – simply do not support the exercise of personal jurisdiction over the Wicked Defendants.

The Opposition cites the list of various nonexclusive factors courts in the Fourth Circuit has considered in determining whether a defendant has purposefully availed himself of the forum at issue. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). "In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." *Id.*

It is uncontroverted that the Wicked Defendants (1) have never maintained offices or agents in Virginia, (2) have never maintained property in Virginia, (3) have never entered into any contracts with any of the Plaintiffs, let alone any contractual agreements that the law of the

5

forum state would govern disputes, and (4) have never made in-person contact with a Virginia resident regarding any business relationship at issue.

The Opposition alleges that the Wicked Defendants "reached into Virginia to initiate business and make payments to" Voxility for hosting and network service including IP addresses, but further admits that Faouani made payments to Voxility by PayPal, and acknowledges that Faouani's Declaration states that he received invoices from and made payments to Voxility LLC in California. Plaintiffs fail to allege how Faouani's relationship with Voxility Romania and payments to Voxility via PayPal constitute reaching into Virginia to solicit or initiate business.

The Opposition states that the Wicked Defendants "incorrectly argue that this matter concerns only one IP address in Virginia," but cites to a Declaration of Eric Albert Smith at ¶44 (Dkt No. 36-1) to support the contention that "[a]mong the IP addresses allocated to the Wicked Defendants from Voxility, the greatest portion (56 which is more than 1/3 of the 160 allocated IP addresses) are in Virginia. *See* Opp. at pg. 15. Even assuming Mr. Smith is correct, an IP address is an intangible – a number. An IP address does not exist in the physical world – much less in Virginia. Instead, a *server* can be identified by an IP address and, according to the FAC, the only such server in Virginia is operated by CoreSite (FAC at ¶10) – a company with whom the Wicked Defendants have no relationship. Faouani Decl., ¶8.

The Opposition further states that the Wicked Defendants' "contracts with Voxility" required performance of duties in Virginia, but fail to identify any actual contracts between any of the Wicked Defendants and Voxility, or the specific duties to be performed by a party in Virginia. Faouani's Declaration states that he did not sign a formal contract governing the Wicked Defendants' relationship with Voxility SRL. Faouani Decl., ¶7. Additionaly, the Sirbu Declaration (Dkt. No. 10-4) further confirms that no written contract between Voxility and any

6

of the Wicked Defendants existed as none was produced. *See* Sirbu Declaration, (Dkt. No. 10-4), ¶7. Even if a contract did exist, as this Court has previously held, "a contract 'between a resident of the forum state and a non-resident defendant does not, by itself, provide sufficient minimum contacts for personal jurisdiction.'" *Decision Insights, Inc. v. Quillen*, No. 05-0335, 2005 U.S. Dist. LEXIS 27482, *13-14 (E.D. Va. 2005) (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prods.*, LLC, 261 F. Supp. 2d 483, 493 (E.D. Va. 2003)). Instead, the jurisdictional analysis must focus on the circumstances of the contract's negotiations, the contract's execution, and the relationship the contract has to the forum state. *Decision Insights*, 2005 U.S. Dist. LEXIS 27482 at *16-*17 (ruling that a contract with a Virginia resident does not support jurisdiction in Virginia over a non-resident defendant "because the agreement does not require [the Defendant] to perform any acts in Virginia."); *Affinity Memory & Micro, Inc. v. K & Q Enter., Inc.*, 20 F. Supp. 2d 948, 952-53 (E.D. Va. 1998) (finding that a contract between a non-resident defendant and the Virginia Plaintiff does not support jurisdiction in Virginia because the contract was negotiated by the defendant in Minnesota and the defendant performed the obligations under the contract in Minnesota); *Processing Research, Inc. v. Larson*, 686 F. Supp. 119, 121-22 (E.D. Va. 1988) (same); *Unidyne Corp. v. Aerolineas Argentinas,* 590 F. Supp. 391, 396 (E.D. Va. 1984) (same).

Plaintiffs have not alleged any facts regarding a purported contract's negotiations, the contract's execution, and the relationship the contract has to Virginia. Here, Faouani was located in Algeria, the Wicked business entity defendants were located in Hong Kong (and the non-party Wicked in UAE), Voxility SRL is located in Romania and Voxility LLC primarily operates out of California. Thus, Plaintiffs' claims do not arise from the Wicked Defendants' purported (but unidentified) contract with Voxility, as required by Virginia's long arm statute. In this Court's

7

words: "The Virginia General Assembly used the phrase 'arising from' to require that there be a causal link between the alleged business activity relied upon to establish personal jurisdiction and the injury alleged in the cause of action." *Pearson v. White Ski Co.*, 228 F. Supp. 2d 705, 708 (E.D. Va. 2002). "This causation element is more than a mere 'but, for' causation; this element requires causation that is more akin to proximate cause." *Id.; Village Lane Rentals, LLC v. The Capital Fin. Grp.*, 159 F. Supp. 2d 910, 916 (W.D. Va. 2001) (ruling that a non-resident defendant's contacts with the forum state must be the proximate or legal cause of the plaintiff's claim in order to establish personal jurisdiction). Here, there is a missing causal link with respect to a purported contract with Voxility and the activities of the four identified third-party VPN users.

     The Opposition alleges that the Wicked Defendants' contacts with Virginia are more substantive than that of the Defendant in *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020). However, Plaintiff's reliance on *UMG Recordings* is misplaced, as the facts of that case are distinguishable from the facts of the instant case. *UMG Recordings* involved data collection and targeted advertising, i.e. ads specifically aimed at website visitors in Virginia after Defendant collected and sold their personal information to third-party ad brokers. The websites at issue were "two of the most popular stream-ripping websites in the world and…among the most popular websites of any kind on the Internet." *UMG Recordings*, 963 F.3d at 349. Between October 2017 and September 2018, the websites attracted over 300 million visitors from over 200 countries around the world, with hundreds of thousands from Virginia during the same period. *Id.* Although the Defendant's websites were free to use, the Court found the nature of the repeated interaction between the websites and visitors to be a commercial relationship, noting that it is hardly unusual for websites to be free to use in today's Internet because many

8

corporations "make money selling advertising space, by directing ads to the screens of computers employing their software." *UMG* 963 F.3d at 353 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913926-27, 125 S. Ct. 2764 (2005).

The Court opined that the Defendant in *UMG* "made a calculated business choice not to directly charge visitors in order to lure them to his websites," and ultimately profited from visitors by selling directed advertising space and data collected to third-party brokers, thus purposefully availing himself of the privilege of conducting business within Virginia. While the Defendant claimed that he lacked any control over what advertising was displayed because he used ad brokers, the Court found, at a minimum, that he facilitated targeted advertising by collecting and selling visitors' data. Despite the contentions in the Opposition, paying subscribers vs. non-paying website visitors were not the focus of the analysis in *UMG Recordings*, nor was the interactivity of the websites at issue; rather, the crux of the case was the targeted and directed advertising to website visitors in Virginia, with virtually all revenues generated by the websites coming from advertising.

### D. The Opposition Fails to Establish Jurisdiction is Appropriate under the *Zippo* Factors.

The Fourth Circuit has adopted a modified version of the *Zippo* sliding scale for determining when electronic contacts with a state constitute sufficient purposeful conduct to exercise personal jurisdiction. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 714 (4th Cir. 2002). The Opposition, however, fails to even cite *Zippo* or *ALS Scan*, much less argue that the jurisdiction is appropriate under these standards – a telling omission underscoring the weakness of Plaintiffs' jurisdictional arguments. Using the *Zippo* sliding scale, a court may exercise jurisdiction over an out-of-state defendant only when that entity "(1) directs electronic

activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that the activity creates, in a person within the State, a potential cause of action." *ALS Scan, Inc.*, 293 F.3d at 714.

Again, the Wicked Defendants' closest connection to Virginia is its relationship with Voxility Romania. The Opposition, other than repeatedly noting that Voxility LLC is a Virginia company, fails to identify (1) any electronic activity directed into the state; (2) any manifested intent to engage in business in the state; or (3) any person in Virginia harmed by the Wicked Defendant's conduct. Additionally, there is no allegation that Voxility prominently holds itself out as a Virginia company or that the Wicked Defendant's endeavored to do business with Voxility on the basis of Voxility's connection to Virginia.

### E. The Exercise of Personal Jurisdiction Over the Wicked Defendants Is Not Constitutionally Reasonable.

Plaintiffs have not put forth any evidence that the exercise of jurisdiction over the Wicked Defendants would be constitutionally reasonable. As a result, Plaintiffs have failed to establish a prima facie case of personal jurisdiction over the Wicked Defendants. In assessing reasonability, federal courts consider the burden on the defendant of litigating in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The burden on Defendants of litigating in Virginia weighs against the exercise of jurisdiction. While they now have counsel in Virginia, Defendants are still non-US persons who are residents of foreign countries, and who, despite the assertions in the Opposition, have not deliberately chosen to transact business in Virginia. Voxility operates out of San Francisco, California, and it was not reasonably foreseeable that Wicked Defendants would be haled into court in Virginia when they have not deliberately targeted Virginia, ever set foot in Virginia, spoken to anyone in Virginia, or even heard of Virginia before this lawsuit.

Additionally, as a resident of Algeria, Mr. Faouani does not have the privilege of international travel as U.S. citizens are accustomed to. To travel to the United States, Algerian citizens must first obtain a travel visa from the U.S. consulate in Algeria and overcome, to the satisfaction of U.S. consular officials, the presumption that the visa applicant is an intended immigrant. And, the U.S. Consulate in Algeria is not processing ordinary non-immigrant visas due to COVID.[1] Accordingly, Mr. Faouani faces substantial burden in even appearing in Virginia much less presenting a substantive defense. These complications are likely to preclude Mr. Faouani from having his day in court and weigh against the constitutional exercise of jurisdiction.

The Supreme Court has warned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026 (1987); *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002). Here, this Court should determine that the exercise of personal jurisdiction is not constitutionally reasonable and decline to exercise jurisdiction.

### F. The Faouani Declaration is True and Correct.

The factual statements made in the Faouani Declaration are sworn to be true and made under the penalty of perjury. Mr. Faouani has never traveled to the United States and had never even heard of Virginia. Faouani Dec., ¶2. The Opposition attempts to discredit the Faouani Declaration with conjecture, but fails to identify any facts that expressly contradict any statement in the Faouani Declaration.

---

[1] https://dz.usembassy.gov/visas/nonimmigrant-visas/

For example, Plaintiffs' declarant Eric Smith wonders "I find it strange that Mr. Faouani would never had heard of the state of Virginia…" *See* Decl. of Smith (Dkt. No. 36-1) at ¶44. Similarly, Plaintiffs' counsel suggests "Defendant Faouani's declarations that he has never traveled to US or heard of Virginia should also be viewed dubiously because in his publicly available LinkedIn profile he states that he previously worked just two states over as "…chief technology officer of the US company UZ4 Network in Dover, Delaware from 2011-2014". *see* Decl. of Culpepper at ¶15. These statements are misleading conjecture. Mr. Faouani never "stated" that he worked two states over from Virginia in Delaware - the profile identified by Plaintiffs' counsel identifies work as network administrator and [IT] security consultant with a Delaware Company ending in 2014. IT work can be and was done completely remotely; as stated in his Declaration, Faouani has never traveled to the United States, much less lived or worked in the United States.

In another example, the Opposition describes as "complete falsehood" Faouani's declaration that he does not "regularly do business, engage in any other persistent course of conduct, or derive substantial revenue from…services rendered in Virginia." The Opposition describes "payments to the Virginia company Voxility" and revenue from "Virginia residents from PayPal." But there is no allegation that Mr. Faouani knew Voxility LLC was a Virginia company, that any payments were actually made in Virginia, and Plaintiff could only identify four Virginia customers of more than 50,000. *See* Decl. of Kessner (Dkt. No. 36-3) at ¶¶ 4 and 6.

In yet another example, the Opposition attempts to discredit Mr. Faouani's declaration that the Wicked Defendants do not own or host the popcorntime.app domain by citing inadmissible settlement communications protected under Rule 408. See Culpepper Declaration,

12

¶9. Even if these communications were admissible, at most they show that the Wicked Defendants controlled a CloudFlare account. Cloudflare is a DNS service provider – virtual telephone book that associates domain names and IP addresses. Although the Opposition leads with bold statements that "the Wicked Defendants hosted the website popcorntime.app" (Opposition at 10) Plaintiffs eventually concede that the documents provided by CloudFlare only indicate that the Wicked Defendants are using CloudFlare's DNS service. (Opposition at 24).

## II. PLAINTIFFS CANNOT RELY ON THE FEDERAL LONG-ARM STATUTE AFTER ALLEGING JURISDICTION IS APPROPRIATE IN VIRGINIA.

The Opposition asserts that Plaintiffs pleaded that personal jurisdiction was alternatively appropriate pursuant to the federal long-arm statute and that the Wicked Defendants did not make any arguments to the contrary in their Motion to Dismiss. However, the Memorandum in Support of Motion to Dismiss (Document 30, Memorandum, pg. 9) cites the legal standard for the due process analysis under Rule 4(k)(2)–the same standard as for the forum state but applied to all 50 states–and the argument section of the Memorandum states that Defendants did not purposefully avail themselves of the privilege of conducting business in Virginia or the United States.

Federal Rule of Civil Procedure 4(k)(2) provides:

> *For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:*
>
> *(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and*
>
> *(B) exercising jurisdiction is consistent with the United States Constitution and laws.*

13

Plaintiffs have failed to demonstrate the first requirement of Rule 4(k)(2)(A), that the Wicked Defendants are not subject to jurisdiction in *any* State's courts of general jurisdiction. *See Grayson*, 816 F.3d at 271 (holding that Rule 4(k)(2) is available for jurisdiction if the *plaintiff* "demonstrates that no State can exercise personal jurisdiction over the defendant"). Plaintiffs cannot argue that personal jurisdiction over the Wicked Defendants is appropriate in Virginia, identify purported contacts Defendants have with California, Florida, and the District of Columbia, and simultaneously argue that it is jurisdiction is appropriate under Rule 4(k)(2). Accordingly, Rule 4(k)(2) cannot provide Plaintiffs an alternative basis for personal jurisdiction over the Wicked Defendants. *See Sneha Media & Entm't, LLC v. Associated Broad. Co.*, 911 F.3d 192, 201 (4th Cir. 2018).

As an additional argument, the Opposition alleges that the Wicked Defendants *explicitly* purposely avail themselves of the advantages of US law by stating that they are taking advantage of the safe harbor provisions of the DMCA on their website by reference to the United States Code (17 U.S.C. § 512(c)). FAC at ¶21; Decl. of Lee at ¶13. The Opposition alleges that Plaintiffs' claims for copyright and trademark infringement arise from the Wicked Defendants use of these US resources to promote and distribute Popcorn Time for widespread piracy and their Popcorn Time VPN for the purposes of allowing their subscribers to conceal their widespread piracy.

The DMCA Notice on VPN.ht's website states that pursuant to the DMCA, Title 17, USC Section 512(c), a copyright owner or authorized agent may submit a notification alleging copyright infringement to VPN.ht Designated Copyright Agent. However, a service provider only meets the qualifications for safe harbor under the DMCA if it (1) designates an agent who may be notified of copyright infringement on its website; (2) provides that agent's information

on its website; and (3) provides the agent's information to the United States Copyright Office. 37 C.F.R. § 201.38. Here, Plaintiffs allege only the use of words on a website to invoke the DMCA, not actual steps taken by Defendants to secure protection under it. *Cf. UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (finding personal jurisdiction existed, in part, because the defendant had *registered* a DMCA agent with the Copyright Office).

## CONCLUSION

For all of the foregoing reasons, the First Amended Complaint should be dismissed as to the Wicked Defendants based on a lack of personal jurisdiction pursuant to Rule 12(b)(2).

Date:   May 25, 2021                           Respectfully Submitted,

                                               WICKED TECHNOLOGY LIMITED d/b/a
                                               VPN.HT, VPN.HT LIMITED, and
                                               MOHAMED AMINE FAOUANI


                                               /Benjamin E. Maskell/_____
                                               Benjamin E. Maskell, Esquire
                                               Va. State Bar No. 78791
                                               MASKELL LAW PLLC
                                               937 N. Daniel St.
                                               Arlington, VA 22201
                                               Telephone: (703) 568-4523
                                               Email: Ben@MaskellLaw.com
                                               *Counsel for Defendants Wicked Technology Limited, VPN.HT Limited, and Mohamed Amine Faouani*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2021, a true copy of the foregoing Reply Brief in Support of Motion to Dismiss Plaintiffs' First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
kculpepper@culpepperip.com
*Counsel for Plaintiffs*

Timothy B. Hyland
HYLAND LAW PLLC
1818 Library Street, Suite 500
thyland@hylandpllc.com
*Counsel for Plaintiffs*

/Benjamin E. Maskell/_____
Benjamin E. Maskell, Esquire
Va. State Bar No. 78791
MASKELL LAW PLLC
937 N. Daniel St.
Arlington, VA 22201
Telephone: (703) 568-4523
Email: Ben@MaskellLaw.com
*Counsel for Defendants Wicked Technology Limited, VPN.HT Limited, and Mohamed Amine Faouani*