**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

MILLENNIUM FUNDING, INC., et al,

     Plaintiffs,

     v.

WICKED TECHNOLOGY LIMITED d/b/a
VPN.HT et al.,

     Defendants.

Civil Action No. 1:21-cv-00282-RDA-TCB

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT DOE d/b/a**
**POPCORNTIME.APP**

1

**Table of Contents:**

Table of Authorities..................................................................................................... 4

I.      Introduction ....................................................................................................... 8

II.     Brief Procedural History.................................................................................... 8

III.    Concise Statement of Facts................................................................................ 10

IV.     Argument............................................................................................................ 13

        A.      Plaintiffs Have Established Defendant Doe's Liability ...................................... 14

                1. The Copyright Plaintiffs Have Established Copyright Infringement………... 14

                2. The Copyright Plaintiffs Have Established Secondary Liability for DMCA

Violations…………………………………………………………………………….. 16

                3. Plaintiff 42 Will Succeed on the Merits of its Trademark Claims…………… 17

                4. Plaintiff 42 Will Succeed on the Merits of its Unfair Competition Claims….. 19

                5. Plaintiff 42 Will Succeed on the Merits of its Breach of Contract Claims…... 19

        B.      Copyright Plaintiffs Deserve Maximum Statutory Damages for Defendant Doe's

Willful Conduct……………………………………………………………………… 20

                1. Statutory Damages for Copyright Infringement……………………………... 20

                2. Statutory Damages for DMCA Violations………………………………… 22

        C.      Copyright Plaintiffs are Entitled to Injunctive Relief…………………………... 23

        D.      Plaintiff 42 Deserves Maximum Statutory Damages for Defendant Doe's Willful

Trademark Infringement……………………………………………………………... 26

        E.      Plaintiff 42 Deserves Damages for Defendant Doe's Willful Breach of

Contract…………….......................................................................................... 27

        F.      Plaintiff 42 is Entitled to Injunctive Relief……………………………………. 28

2

V.      Attorney's Fees…………………………………………………………………….. 30

VI.     Conclusion……………………………………………………………………. 32

**Table of Authorities:**

*Statutes and Rules*

United States Copyright Act, 17 U.S.C. §§ 101 et. seq.................................................................... 8

Digital Millennium Copyright Act, 17 U.S.C. 1201 §§ et. Seq……………….................................. 8

15 U.S.C. § 1114(1)……………………………………………………………………………... 17

15 U.S.C. § 1116…………………………………………………………………………….. 28-29

15 U.S.C. § 1117…………………………………………………………………………… 19, 26

15 U.S.C. § 1125(a)……………………………………………………………………………... 19

15 U.S.C. § 1127(1)……………………………………………………………………………... 17

17 U.S.C. § 106…………………………………………………………………………………. 15

17 U.S.C. § 410(c)……………………………………………………………………………… 14

17 U.S.C. § 502(a)……………………………………………………………………………… 23

17 U.S.C. § 503(b)……………………………………………………………………………… 23

17 U.S.C. § 504(c)……………………………………………………………………………… 21

17 U.S.C. § 505…………………………………………………………………………………. 30

17 U.S.C. § 512(j)……………………………………………………………………………… 25

17 U.S.C. § 1202……………………………………………………………………………. 16, 22

17 U.S.C. § 1203……………………………………………………………………………… 22

28 U.S.C. § 1651……………………………………………………………………………… 28

Fed. R. Civ. P. 4(f)(3)…………………………………………………………………………... 9

Fed. R. Civ. P. 8(b)(6)………………………………………………………………………… 13

Fed. R. Civ. P. 55(b)(2)………………………………………………………………………… 8

*Cases*

*American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509 (2014)………………. 15

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 187 F.3d 628 (4th Cir. Aug. 10, 1999)………………………………………………………………………………….. 13

*Blue Stone Land Co., Inc. v. Neff*, 259 Va. 273, 526 S.E.2d 517 (2000)……………………….. 27

*Cabinet Discounters, Inc. V. Serkisian*, Civil Case No. PWG-16-1887, at *2 (D. Md. July 10, 2017)……………………………………………………………………………………………… 26

*Danburg v. Keil*, 235 Va. 71, 365 S.E.2d 754 (1988); W.U. Tel. Co. v. Reynolds, 77 Va. 173, 1883 WL 5488 (1883)……………………………………………………………………… 27-28

*Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F.3d 503, 505 (4th Cir.1994)…….. 30

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)……………………………… 23, 28

*Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005)…………………………………………... 24

*Enomoto v. Space Adventures, Ltd.,* 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)…………… 19-20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)……………………………………………………………………………………… 14

*Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)……………………………… 19-20

*GMF, Inc. v. Doe*, Case No. 1:17-cv-00034 (LO/IDD) (E.D. Va. May. 24, 2017)…………….. 13

*Graduate Management Admission Council v. Raju,* 267 F. Supp. 2d 505, 511 (E.D. Va. 2003)……………………………………………………………………………………… 21-22

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997)…. 15

*Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco*, 329 F.3d 359, 370 (4th Cir. 2003)………………………………………………………………... 18

*In re JJ206, LLC,* 120 USPQ2d 1568, 1570 (TTAB 2016)……………………………….. 18

*JUUL Labs, Inc. v. Unincorporated Ass'n Identified In Schedule A*, Civil Action No. 18-cv-01063 (LO/IDD) (E.D. Va. Mar. 20, 2019)……………………………………………….. 26

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007)………………………………………………………………………………………. 17

*Match.Com, LLC. v. Fiesta Catering Int'l Inc.*, No. 1:12cv363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013)……………………………………………………………………. 17

*ME2 Productions, Inc. v. Ahmed*, 289 F. Supp. 3d 760, 762 (W.D. Va. 2018)…………….. 13, 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)……………………………………………………………………………… 16

*Microsoft Corp. v. Doe,* Civil No. 1:17-cv-01224-TSE-MSN (E.D. Va. Oct. 31, 2018)………. 13

*Montblanc-Simplo Gmbh v. Ilnitskiy*, Civ. No. 1: 17-cv-415 (E.D. Va. Jan. 25, 2018)…….. 26-27

*MTI Enters. Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, Case No. 1:18-cv-650 (TSE/IDD) (E.D. Va. Dec. 7, 2018)………………………………………………………… 21-22

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)……………………….. 19

*Roanoke Hosp. Ass'n v. Doyle & Russell, Inc*., 215 Va. 796, 214 S.E.2d 155 (1975)…………. 27

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.2009)………………….. 30-31

*Rogers v. Deane,* 992 F. Supp. 2d 621 (E.D. Va. 2014)…………………………………….. 27-28

*Toolchex, Inc. v. Trainor,* 634 F. Supp. 2d 586, 594 (E.D. Va. 2008)………………………… 29

*Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992)……………………………... 19

*United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012)……………………………… 17

*Volkswagen Group Of America, Inc. v. The Unincorporated Associations Identified In Schedule A*, Civil No. 1: 19-cv-01574-AJT-MSN (E.D. Va. July 10, 2020)…………………………. 26-27

*Wilson v. Nat'l Bikers Roundup Inc.*, C/A No.: 3:15-4862-MGL-SVH (D.S.C. May. 12, 2017)………………………………………………………………………………………… 21

*WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012)…………………………………… 15

***Other Authorities***

American Intellectual Property Law Association, *Report of the Economic Survey*
(2015)…………………………………………………………………………………... 31-32

Casey Chisick, et al., *Federal Court of Appeal Confirms Availability of Site-Blocking Orders in
Canadian Copyright Cases*, Cassels, Brock & Blackwell, LLP, https://cassels.com/rep_work/
federal-court-of-appeal-confirms-availability-of-site-blocking-orders-in-canadian-copyright-
cases/ [last accessed August 23, 2021]…………………………………………………. 25

Campbell Kwan, *Foxtel Could Potentially Block Piracy Websites Without Needing to Attend
Court*, ZD Net, https://www.zdnet.com/article/australias-anti-piracy-laws-used-to-block-proxy-
websites-for-the-first-time/ [last accessed August 23, 2021]……………………………….. 25-26

Christ Matthews, *The 'Netflix for Pirates' Is Making a Triumphant Return*, Fortune (Feb. 26,
2016), https://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [last accessed August 23,
2021]…………………………………………………………………………………………. 11

Nedim Malovic, *The Evolution of Copyright Website Blocking In the UK: Live Blocking Orders*,
E.I.P.R. 2018, 40(12), 810-814, https://ssrn.com/abstract=3348426 [last accessed August 23,
2021]…………………………………………………………………………………………. 25

Office of the United States Trade Representative, *2020 Review of Notorious Markets for
Counterfeiting and Piracy*, https://ustr.gov/sites/default/files/files/Press/Releases/2020%20
Review%20of%20Notorious%20Markets%20for%20Counterfeiting%20and%20Piracy%20(final
).pdf [last accessed August 23, 2021]…………………………………………………….. 11-12

## I. INTRODUCTION

MILLENNIUM FUNDING, INC., EVE NEVADA, LLC, HUNTER KILLER PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., GUNFIGHTER PRODUCTIONS, LLC, MILLENNIUM IP, INC., VOLTAGE HOLDINGS, LLC, KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., and WONDER ONE, LLC ("Copyright Plaintiffs"), and 42 VENTURES, LLC ("42"), by and through their counsel, submit this Memorandum of Law in Support of their Motion against Defendant Doe d/b/a POPCORNTIME.APP pursuant to Fed. R. Civ. P. 55(b)(2).

## II. BRIEF PROCEDURAL HISTORY

On March 5, 2021 Copyright Plaintiffs filed the original Complaint [Doc. #1] against Defendants WICKED TECHNOLOGY LIMITED ("Wicked"), VPN.HT Limited ("VPN.HT"), MOHAMED AMINE FAOUANI ("Faouani") (Wicked, VPN.HT and Faouani referred to collectively sometimes as "The Wicked Defendants"), JOHN OR JANE DOE d/b/a POPCORNTIME.APP ("Doe"), DOES 1-100, and Voxility LLC alleging *inter alia* direct copyright infringement, contributory copyright infringement, vicarious infringement, Digital Millennium Copyright Act ("DMCA") violations and injunctive relief.

On March 31, 2021 Copyright Plaintiffs and Plaintiff 42 filed a First Amended Complaint ("FAC") [Doc. #7] alleging the claims of the original complaint and also trademark infringement, unfair competition and breach of contract against the Wicked Defendants and Defendant Doe. *See* FAC at ¶¶4-7. On the same day of filing the FAC, Plaintiffs filed a First *Ex Parte* motion for a Temporary Restraining Order, Asset Restraint and Expedited Discovery [Doc. #9].

8

On April 8, 2021 the Court issued the TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION ("TRO Order") [Doc. #16]. The TRO Order, *inter alia*, permitted Plaintiffs to serve the TRO Order, the notice of the show cause hearing, and the FAC "…by any means authorized by law, including (1) transmission by email… to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements." *Id*. at pg. 10. The TRO Order further granted Plaintiffs' request for permission to conduct limited discovery on PayPal, GitHub and Cloudflare. *See Id*. at pg. 8.

On April 8, 2021 Plaintiffs served a copy of the TRO Order, the notice of the show cause hearing, and the FAC ("pleadings") by registered e-mail using the third-party company RPost pursuant to the TRO Order and Rule 4(f)(3) of the Federal Rules of Civil Procedure. *See* AFFIDAVIT OF SERVICE OF WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI AND JOHN OR JANE DOE d/b/a POPCORNTIME.APP [Doc. #22] at ¶2. Plaintiffs sent copies of the pleadings by registered email to Defendant Doe, including the email address (hello@popcorntime.sh) Doe used to communicate with Plaintiffs' counsel and provided as contact on its website and the email address (7efd1e7ec8dd9cc42c87d178fb98497d-19003537@contact.gandi.net) provided for contacting Defendant Doe by its domain registrar gandi.net. *See* AFFIDAVIT OF SERVICE OF WICKED TECHNOLOGY LIMITED d/b/a VPN.HT, VPN.HT LIMITED, MOHAMED AMINE FAOUANI AND JOHN OR JANE DOE d/b/a POPCORNTIME.APP [Doc. #22].

On April 9, 2021 Plaintiffs filed a Second Ex Parte motion for a Temporary Restraining Order ("TRO") and Asset Restraint [Doc. #19]. On April 15, 2021 the Court held the Show Cause

Hearing and hearing on Plaintiffs' Second TRO requests. Defendant Doe and the Wicked Defendants did not attend the hearing. *See* Civil Minutes [Doc. #25].

On April 21, 2021, the Court issued the Order granting the Preliminary Injunction ("Preliminary Injunction Order") that included the relief requested in Plaintiffs' first and second TRO requests [Doc. #26]. On April 30, 2021 Plaintiffs filed a Request for Entry of Default [Doc. #27]. While the Wicked Defendants made their first appearance [Doc. #28], Defendant Doe did not appear to contest any aspect of this action. On July 13, 2021, Plaintiffs filed a Second Request for Entry of Default against Defendant Doe. *See* Second Request for Default [Doc. #39]. On July 26, 2021, the Clerk entered Default against Defendant Doe. *See* Entry of Default [Doc. #41].

## III. CONCISE STATEMENT OF FACTS

Copyright Plaintiffs are the owners of the copyrights of popular motion pictures ("Works") currently available for sale online and in brick and mortar retail stores. *See* FAC at ¶36; Exhibit "1" to the FAC [Doc. #7-1]. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, and Angela Basset, among others. *See Id.* Copyright Plaintiffs invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. *See Id.* at ¶37. Massive piracy of these motion pictures on peer-to-peer ("P2P") networks utilized by software applications such as Defendant Doe's Popcorn Time have hindered this opportunity. *See Id.*

Plaintiff 42 is a limited liability company organized under the laws of Hawaii and having its principal place of business in Kailua Kona, Hawaii.  Plaintiff 42 distributes and streams licensed content to the public from websites and mobile phone apps.  *See Id.* at ¶¶38-40. Plaintiff 42 is the

owner of a federal trademark registration, Reg. No. 5,963,253 for the mark Popcorn Time, which

issued on Jan. 14, 2020 on the principal register of the United States Patent and Trademark Office.

A true copy of this registration is attached as Exhibit "2" to the FAC [Doc. #7-2]. This registration

for the standard character mark Popcorn Time covers CLASS 9: Downloadable computer software

for downloading and streaming multimedia content images, videos and audio. *Id.*  Plaintiff 42 has

invested substantial time, effort and financial resources promoting its Popcorn Time trademark in

connection with the marketing and sale of its website and apps in interstate commerce and

engaging with content owners for licensed content.  *See* Attached Decl. of Kerry S. Culpepper at

¶¶5-8.

Defendant Doe is a group of individuals that developed and operates the notorious

BitTorrent Client piracy application "Popcorn Time" previously available at the website

popcorntime.app. *See* FAC at ¶59. Defendant Doe began operating the website popcorntime.app

on Feb. 1, 2020 subsequent to Plaintiff 42's adoption of the trademark.  *See* Decl. of Joshua Lee

to the FAC at ¶21 [Doc. #7-5].  From this website, Defendant Doe promotes and distributes its

piracy application Popcorn Time for the purposes of infringement and promotes the Wicked

Defendants' VPN service as an essential tool to use Popcorn Time without getting caught under

the brand name "Popcorn Time VPN".  *See Id.* at ¶¶16-17, Decl. of Stephen Bunting to the FAC

at ¶¶25, 32 [Doc. #7-6]. Popcorn Time has been referred to in the news media as "Netflix for

Pirates".  *See*  http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/  [last accessed  on

August 18, 2021]. Even Defendant Doe describes Popcorn Time as "…a free alternative to

subscription-based video streaming services such as Netflix." Decl. of Lee to the FAC at ¶15.The

piracy software application "Popcorn Time" is so notorious that the United States Trade

Representative ("USTR") placed it on a list of examples of Notorious Markets engaged in and

facilitating substantial piracy. *See* FAC at ¶86 (citing USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26); Decl. of Lee to the FAC at ¶¶ 15-18, Decl. of Bunting to the FAC at ¶¶ 23, 26-30.

Plaintiff 42 complained to Twitter when it discovered that Defendant Doe was using Plaintiff 42's trademark to promote Defendant Doe's piracy application on Twitter. Twitter promptly suspended Defendant Doe's Twitter account.  *See* Attached Decl. of Culpepper at ¶9.

To resolve the dispute between Plaintiff 42 and Defendant Doe over the Twitter account, Plaintiffs' Counsel and Doe exchanged emails to resolve the issue. *See Id.* at ¶12. Defendant Doe agreed to (i) write an email to VPN.HT discussing the infrastructure arrangement and show Plaintiff 42's counsel VPN.HT's reply as proof of the arrangement, (ii) cease operation of the popcorntime.app website and Popcorn Time as a P2P file sharing software in violation of U.S. copyright law, (iii) remove all films of the Copyright Plaintiffs from Popcorn time, and (iv) make a payment to Plaintiff 42.  *Id*. at ¶¶13-16; FAC at ¶211.

On April 4, 2021, Defendant Faouani sent an unsolicited email stating that the Wicked Defendants have severed their partnership with Defendant Doe and disabled the popcorntime.app domain. *See* Decl. of Culpepper to Opposition to Motion [Doc. #36-2] at ¶8. Defendant Doe did not comply with any of the other terms of the agreement with Plaintiffs' Counsel.  *See* Attached Decl. of Culpepper at ¶19. Further, Defendant Doe refused to communicate with Plaintiffs' counsel to resolve the matter unless Plaintiffs' counsel used an encrypted platform. *See Id.* at ¶2.

Shortly after being served with a copy of the Complaint and the domain popcorntime.app being disabled, Defendant Doe updated the Frequently Asked Questions section on the message forum subreddit "r/PopcornTimeApp" with instructions for users to access Popcorn Time at the new domain http://popcorn-ru.tk/build/. *See* Attached Decl. of Joshua Lee at ¶¶2-3.  Defendant

Faouani is one of the moderators of this subreddit and therefore approved of this change if not participating in it. *See Id.* at ¶¶5-6 (one moderator has username "wallydz" similar to Faouani's PayPal and email addresses and made multiple posts promoting VPN.ht). A message personally directed to Plaintiffs' counsel was also placed in the subreddit. *See Id.* at ¶4 ("…Beneath this 'app' there is an idea, 'Mr. Culpepper'. And ideas are bulletproof."). Accordingly, the Defendant Doe (jointly with the Wicked Defendants) continue promoting Popcorn Time.

Defendant Doe continues to operate the piracy application Popcorn Time at its new domain http://popcorn-ru.tk/build/ and continues to distribute Popcorn Time as a P2P file sharing software in violation of U.S. copyright law despite this Court's preliminary injunction and despite agreeing with Plaintiff 42's counsel to cease doing so to resolve the dispute over the Twitter account. *See Id.* at ¶7; Attached Decl. of Culpepper at ¶¶15-19.

## IV. ARGUMENT

In reviewing a motion for default judgment, the court views all well-pleaded factual allegations in the complaint as true for purposes of liability. *See ME2 Productions, Inc. v. Ahmed*, 289 F. Supp. 3d 760, 762 (W.D. Va. 2018) (citing Fed. R. Civ. P. 8(b)(6)). Thus, the first inquiry is "whether or not the face of the pleadings supports the default judgment and the causes of action therein." *See Id.* (citing *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 187 F.3d 628 (4th Cir. Aug. 10, 1999)). If the facts alleged in the complaint establish liability, then the court must next determine the appropriate amount of damages. *See Id.* The court may make a determination as to the amount of damages without a hearing if the record contains sufficient evidence to support the award. *See Id.* Moreover, this Court has awarded default judgment to unnamed defendants. *See Microsoft Corp. v. Doe,* Civil No. 1:17-cv-01224-TSE-MSN (E.D. Va. Oct. 31, 2018); *GMF, Inc. v. Doe*, Case No. 1:17-cv-00034 (LO/IDD) (E.D. Va. May. 24, 2017).

A.      **Plaintiffs Have Established Defendant Doe's Liability.**

Plaintiffs have overwhelmingly established Defendant Doe's liability for the claims alleged in the FAC. Personal jurisdiction is appropriate over Defendant Doe because it purposefully availed itself of the privileges of conducting business in Virginia. *See* FAC at ¶¶11-12. Defendant Doe hosts its piracy application Popcorn Time and website on servers in Virginia and, together with the Wicked Defendants, provides Internet Protocol ("IP") addresses on a server in Reston, Virginia to subscribers (including subscribers in Virginia), at least one of which was used for pirating copyright protected content. *See Id.* This action arises directly from Defendant Doe's Popcorn Time users using the at least one IP address in Virginia to pirate Copyright Plaintiffs' Works. *See Id.* at ¶¶11-13.

## 1.   The Copyright Plaintiffs Have Established Copyright Infringement

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Copyright Plaintiffs satisfy both requirements. First, there is no dispute about Copyright Plaintiffs' ownership of the copyrighted Works. The Copyright Office has issued certificates of registration for the copyrighted Works as listed in Exhibit "1" to the FAC. Plaintiffs Eve Nevada, LLC, Bodyguard Productions, Inc., Gunfighter Productions, LLC, Killing Link Distribution, LLC, LHF Productions, Inc., Rambo V Productions, Inc., Wonder One, LLC, Hunter Killer Productions, Inc. Nikola Productions, Inc. and Outpost Productions, Inc. are the original authors (from work by hire agreements) indicated in the certificates. These certificates create a presumption of copyright validity and ownership. *See* 17 U.S.C. § 410(c). Remaining Copyright Plaintiffs are parent or

affiliate companies of the original authors. *See*, *e.g.* Decl. of Jonathan Yunger to TRO [Doc. #10-2] at ¶4.

Second, the Copyright Plaintiffs will prevail on their claims that Defendant Doe directly infringed their exclusive rights of distribution and public performance of their Works in violation of 17 U.S.C. §§ 106(3) and (4).  As stated by Defendant Doe and the Wicked Defendants on their website, "Popcorn Time uses sequential ***downloading*** to ***stream*** video listed by several torrent websites…"  Decl. of Lee to the FAC at ¶15 (emphasis added). Defendant Doe has violated the Copyright Plaintiffs' exclusive right of distribution by distributing copies of Copyright Plaintiffs' Works from Popcorn Time when subscribers choose "DOWNLOAD" to download a copy of Copyright Plaintiffs' Works via Popcorn Time.  *See* Decl. of Bunting to the FAC at ¶¶29-30.  The Fourth Circuit has interpreted distribution to include not only actual dissemination, but also making a protected work available to the public. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997).  Defendant Doe violated the Copyright Plaintiffs' exclusive right of public performance by streaming copies of Copyright Plaintiffs' Works from Popcorn Time when subscribers choose "WATCH IT NOW".  *See* Decl. of Bunting to the FAC at ¶30 (Figure 11). When a party transmits a performance of a copyrighted Work to a public audience, that party directly infringes the public performance right. *See American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509 (2014) (regarding service that made Internet streams of content performed publicly: "Aereo communicates the same contemporaneously perceptible images and sounds to a large number of people who are unrelated and unknown to each other."); *see also, e.g., WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ("undisputed" that defendant's Internet streaming of television programs infringed public performance right).

Third, the Copyright Plaintiffs will prevail on their claims that Defendant Doe contributes to infringements of the copyrighted Works by material contribution and intentional inducement. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  Defendant Doe intentionally induces and encourages direct infringement of users of Popcorn Time. *See* FAC at ¶¶234-239, 246-253. Defendant Doe promotes and distributes Popcorn Time from the website popcorntime.app. *Id.* The Wicked Defendants provide the infrastructure such as hosting for Popcorn Time and Defendant Doe's website in exchange for Defendant Doe advertising their VPN service as Popcorn Time VPN.  *See* Decl. of Bunting to the FAC at ¶¶25, 32; Attached Decl. of Culpepper at ¶¶13-14, 16.  This is not a situation in which Defendant Doe is providing a service that has lawful uses without knowledge that its users are using the service for infringement. Rather, Defendant Doe promotes Popcorn Time blatantly for the purposes of copyright infringement.  *See* Decl. of Lee to the FAC at ¶15.

## 2.  The Copyright Plaintiffs Have Established Secondary Liability for DMCA Violations

Copyright Plaintiffs allege secondary liability for DMCA violations under the theories of contributory and vicarious liability. *See* FAC at ¶¶275-284. "One infringes contributorily by inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930, 125 S.Ct. 2764.

Plaintiffs have alleged DMCA violations against Defendants DOES 1-100 pursuant to 17 U.S.C. §1202 for including the unauthorized wording "YTS" in Copyright Plaintiffs' Copyright Management Information ("CMI"). *See* FAC at ¶¶263-273. Through its conduct, Defendant Doe knowingly and intentionally induced, enticed, persuaded, and caused its subscribers to commit

16

DMCA violations through encouraging subscribers to access torrent files for copying copyright-protected Works from notorious movie piracy websites such as YTS. *See Id.* at ¶275-284. Particularly, Defendant Doe encourages subscribers to achieve this through its Popcorn Time application. *Id.* Moreover, despite Defendant Doe having actual and constructive knowledge of subscribers' DMCA violations and the right and ability to supervise and control the DMCA violations that occur through the use of its service, Defendant Doe has refused, and continues to refuse, to take any meaningful action to prevent the widespread DMCA violations by its subscribers. *Id.*

### 3. Plaintiff 42 Will Succeed on the Merits of its Trademark Claims

Plaintiff 42's trademark "Popcorn Time" has been registered in the U.S. Patent and Trademark office, Russia and Iceland.  *See* Exhibit "2" to the FAC; Attached Decl. of Culpepper at ¶3.  A Defendant is liable for trademark infringement based upon counterfeiting where: (1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offer for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers. 15 U.S.C. § 1114(1); *Match.Com, LLC. v. Fiesta Catering Int'l Inc.*, No. 1:12cv363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013).   The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

Defendant Doe intentionally used Plaintiff 42's trademark Popcorn Time in US commerce without authorization or license by distributing the piracy application Popcorn Time from the US domain popcorntime.app and currently distributed through the domain http://popcorn-ru.tk/build/. *See* FAC at ¶¶299-301; Attached Decl. of Lee at ¶7. Defendant Doe's Popcorn Time mark uses the exact standard characters of Plaintiff 42's registered trademark. *See Id.* at ¶¶197-202. There can be absolutely no doubt that Defendant Doe knows it is distributing software under Plaintiff 42's trademark because Defendant Doe and Plaintiff 42 discussed this issue in connection with the suspension of Defendant Doe's Twitter handle at the request of Plaintiff 42 for trademark infringement. *See* Attached Decl. of Culpepper at ¶¶9-15. Defendant Doe and Plaintiff 42 had agreed that Defendant Doe would make a payment to Plaintiff 42 and cease using the name Popcorn Time for movie piracy to resolve this issue, but Defendant Doe breached this agreement after discussing the issue with the Wicked Defendants. *Id*. Defendant Doe has no senior user rights in the US because any prior use was in a foreign country (on the SH domain of the British overseas territory of Saint Helena) concerning distribution of the piracy application for free and thus not in commerce that Congress can lawfully regulate. *See Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco*, 329 F.3d 359, 370 (4th Cir. 2003) ("…commerce under the Lanham Act comprises all commerce that Congress may lawfully regulate.."). Assuming *arguendo* that Defendant Doe used the mark in the US, such use still does not qualify as prior use because such use was for criminal copyright infringement. *See In re JJ206, LLC,* 120 USPQ2d 1568, 1570 (TTAB 2016) (finding applicant's use and intended use of the applied for marks on marijuana vaporizers unlawful because the goods constitute illegal drug paraphernalia under the Controlled Substances Act).

Finally, Defendant Doe's distribution of the piracy software bearing a counterfeit of Plaintiff 42's trademark is likely to confuse consumers since the two marks are identical. *See* FAC at ¶¶197-203.  Plaintiff 42 distributes software with licensed content under the name Popcorn Time, while Defendant Doe distributes software for pirating content under the name Popcorn Time. *See Id.* Where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).  As discussed above, Defendant Doe used the website popcorntime.app (currently http://popcorn-ru.tk/build/) to promote and distribute its piracy app Popcorn Time. These actions are sufficient to create a presumption of consumer confusion and a likelihood that Plaintiff 42 will succeed on its claim for trademark infringement.

## 4.   Plaintiff 42 Will Succeed on the Merits of its Unfair Competition Claims

Plaintiff 42 is also likely to prevail on its claim for unfair competition. As with trademark infringement, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Because Defendant Doe's name of Popcorn Time is identical to Plaintiff 42's registered mark Popcorn Time, there is a high likelihood of confusion. *See* FAC at ¶¶310-314. Therefore, because Plaintiff 42 has established the merits of its trademark infringement claims against Defendant Doe, including that consumers are likely to be confused, a likelihood of success is also shown as to Plaintiff 42's claims for federal unfair competition.

## 5.   Plaintiff 42 Will Succeed on the Merits of its Breach of Contract Claims

The elements of a Virginia breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation,

and (3) resulting injury or harm to the plaintiff. *See Enomoto v. Space Adventures, Ltd.,* 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)). Here, Plaintiff 42 has pled that on or around April 3, 2021, Plaintiff 42 and Defendant Doe entered into a legally enforceable agreement to resolve their trademark dispute. *See* FAC at ¶¶316-317; Decl. of Culpepper at ¶¶9-18. Defendant Doe then breached that obligation. *See Id.* at ¶¶319-323; Decl. of Culpepper at ¶19. Defendant Doe's breach resulted in harm to Plaintiff 42 through Plaintiff 42's reliance and resulting damages. *See Id.* at ¶¶324-325; Decl. of Culpepper at ¶20.

**B.    Copyright Plaintiffs Deserve Maximum Statutory Damages for Defendant Doe's Willful Conduct**

Plaintiffs respectfully assert that the facts alleged in the FAC establish liability against Defendant Doe as discussed above. The Court must now determine the appropriate amount of damages. *See ME2 Productions, Inc.*, 289 F. Supp. 3d at 762. As further discussed below, Plaintiffs have asserted the starkly willful and insidious nature of Defendant Doe's activities, particularly, Defendant Doe's continuation of Popcorn Time on a different domain, which should result in the requested injunctive relief and maximum statutory damages against Defendant Doe.

**1.    Statutory Damages for Copyright Infringement**

As asserted above, Plaintiffs have alleged extensive damages due to Defendant Doe's conduct. *See also,* Order Granting Temporary Restraining Order [Doc. #16]. Plaintiffs reemphasize Defendant Doe's unabashed willfulness in its infringing activities and refusal to cease its activities even to this day. As such, Copyright Plaintiffs elect to receive maximum statutory damages of $150,000 per Work against Defendant Doe.

Pursuant to 17 U.S.C. § 504(c), the "copyright owner may elect statutory damages instead of actual damages any time prior to final judgment…." *See Graduate Management Admission Council v. Raju,* 267 F. Supp. 2d 505, 511 (E.D. Va. 2003). Pursuant to 17 U.S.C. §§ 504(c)(1) and (2), Plaintiffs are entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for a defendant's violation of the Copyright Act. "Statutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct." *Id.*

Courts in this district have awarded judgements of the maximum statutory damage of $150,000 for willful copyright infringements. *See Graduate Management Admission Council,* 267 F. Supp. 2d 505, 511-512 (E.D. Va. 2003) (awarding $150,000 per infringement (22 in all) for a total of $3,300,000*); MTI Enters. Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, Case No. 1:18-cv-650 (TSE/IDD) (E.D. Va. Dec. 7, 2018) (awarding default judgment of $150,000 per infringement (four in all) for a total of $450,000); *Wilson v. Nat'l Bikers Roundup Inc.*, C/A No.: 3:15-4862-MGL-SVH (D.S.C. May. 12, 2017) (awarding $150,000 for willful copyright infringement).

Defendant Doe's infringements are undoubtedly willful. Defendant Doe is operating a commercial criminal enterprise in which it knowingly makes Copyright Plaintiffs' Works available to the public for its own profit via its Popcorn Time piracy application. As stated by Defendant Doe and the Wicked Defendants on their website, "Popcorn Time uses sequential ***downloading*** to ***stream*** video listed by several torrent websites…"  Decl. of Lee to the FAC at ¶15 (emphasis added). Defendant Doe intentionally induces and encourages direct infringement of users of Popcorn Time. *See* FAC at ¶¶234-239, 246-253. As stated above, this is not a situation in which

Defendant Doe is providing a service that has lawful uses without knowledge that its users are using the service for infringement. Rather, Defendant Doe proudly promotes Popcorn Time for the purposes of copyright infringement.  *See* Decl. of Lee of the FAC at ¶15.

Thus, similar to *Graduate Management Admission Council* and *MTI Enters. Inc.*, Plaintiffs respectfully assert that Defendant Doe's wanton disregard of Copyright Plaintiffs' intellectual property rights and US copyright law (and continued disregard) supports the need for serious deterrence by way of maximum statutory damages. Accordingly, Plaintiffs elect to receive maximum statutory damages of $150,000 for each of its twenty-one (21) Works outlined in Exhibit "1" to the FAC, for a total of $3,150,000.

## 2. Statutory Damages for DMCA Violations

Pursuant to 17 U.S.C. § 1203(c)(3)(B), Plaintiffs are entitled to an award of "…the sum of not less than $2,500 or more than $25,000" for each DMCA violation. As discussed above, Plaintiffs have alleged DMCA violations against Defendant DOES 1-100 pursuant to 17 U.S.C. §1202 for including the unauthorized wording "YTS" in Copyright Plaintiffs' CMI. *See* FAC at ¶¶263-273. Through its conduct, Defendant Doe knowingly and intentionally induced, enticed, persuaded, and caused its subscribers to commit DMCA violations through encouraging subscribers to access torrent files for copying copyright-protected Works from notorious movie piracy websites such as YTS through its Popcorn Time application. *See Id.* at ¶275-284. Despite Defendant Doe having actual and constructive knowledge of its subscribers' DMCA violations and the right and ability to supervise and control the DMCA violations that occur through the use of its service, Defendant Doe has willfully refused (and still refuses) to take any meaningful action to prevent the widespread DMCA violations by its subscribers for the sake of its own financial gain. *Id.*

Due to the ubiquity and continuing ability of the public to use Defendant Doe's piracy application Popcorn Time, Plaintiffs allege Defendant Doe is secondarily liable for hundreds if not thousands of DMCA violations. Indeed, just from a single IP address 104.152.44.26 assigned to the Wicked Defendants, there are no less than 44 instances of DMCA violations. *See* Exhibit "4" to the FAC [Doc. #7-4] (CMI in file names altered to include "FGT", "RARBG", "STUTTERSH*T", "GalaxyRG", "YTS"). Despite this, Plaintiffs elect to receive the maximum statutory damages of $25,000 for just one DMCA violation for each of Copyright Plaintiffs' twenty-one (21) Works. Accordingly, Copyright Plaintiffs request damages of $525,000 against Defendant Doe for secondary liability as to DMCA violations.

**C.      Copyright Plaintiffs are Entitled to Injunctive Relief**

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. See 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).

Courts have looked to the four factors recited in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) when determining whether to grant a permanent injunction, which include: (1) whether plaintiff has suffered an irreparable injury; (2) whether monetary damages are adequate; (3) whether the balance of hardships favor the injunctions; and (4) the public's interest. Copyright Plaintiffs assert that all factors have been met in this case. First, Copyright Plaintiffs have undoubtedly suffered and continues to suffer irreparable injury. Copyright Plaintiffs have lost

23

control of their rightful ability to control where, when, and to whom they will distribute their Works. Without a permanent injunction, Plaintiffs cannot regain any of this control as Defendant Doe continues to blatantly infringe and promote infringement of the Copyright Plaintiffs' Works. Second, monetary damages are inadequate since Defendant Doe continues to infringe on Copyright Plaintiffs' copyrights without license or authorization. Moreover, since Defendant Doe refuses to participate in this action, Copyright Plaintiffs cannot even determine the amount of Defendant Doe's profits and the extent of damage to Copyright Plaintiffs. Third, the hardship Copyright Plaintiffs will face if the Court denies Copyright Plaintiffs' request for permanent injunction greatly outweighs any harm to Defendant Doe's interests in continuing to operate its unlawful piracy application and continuing to violate Copyright Plaintiffs' rights. Finally, the public has a compelling interest in protecting copyright owners' marketable rights to their works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause...is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)). Further, the public has an interest in being protected from being misled by Defendant Doe into installing Popcorn Time and using it to illegally stream and download copyright protected Works under the guise of lawfulness. Enjoining Defendant Doe's illegal conduct plainly furthers the public interest. As alleged in the FAC, Copyright Plaintiffs respectfully request that this Court grant a permanent injunction enjoining Defendant Doe from continuing to directly infringe and contribute to infringement of Copyright Plaintiffs' Works by way of its piracy application Popcorn Time. *See* FAC at (A)-(B).

Defendant continues to distribute Popcorn Time from the website http://popcorn-ru.tk. *See* Decl. of Lee at ¶7. The "tk" domain is for Tokelau, a territory of New Zealand in the South Pacific.

*See*  http://www.dot.tk/en/aboutdottk.html [last accessed on Aug. 22, 2021]. Accordingly, Defendant's website is located in a foreign country. Plaintiffs further request that the Court order third party service providers subject to US jurisdiction that provide service for Defendant's flagrant piracy activities cease service upon notification. This request is within the plain language and spirit of 17 USC 512(j)(1)(B)(i) that provides the Court with authority to issue:

> An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

Plaintiffs further request that the Court order third party Internet service providers block access to the foreign websites that Defendant uses to distribute its flagrant piracy application. This request is also within the plain language and spirit of 17 USC 512(j)(1)(B)(ii) that provides the Court with authority to issue:

> An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

Website blocking orders of the type requested here are common in other English-speaking countries. *See* Malovic, Nedim, The Evolution of Copyright Website Blocking In the UK: Live Blocking Orders (December 1, 2018). E.I.P.R. 2018, 40(12), 810-814, Available at SSRN: https://ssrn.com/abstract=3348426 or http://dx.doi.org/10.2139/ssrn.3348426

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3348426 (discussing history of UK website blocking orders); https://cassels.com/rep_work/federal-court-of-appeal-confirms-availability-of-site-blocking-orders-in-canadian-copyright-cases/ [last accessed on Aug. 23, 2021] (Canadian Court orders blocking of piracy websites); https://www.zdnet.com/article/australias-anti-piracy-

laws-used-to-block-proxy-websites-for-the-first-time/ [last accessed on Aug. 23, 2021]

(Australian Court orders blocking of torrent proxy websites)

**D.      Plaintiff 42 Deserves Maximum Statutory Damages for Defendant Doe's Willful Trademark Infringement**

As discussed above, Plaintiff 42 has alleged extensive damages due to Defendant Doe's conduct. *See* FAC at ¶¶197-206; *see also,* Order Granting Temporary Restraining Order [Doc. #16]. Plaintiff 42 reemphasizes Defendant Doe's unabashed willfulness in its trademark infringing activities and Defendant Doe's refusal to cease its activities even to this day. As such, Plaintiff 42 elects to receive maximum statutory damages of $2,000,000 for willful trademark infringement mark against Defendant Doe.

Pursuant to 15 U.S.C. § 1117(c), the "plaintiff may elect…instead of actual damages and profits under subsection (a), an award of statutory damages…". Plaintiffs are entitled to an award of damages not less than $1,000 or more than $200,000 per type of foods or services sold, offered for sale, or distributed and not more than $2,000,000 per counterfeit mark for willful use of the counterfeit mark. 15 U.S.C. §§ 1117(c)(1) and (2). "These damages are intended to deter wrongful conduct, and may be particularly appropriate in cases of default judgment because of non-disclosure by the infringer." *Cabinet Discounters, Inc. V. Serkisian*, Civil Case No. PWG-16-1887, at *2 (D. Md. July 10, 2017) (internal quotation and citation omitted).

Courts in this district have awarded judgements of the maximum statutory damage of $2,000,000 for willful trademark infringements. *See JUUL Labs, Inc. v. Unincorporated Ass'n Identified In Schedule A*, Civil Action No. 18-cv-01063 (LO/IDD) (E.D. Va. Mar. 20, 2019) (awarding statutory damages of $2,000,000 per infringed mark for a total of $4,000,000); *Volkswagen Group Of America, Inc. v. The Unincorporated Associations Identified In Schedule*

26

*A*, Civil No. 1: 19-cv-01574-AJT-MSN (E.D. Va. July 10, 2020) (awarding statutory damages of $2,000,000); *Montblanc-Simplo Gmbh v. Ilnitskiy*, Civ. No. 1: 17-cv-415 (E.D. Va. Jan. 25, 2018) (awarding statutory damages of $2,000,000 per infringed mark for a total of $32,000,000).

Defendant Doe's infringements are without a doubt willful and particularly egregious to warrant the maximum statutory damages. Defendant Doe is operating a commercial criminal enterprise in which it is knowingly using Plaintiff 42's mark for its own profit via its Popcorn Time application. Moreover, Defendant Doe even received prior notice via the Twitter dispute wherein Defendant Doe agreed to pay Plaintiff 42 for trademark infringement. *See* Attached Decl. of Culpepper at ¶¶9-15. Even after this, Defendant Doe continues to use Plaintiff 42's mark without regard for Plaintiff 42's trademark rights to this day. *See Id.* Finally, Defendant Doe fails to appear in this case precluding Plaintiff 42's ability to determine the extent of its damages and Defendant Doe's profits.

Thus, Plaintiff 42 respectfully asserts that Defendant Doe's wanton disregard (and continued disregard) of Plaintiff 42's trademark and US trademark law supports the need for serious deterrence by way of maximum statutory damages. Accordingly, Plaintiff 42 elects to receive maximum statutory damages of $2,000,000 for willful counterfeiting of its mark.

**E.    Plaintiff 42 Deserves Damages for Defendant Doe's Willful Breach of Contract**

Virginia recognizes two types of contract damages: direct and consequential damages. *See Rogers v. Deane*, 992 F. Supp. 2d 621 (E.D. Va. 2014) (citing *Blue Stone Land Co., Inc. v. Neff*, 259 Va. 273, 526 S.E.2d 517 (2000)). Direct damages are those which arise naturally or ordinarily from a breach and which might reasonably have been expected to result from a breach of the contract. *Id.* (citing *Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 214 S.E.2d 155 (1975)). Direct damages are recoverable regardless of whether the parties actually foresaw them

as likely consequences of breach. *Id.* (citing *Danburg v. Keil*, 235 Va. 71, 365 S.E.2d 754 (1988); W.U. Tel. Co. v. Reynolds, 77 Va. 173, 1883 WL 5488 (1883)).

Here, Plaintiff 42 is entitled to the direct damages it suffered as a result of the breach of contract by Defendant Doe. As discussed above, Plaintiff 42 has pled it entered a legally enforceable agreement with Defendant Doe to resolve their trademark dispute for, *inter alia*, $4900. *See FAC* at ¶¶316-317; Attached Decl. of Culpepper at ¶¶9-18. Defendant Doe then breached that obligation. *See Id.* at ¶¶319-323; Attached Decl. of Culpepper at ¶19. Defendant Doe's breach resulted in harm to Plaintiff 42 through Plaintiff 42's reliance and resulting damages. *See Id.* at ¶¶324-325; Attached Decl. of Culpepper at ¶20. Accordingly, Plaintiff 42 requests $4900 for Defendant Doe's breach of contract.

## F.     Plaintiff 42 is Entitled to Injunctive Relief

Pursuant to 15 U.S.C. §1116(a), and 28 U.S.C. §1651(a), Plaintiff 42 respectfully requests this court to grant a permanent injunction against Defendant Doe from infringing Plaintiff 42's trademark and continuing its unfair competition practices. Specifically, Plaintiff 42 requests a permanent injunction restraining Defendant Doe from using the trademark Popcorn Time and ordering the domain name registrar Google to transfer the domain "POPCORNTIME.APP" to Plaintiff 42. Additionally, Plaintiff 42 requests this court order Cloudflare, Github, Google and any other service provider cease providing service and access to any or all domain names and websites through which Defendant Doe engages in the aforementioned infringements and unfair competitive practices, including the new domain http://popcorn-ru.tk/build/.

Referring again to the four factors recited in *eBay Inc. v. MercExchange, LLC*, Plaintiff 42 asserts that it satisfies the factors for permanent injunction. First, Plaintiff 42 has undoubtedly suffered and continues to suffer irreparable injury. Plaintiff 42 invested time, resources, and money

to build its brand under its rightful mark. *See* Decl. of Culpepper at ¶¶5-8. Because Defendant Doe promotes its application under Plaintiff 42's mark, Plaintiff 42 has suffered immensely, including lost profits and goodwill. *See* FAC at ¶¶303-314. Moreover, Plaintiff 42 is "…entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection … upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. §1116(a).   Without a permanent injunction, Plaintiff 42 will continue to fight an uphill battle in doing business with its rightfully obtained trademark. Second, monetary damages are inadequate since Defendant Doe continues to infringe on Plaintiff 42's trademark without license or authorization. Moreover, since Defendant Doe refuses to participate in this action, Plaintiff 42 cannot even determine the amount of Defendant Doe's profits and the extent of damage to Plaintiff 42. Third, the hardship Plaintiff 42 will face if the Court denies Plaintiff 42's request for permanent injunction greatly outweighs any harm to Defendant Doe's interests in continuing to run its unlawful piracy application under Plaintiff 42's trademark. Finally, the "purpose of a trademark is to protect the public from confusion about the identity of the enterprise from which goods and services are purchased." *See Toolchex, Inc. v. Trainor,* 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (internal quotation and citation omitted). "Preventing consumers from being confused serves the public interest, as does preventing trademarks from being used deceptively, protecting the interests of trademark owners, and enforcing valid contracts." *Id.* (internal citations omitted). Thus, a permanent injunction is squarely in the public's interest. As alleged in the FAC, Plaintiff 42 respectfully request that this Court grant a permanent injunction enjoining Defendant Doe from continuing to infringe Plaintiff 42's mark Popcorn Time. *See* FAC at (I)-(K), (O).

## V. ATTORNEY'S FEES

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Fourth Circuit has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: 1) the motivation of the parties, 2) the objective reasonableness of the legal and factual positions advanced, 3) the need in particular circumstances to advance considerations of compensation and deterrence, and 4) any other relevant factor presented. *See Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc*., 30 F.3d 503, 505 (4th Cir.1994) (citation omitted). Here, Plaintiffs submit that all of the factors support attorney's fees in favor of Plaintiffs.

First, Plaintiffs' motivation is to protect their intellectual property from Defendant Doe's blatant piracy. Plaintiffs have pled that they own the respective trademark and copyrights, as well as Defendant Doe's infringements of those rights and continuing infringements. Second, since Defendant Doe failed to even make an appearance in this case, Plaintiffs assert that their suit's objective reasonableness of its legal and factual positions has not been challenged. Still, this Court should find that Plaintiffs' positions are objectively reasonable as Defendant Doe is operating a piracy application made solely to infringe protected works. Finally, because of Defendant Doe's continuing intentional and willful disdain for Plaintiffs' respective trademark and copyrights, the highest level of deterrence is necessary.

Calculation of Attorney's Fees

To calculate the appropriate attorney's fees award, the Court must determine a "lodestar figure" which is calculated by multiplying "the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.2009). To

determine the "reasonable" number of hours and rate, the Court's discretion should be guided by the following twelve factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 243-44 (internal quotation omitted). Plaintiffs request the following lodestar amount for attorney's fees it incurred in this case as detailed in the attached Declarations with regards to Defendant Doe:

|  |  |  |
|---|---|---|
| KERRY CULPEPPER | 73.75 hours @ $350/hour = | $25,812.50 |
| JOSHUA LEE (Associate) | 36.25 hours @ $250/hour = | $8437.50 |
| TIMOTHY HYLAND (local counsel) |  | $1069.74 |

Additionally, Plaintiffs seeks to recover taxable costs of $627.   The taxable costs requested from Defendant Doe includes the $402 filing fee for filing the complaint.

As stated in the attached declarations, Plaintiffs' Counsel's attorney's fees are lower than the prevailing market rates in the community. According to the American Intellectual Property Law Association's Report of the Economic Survey (2015), the 2014 mean hourly rate for a solo practitioner specializing in Electrical technologies is $379, higher than Plaintiffs' Counsel's rates.

31

Am. Intellectual Prop. Law Ass'n, Report of the Economic Survey (2015), at I-15. Exhibit "1" at pg. 1. Similarly, the 2014 mean hourly rate for an associate attorney at a private firm is $279, higher than Plaintiffs' associate counsel's rates. *Id*. at pg. 2. Accordingly, attorney's fees are appropriate in this case, and the requested attorney's fees are reasonable.

## VI. CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court enter default judgment against Defendant Doe and issue an award of statutory damages in favor of Plaintiffs of $5,679,900, attorneys' fees in the amount of $35,319.74, and taxable costs of $627.


DATED: Kailua Kona, HI, Aug. 23, 2021.


Respectfully submitted,

 /s/ Kerry S. Culpepper

Kerry S. Culpepper*,*
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
Fax.: (202) 204-5181
kculpepper@culpepperip.com
***Attorney for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 23, 2021, a true and correct copy of the foregoing was filed

electronically with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing to the

following:

Benjamin E. Maskell, Esquire
MASKELL LAW PLLC
937 N. Daniel St.
Arlington, VA 22201
Email: Ben@MaskellLaw.com
*Counsel for Defendants Wicked Technology*
*Limited, VPN.HT Limited, and Mohamed*
*Amine Faouani*

I further certify that on August 23, 2021 a true and correct copy of the foregoing was served

by email to the following:

| JOHN OR JANE DOE d/b/a POPCORNTIME.APP | hello@popcorntime.sh |
|---|---|
| JOHN OR JANE DOE d/b/a POPCORNTIME.APP | 7efd1e7ec8dd9cc42c87d178fb98497d-19003537@contact.gandi.net |

DATED: Kailua Kona, HI, Aug. 23, 2021.

Respectfully submitted,

 /s/ Kerry S. Culpepper

Kerry S. Culpepper,
Virginia Bar No. 45292
Counsel for Plaintiffs
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204

Kailua-Kona, Hawai'i 96740
Tel.: (808) 464-4047
Fax.: (202) 204-5181
kculpepper@culpepperip.com
***Attorney for Plaintiffs***