# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| MILLENNIUM FUNDING, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-282 (RDA/TCB) |
| | ) | |
| JOHN DOE, d/b/a POPCORNTIME.APP, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiffs Millennium Funding, Inc., Eve Nevada, LLC, Hunter Killer Productions, Inc., Bodyguard Productions, Inc., Gunfighter Productions, LLC, Millennium IP, Inc., Voltage Holdings, LLC, Killing Link Distribution, LLC, LHF Productions, Inc., Rambo V Productions, Inc., Nikola Productions, Inc., Outpost Productions, Inc., and Wonder One, LLC ("Copyright Plaintiffs") and 42 Ventures, LLC's  ("Plaintiff 42") Motion for Default Judgment Against Defendant Doe d/b/a Popcorntime.app (Dkt. 42).[1] For the reasons articulated below, the undersigned recommends that Plaintiffs' Motion be granted.

---

[1] The relevant filings before the Court include Plaintiffs' First Amended Complaint ("First Am. Compl.") (Dkt. 7); Plaintiffs' Motion for Default Judgment Against Defendant Doe d/b/a/ Popcorntime.app ("Mot. Default J.") (Dkt. 42); Plaintiffs' Memorandum and Memorandum of Points and Authorities in Support of Motion for Default Judgment Against Defendant Doe d/b/a Popcorntime.app ("Mem. Supp.") (Dkt. 43); Declaration of Kerry S. Culpepper. ("Decl. of Culpepper.") (Dkt. 43-1); Declaration of Joshua Lee ("Decl. of Lee") (Dkt. 43-2); and all attachments and exhibits submitted with those filings.

1

## I.   BACKGROUND

### A.   Procedural Posture

Plaintiff filed this lawsuit on March 5, 2021, asserting claims under the United States Copyright Act of 1976 and Digital Millennium Copyright Act against Defendants John or Jane Doe d/b/a Popcorntime.app, Does 1-100, and Wicked Technology Limited d/b/a VPN.HT. (*See* dkt. 1.) Plaintiffs filed their First Amended Complaint on March 31, 2021, along with two Ex Parte Motions for Temporary Restraining Orders on March 31 and April 9. (Dkts. 7, 9, 19.) Defendant Doe failed respond to the First Amended Complaint and did not appear for the Temporary Restraining Order hearing. (*See* dkt. 27.) The Honorable District Judge Rossie D. Alston, Jr. granted the relief requested in the Motions (Dkts. 9, 19) and ordered a Permanent Injunction, which remains in effect. (Dkts. 16, 26.)

On July 13, 2021, Plaintiffs filed their second Request for Entry of Default as to Defendant Doe d/b/a Popcorntime.app. (Dkt. 39.) The Clerk entered default as to Defendant Doe on July 26, 2021. (Dkt. 41.) Thereafter, Plaintiffs filed the instant Motion for Default Judgment and Memorandum of Points and Authorities in Support. (Dkts. 42-43.) At the hearing on September 3, 2021 before the undersigned, Defendant Doe did not appear or respond in any way. The undersigned took this matter under advisement to issue this Report and Recommendation.

### B.   Jurisdiction and Venue

Before the Court can render default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

### 1)  Subject Matter Jurisdiction

First, the undersigned finds that this Court has proper subject-matter jurisdiction as to all claims in this case. Subject-matter jurisdiction must be proper as to each claim in federal court.

A federal district court has original jurisdiction in a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, U.S.C. § 1338(a) gives federal courts original jurisdiction over any civil action arising under U.S. copyright law. 28 U.S.C. § 1338(a). Here, Plaintiffs brought these claims under the Copyright Act, DMCA, and the Lanham Act, which are federal statutes. (First Am. Compl. ¶¶ 4-6.) This Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to the Plaintiffs' first four claims.

Plaintiff 42's Virginia Contract Law claim is within this Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). Federal district courts may exercise jurisdiction over state law claims that form "the same case or controversy" as existing claims supported by subject matter jurisdiction. *Id.* Here, the Court has federal question jurisdiction over Plaintiffs' Copyright, DMCA, and Trademark Claims which involve Defendant Doe's use of the BitTorrent software Popcorn Time. *See* 28 U.S.C. § 1331. Plaintiff 42's Virginia breach of contract claim is from the same case or controversy because it relates to Defendant Doe's infringing use of the Popcorn Time mark. Therefore, the undersigned finds that the Court has supplemental jurisdiction over the Virginia breach of contract claim because it arises from the same case or controversy as the federal claims. *See* 28 U.S.C. § 1367(a).

Accordingly, the undersigned finds that this Court has subject-matter jurisdiction over all claims asserted by Plaintiffs.

2) <u>Personal Jurisdiction</u>

Second, the undersigned finds that this Court has personal jurisdiction over Defendant Doe. The inquiry for personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301

(4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). A court has general jurisdiction over an individual defendant who is domiciled in the forum state. *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

If a defendant is not domiciled in the forum, both the Virginia long arm statute and the safeguards of the Fourteenth Amendment must be satisfied for the court to exercise personal jurisdiction. *Tire Eng'g & Distrib., LLC*, 682 F.3d at 301. Because Virginia is the forum state, these two tests collapse into one due process inquiry. *Id.* Due process requires that a defendant have sufficient "minimum contacts" with Virginia "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In the case of internet-generated contacts, Courts ask if "(1) [the defendant] directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

Here, Defendant Doe has sufficient contacts with Virginia to justify personal jurisdiction. Defendant Doe contracted with Voxility, LLC, a Virginia limited liability company, for server space to operate Popcorn Time. (First. Am. Compl. ¶¶ 10-11.) Defendant additionally provides users with Internet Protocol ("IP") addresses from Voxility, which are stored in data centers including the Coresite data center in Reston, Virginia. (*Id.*) Further, some of the subscribers using these IP addresses are located in Virginia, and Plaintiffs allege that at least one of Defendant Doe's Popcorn Time subscribers utilizes an IP address in Virginia to conduct copyright infringing piracy

activities. [2] *See Millennium Funding, Inc. v. Wicked Technology Limited*, No. 1:21-cv-282, 2021 WL 1564489, at *2 (E.D. Va. April 21, 2021) (finding personal jurisdiction over the Defendants); (First Am. Compl. ¶¶ 10-11.) Popcorn Time has "no restrictions" and "does not use geo-blocking to filter out IP addresses from the United States or Virginia." (First Am. Compl. ¶ 30.) Overall, by using Virginia servers and targeting of Virginia residents, Defendant Doe has established sufficient minimum contacts with the forum. *See ALS Scan, Inc.*, 293 F.3d at 714.

Alternatively, the federal long-arm statute confers personal jurisdiction over properly served defendants where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. Pro. (4)(k)(2). Here, the Copyright, DMCA, and Trademark claims against Defendant Doe arise under federal law. Plaintiffs served Defendant, and Defendant is not subject to jurisdiction in any state. Further, enforcing Copyright, DMCA, and Trademark laws are consistent with federal law.

The undersigned therefore finds that this Court may properly exercise personal jurisdiction over Defendant Doe under both specific personal jurisdiction and the federal long-arm statute.

3) Venue

Third, the undersigned finds that venue in this Court is proper. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(1)-(2). As a fallback, venue is proper where a defendant "is subject to the court's personal jurisdiction with respect to such action." §

---

[2] The forensic investigations revealed that Does 1-100 "have copied a piece of the Plaintiffs' copyrighted Works" from Virginia IP addresses. (First Am. Compl. ¶ 116; Decl. of Arheidt.)

1391(b)(3).

Here, Plaintiffs allege that venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to this lawsuit occurred in the District. (First Am. Compl. ¶ 31.) Furthermore, as discussed above, Defendant Doe is subject to the Court's personal jurisdiction for this case. Therefore, the undersigned finds that venue is proper under 28 U.S.C. § 1391(b).

## C.  Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Pursuant to Federal Rule of Civil Procedure 4(f)(3), a plaintiff may serve an individual who does not reside within a judicial district of the United States "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Here, Defendant Doe's identity is unknown, and the Court ordered that Plaintiffs may serve the Defendants, including Defendant Doe, by email.[3] (Dkt. 16 at 10.) Plaintiffs subsequently served Defendant Doe by registered e-mail via the third-party company RPost on April 8, 2021. (Dkt. 27; Aff. of Counsel 2-3). The undersigned therefore finds that Plaintiffs properly served Defendant Doe. *See* Fed. R. Civ. Pro. 4(f)(3); (Dkt. 16.)

---

[3] "ORDERED that copies of this Order, notice of the preliminary injunction hearing, and service of **the First Amended Complaint may be served by any means authorized by law, including (1) *transmission by email,*** facsimile, mail and/or personal delivery to the contact information provided by Defendants to Defendants' domain registrar and registries and/or hosting companies and as agreed to by Defendants in the domain registration and/or hosting agreements, (2) publishing notice on a publicly available Internet website, (3) by personal delivery upon Defendants, to the extent Defendants provided accurate contact information in the United States; and (4) personal delivery through the Hague Convention on Service Abroad or similar treaties upon Defendants, to the extent Defendants provided accurate contact information in foreign countries that are signatories to such treaties[.]" (Dkt. 16 at 10.) (emphasis added)

## II.   FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiffs have established the following facts. Plaintiffs sued to remedy the "massive piracy of their motion pictures" by Defendant Doe and others through the "notorious piracy application Popcorn Time." (First Am. Compl. ¶ 1.) There are two sets of plaintiffs in this case: (1) the Copyright Plaintiffs, owners of twenty-one motion pictures and (2) Plaintiff 42, owner of the trademark "Popcorn Time." The Copyright Plaintiffs are corporations and limited liability companies organized under Nevada and California law, with principal places of business in California.[4] (First Am. Compl. ¶¶ 33-35.) 42 Ventures, LLC ("Plaintiff 42") is a Hawaii limited liability company with its principal office in Kailua Kona, Hawaii. (First Am. Compl. ¶ 38.)

Defendant Doe d/b/a Popcorntime ("Defendant Doe") "is a group of [unknown] individuals that developed and [operate] the notorious BitTorrent Client piracy application "Popcorn Time" previously available at the website popcorntime.app." (First Am. Compl. ¶ 56.) Defendant Does 1-00 ("Does 1-100") are users of Popcorn Time and subscribers of the Popcorn Time VPN. (First Am. Compl. ¶ 60.) Wicked Technology Limited, VPN.HT Limited, and Mohamed Amine Faouani ("Wicked Defendants") operate the Popcorn Time VPN, which provides Popcorn Time users with "anonymous" internet access. (First Am. Compl. ¶¶ 53-54.)

### A.   Copyright Plaintiffs' Works

First, the Plaintiffs allege that Defendant Doe has and continues to download, copy, and

---

[4] Millennium Funding, Inc., Bodyguard Productions, Inc., LHF Productions, Inc., Rambo V Productions, Inc., Hunter Killer Productions, Inc., Millennium IP, Inc., Nikola Productions, Inc., and Outpost Productions, Inc., are Nevada corporations with principal offices in Los Angeles. (First Am Compl ¶ 33.) Eve Nevada, LLC, Gunfighter Productions, LLC, Voltage Holdings, LLC, and Wonder One, LLC are Nevada limited liability companies with principal offices in Los Angeles, California. (First Am. Compl. ¶ 34.) Killing Link Distribution, LLC, is a California limited liability company with its principal office in California. (First Am. Compl. ¶ 35.)

distribute the Copyright Plaintiffs' Works without authorization using the site Popcorn Time. The Copyright Plaintiffs' twenty-one Works include globally recognized, critically acclaimed films featuring "A-list actors." (First Am. Compl. ¶ 36; Ex. 1.) The Copyright Plaintiffs have invested significantly in these films and expect return on their investments. (First Am. Compl. ¶ 37.) Defendant Doe has interrupted and interrupts these revenue streams to Copyright Plaintiffs by enabling "massive piracy" through the Popcorn Time peer-to-peer BitTorrent network. (*Id.*)

Popcorn Time is a BitTorrent network and describes itself as "a free alternative to subscription-based video streaming services such as Netflix." (First Am. Compl., Decl. of Lee ¶ 15.) To watch a movie, users merely click on a movie icon, download, and watch the film. (First Am. Compl., Decl. of Bunting ¶ 23.) Popcorn Time is known in the news media as "Netflix for Pirates" and is listed on the United States Trade Representative's Notorious Markets list for facilitating piracy. (First Am. Compl. ¶¶ 85-86.) Although the site is "free," Popcorn Time solicits users to purchase and download the Popcorn Time VPN to "stay protected while torrenting" and to "safely and anonymously access" the films. (First Am. Compl. ¶¶ 159-61, 184, Decl. of Bunting ¶ 25, Decl. of Lee ¶¶ 13, 16.) The paid VPN allows Defendant Doe and the Wicked Defendants to collectively exploit users' fears of copyright infringement. (*Id.*)

Popcorn Time allows users, like Does 1-100, to download or "pull[] in" movies from illegitimate torrent websites like YIFY/YTS, which "index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol." (First Am. Compl. ¶¶ 100-02, Decl. of Lee ¶ 18.) Popcorn Time users work together to download and share pieces of the Works with peer users, creating a "swarm." (First Am. Compl. ¶¶ 104-09.) Once the full Work has been downloaded in pieces, Popcorn Time re-assembles the pieces from the swarm into movie form, which is further distributed and streamed. (First Am. Compl. ¶ 109.) Overall, this

process allows Popcorn Time users to watch the Copyright Plaintiffs' Works without paying.

### B. Alteration of the CMI of Copyright Plaintiffs' Works

Second, Plaintiffs allege that Defendant Doe and Does 1-100 have shared and share files with altered copyright management information ("CMI"). The Works include CMI when legitimately distributed. (First Am. Compl. ¶ 121.) Does 1-100 remove the CMI from the works during the torrent file creation process and add the letters "YTS" and others to brand the pirated files distributed in the swarm. (First Am. Compl. ¶¶ 122-25, Ex. 4 at 1-2.) Defendant Doe and Does 1-100 knew and know that the torrent source is illegal, that YTS did not author the Works, and that YTS is not licensed to distribute the works. (First Am. Compl. ¶¶ 126-28.) Further, Defendant Doe encourages Does 1-100 to alter the CMI of the Works, as it is an essential aspect of the site's piracy scheme. (First Am. Compl. ¶ 184, Dec. of Lee ¶ 16.) Defendant Doe has actual and constructive knowledge of Does 1-100 removal of the CMI and addition of the letters YTS to the files. (First Am. Compl. ¶¶ 126-28.) Defendant Doe financially benefits from Does 1-100's CMI alterations, which allows Popcorn Time to distribute and stream the Works. Plaintiffs allege that Defendant Doe has enabled users to alter CMI "hundreds if not thousands" of times and continues to do so. (Mem. Supp. at 23; *see* First Am. Compl. ¶¶ 275-84, Ex. 4.)

### C. Plaintiff 42's Registered Trademark "Popcorn Time"

Third, Plaintiffs allege that Defendant Doe promotes its piracy application using Plaintiff 42's registered trademark "Popcorn Time." Plaintiff 42 streams licensed content, like movie reviews and pop culture debates from websites and mobile phone applications under the mark Popcorn Time. (First Am. Compl. ¶¶ 38-40.) Plaintiff 42's mark, Reg. No. 5,963,253, was issued on January 14, 2020 on the United States Patent and Trademark Office's principal register. (First Am. Compl., Ex. 2.) The mark "covers CLASS 9: Downloadable computer software for

downloading and streaming multimedia content images, videos and audio." (*Id.*) Through marketing, sales, and engaging with licensed content owners, Plaintiff 42 has invested substantial resources in the mark. (Mem. Supp at 11, Decl. of Culpepper ¶¶ 5-8.) Defendant Doe uses the identical characters "Popcorn Time" as the name of its software. As discussed above, Defendant Doe's software solicits users to download and purchase the Wicked Defendants' Popcorn Time VPN and further enables users to distribute and stream unauthorized copies of the Copyright Defendants' Works. (First Am. Compl., Decl. of Lee ¶¶ 16-17; Decl. of Bunting ¶¶ 25, 32.)

### D. Plaintiff 42 and Defendant Doe's April 3, 2020 Agreement

Plaintiffs allege that Plaintiff 42 and Defendant Doe entered into an agreement on April 3, 2020 to resolve Defendant's use of Plaintiff 42's mark on Twitter.  Defendant Doe's previous site popcorntime.app became active on February 1, 2020. (First Am. Compl, Decl. of Lee ¶ 21.) Plaintiff 42 complained to Twitter that Doe's Twitter handle was infringing its mark. (First Am. Compl. ¶ 208.) In response to Plaintiff 42's complaint, Twitter informed Defendant Doe on April 3, 2020 that it was suspending the handle because of Defendant's infringing use. (First Am. Compl. ¶ 209.) Defendant Doe contacted Plaintiff 42 via email to settle the Twitter trademark dispute and subsequently agreed to:

> (i)  write an email to VPN.HT discussing the infrastructure arrangement and show Plaintiff 42's counsel VPN.HT's reply as proof of the arrangement,
> (ii)  not to operate the website and Popcorn Time as a peer-to-peer file sharing software in violation of U.S. copyright law,
> (iii)  to remove all films of the Copyright Plaintiffs from Popcorn time, and
> (iv)  to make a payment of Four Thousand Nine Hundred dollars to Plaintiff 42.

(First Am. Compl. ¶ 211.) Doe failed to comply with these terms. (First Am. Compl. ¶ 212; Mem. Supp. at 12, Decl. of Culpepper ¶ 19.) However, in response to the agreement and Doe's

noncompliance, the Wicked Defendants claim to have severed their partnership with Doe and disabled popcorntime.app. (Mem. Supp. at 12, Decl. of Culpepper ¶ 8.)

After the discontinuation of popcorntime.app, Defendant Doe created a new domain http://popcorn-ru.tk/build/ and directed users to the site in the subreddit forum "r/PopcornTimeApp."[5] (Mem. Supp. at 12, Decl. of Lee ¶¶ 2-3.) Defendant Doe continues to distribute the peer-to-peer file sharing BitTorrent software Popcorn Time on this domain.[6] (Mem. Supp. at 13, Decl. of Lee ¶¶ 2-3.)

### III. EVALUATION OF PLAINTIFFS' COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Copyright Plaintiffs and Plaintiff 42 allege multiple claims in this case. The Copyright

---

[5] The subreddit includes a direct message to Plaintiffs' counsel: ". . . Beneath this 'app' there is an idea, 'Mr. Culpepper.' And ideas are bulletproof." (Mem. Supp. at 12, Decl. of Lee ¶ 4.)
[6] Plaintiffs additionally allege that the Wicked Defendants, as moderators of the subreddit, may be facilitating if not participating in the new allegedly infringing domain. (Mem. Supp. at 12-13, Decl. of Lee ¶¶ 5-6.)

Plaintiffs assert claims of direct and contributory copyright infringement and secondary liability for DMCA violations. Plaintiff 42 asserts trademark, unfair competition, and breach of contract claims. The undersigned will consider each element of each cause of action in turn.

## A.      Defendant Doe's Direct Infringement of Copyright Plaintiffs' Works.

The Copyright Plaintiffs assert claims of direct copyright infringement against Defendant Doe pursuant to the Copyright Act. (*See* First Am. Compl. ¶ 4.) The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)-(5), 501. In other words, the owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; publicly perform the works; or display the works. *See id.* One who violates any of the copyright owner's exclusive rights is considered an infringer. *See id.* For a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

### 1)  Copyright Plaintiffs Own Valid Copyrights.

First, Copyright Plaintiffs have sufficiently shown that they own valid copyrights for the works at issue. These Plaintiffs allege that they own copyrights for the copyrighted Works outlined in Exhibit 1 to the First Amended Complaint. (*See* First Am. Compl., Ex. 1.) Copyright certificates create a presumption of valid ownership. 17 U.S.C. § 410(c). Exhibit 1 contains an overview of these twenty-one (21) copyrights, including the Copyright Plaintiffs as original owners, motion picture titles, and respective certificate numbers. (*See id.*)

### 2)  Defendant Doe Infringed on Copyright Plaintiffs' Exclusive Rights.

Second, the Copyright Plaintiffs allege that Defendant Doe violated the Plaintiffs'

reproduction, distribution, and performance rights through the operations of Popcorn Time. 17 U.S.C. §§ 106(1), (3)-(4), 501; (*See* First Am. Compl. ¶¶ 217-29, Decl. of Lee at ¶ 15; Mem. Supp. at 15.)

Copyright infringement exists where file-sharing software and protocols (such as BitTorrent) are used to download works and reproduce, distribute, display, or publicly perform works without the copyright-holder's permission. *See, e.g., ME2 Prods. v. Mason*, No. 3:17-cv-00058, 2018 U.S. Dist. LEXIS 49985, at *2 (E.D. Va. Mar. 26, 2018) ("[T]he plaintiff pleads the elements of infringement by alleging that it owned a valid copyright, and that the defendant copied and distributed the copyrighted material through a BitTorrent network.").

Copyright holders have the exclusive right to make copies of their works. § 106(1).  As outlined in detail above, the BitTorrent protocol used by Popcorn Time involves the peer-to-peer sharing of file "pieces" to recreate and distribute Copyright Plaintiffs' Works. This replication violates Copyright Plaintiffs' exclusive rights to reproduce their Works. *See* § 106(1).

A defendant violates a copyright-holder's distribution rights when that defendant disseminates the work or makes the work generally available to the public. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). The streaming of video content has been held to violate the "public performance" rights under § 106(4). *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014). With Defendant Doe's BitTorrent software Popcorn Time users can search, download, and stream copies of the Plaintiffs' Works through peer-to-peer sharing, which results in the unauthorized distribution and public performance of the Copyright Plaintiffs' Works. *See* §§ 106(3)-(4); (First Am. Compl., Decl. of Lee at ¶ 15.). Accordingly, the undersigned finds that Plaintiffs have sufficiently pled an infringement claim under the Copyright Act.

13

**B.      Defendant Doe's Contributory Infringement of the Works.**

Plaintiffs' Complaint alleges contributory liability against Defendant Doe for infringement of the Copyright Plaintiffs' exclusive rights. (First Am. Compl. ¶¶ 234-39.) Common law contributory copyright infringement may be found where someone "intentionally induc[es] and encourage[es] direct infringement" of a copyrighted work by another. *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 930 (2005). Mere knowledge of infringing uses by third parties is insufficient to establish intentional inducement. *Id.* at 937. Instead, a "clear expression or other affirmative steps taken to foster infringement" is required. *Id.* at 936-37.

Here, Plaintiffs have sufficiently alleged that Defendant Doe has intentionally induced Does 1-100's infringement of the Copyright Plaintiffs' Works. (*See* First Am. Compl. ¶¶ 234-39.) As discussed above, Does 1-100 are users of Defendant Doe's movie piracy application Popcorn Time. Does 1-100 use Popcorn Time to watch the Works without paying, thus infringing on the Copyright Plaintiffs' exclusive rights to reproduce, publicly perform, and distribute their Works. (*See* First Am. Compl. ¶¶ 234-39.)

Defendant Doe encourages Popcorn Time infringe the Copyright Plaintiffs' rights by instructing Popcorn Time users, Does 1-100, to subscribe to and download the Popcorn Time VPN. The Popcorn Time VPN assigns subscribers IP addresses, so they may "safely and anonymously" access pirated movies via Popcorn Time. (First Am. Compl. ¶¶ 184, 236-38l; Decl. of Lee at ¶16.) Defendant Doe has more than mere knowledge of Does 1-100 infringing uses of Popcorn Time, as he has taken affirmative steps to encourage users to unlawfully torrent and watch the Works "safely and anonymously." (First Am. Compl. ¶ 184, Decl. of Lee at ¶16.) Because the Defendant explicitly encourages Popcorn Time users like Does 1-100 to violate the

rights of the Copyright Plaintiffs, the undersigned finds that Plaintiffs sufficiently pled a claim of contributory copyright infringement.

**C.      Defendant Doe's Secondary Digital Millennium Copyright Act (DMCA) Liability.**

The Copyright Plaintiffs further allege that Defendants are contributorily and vicariously liable for violations of the Digital Millennium Copyright Act ("DMCA"). The DMCA states that a person may not "intentionally remove or alter any copyright management information, . . . knowing, or, . . . having reasonable grounds to know it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1).

Common law contributory infringement exists when one "intentionally induces and encourages direct infringement" of a copyrighted work. *Metro-Goldwyn-Mayer Studios Inc., et al.*, 545 U.S. at 930. Vicarious infringement exists when one "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Id.*

1) Contributory DMCA Infringement.

Plaintiffs have sufficiently alleged that Defendant is contributorily liable for Does 1-100's alleged DMCA violations. While using the Popcorn Time BitTorrent protocol, Does 1-100 add the unauthorized wording "YTS" on Plaintiffs' Works, intentionally removing and altering the Copyright Management Information ("CMI").   (*See* First Am. Compl. ¶¶ 262-73.)   Defendant encourages Popcorn Time subscribers to visit movie piracy sites like YTS to access torrent files and make unauthorized copies of the Works. (*See* First Am. Compl. ¶¶ 275-78.) Defendant further encourages subscribers to share the unauthorized copies of the Works with altered CMI via Popcorn Time's peer-to-peer sharing software. (*See* First Am. Compl. ¶ 279.) Defendant Doe has actual and constructive knowledge of the violations. (*See* First Am. Compl. ¶¶ 280-81.) Because the alleged facts support a plausible claim that Defendant has intentionally encouraged Does 1-

100's alleged DMCA infringement, the undersigned finds that Defendant Doe is contributorily liable.

2) Vicarious DMCA Infringement.

Plaintiffs allege sufficient facts to establish vicarious copyright infringement. Subscribers like Does 1-100 use Popcorn Time to obtain copies of the Works with altered CMI, which is a DMCA violation. (*See* First Am. Compl. ¶¶ 262-73.) Defendant Doe has the power to stop this DMCA infringement on Popcorn Time yet refuses. (*See* First Am. Compl. ¶ 282.) Defendant Doe profits from this DMCA infringement because Popcorn Time's connection to torrent sites like YTS draws subscribers to the site. (*See* First Am. Compl. ¶¶ 282, 284.) Therefore, the undersigned finds that the facts alleged sufficiently support a claim of vicarious DMCA infringement against Defendant Doe.

**D.      Plaintiff 42's Trademark Claim.**

Plaintiff 42 asserts that Defendant Doe violated its trademark "Popcorn Time" by counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). (First Am. Compl. ¶ 298.) A plaintiff pleads a counterfeiting trademark claim by alleging that "the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods[;] and (4) its use was likely to confuse or deceive." *Match.Com, L.L.C. v. Fiesta Catering Int'l, Inc.*, No. 1:12-cv-363, 2013 WL 428056, at *6 (E.D. Va. Jan. 13, 2013).

1) Defendant Doe's Intentional Use of a Counterfeit Mark in Commerce.

First, Plaintiff 42 has sufficiently alleged that Defendant Doe has used a counterfeit mark in commerce. A counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Plaintiff 42 owns the federal trademark registration, Reg. No. 5,963,253 for the standard character mark Popcorn Time. (*See* First Am. Compl. ¶¶ 74, 201, Ex. 2.) In distributing the movie piracy application, Defendant Doe uses the mark "Popcorn Time," with characters identical to Plaintiff 42's mark. (*See* First Am. Compl. ¶¶ 197-202, 299-301, Decl. of Lee at ¶¶ 7, 15.) Defendant Doe uses the mark in the stream of commerce without authorization and distributes the software for free. *See Millennium Funding, Inc.*, 2021 WL 1564489 at *3 (reasoning that the distribution of the software for free "creates an [inference] that the mark is counterfeit"); (*See* First Am. Compl. ¶¶ 1, 3, 299-301.) Although Popcorn Time is free, Defendant Doe generates income through advertisements and other mechanisms like the Wicked Defendants' Popcorn Time VPN. (*See* First Am. Compl. ¶ 304.) Therefore, the undersigned finds that Defendant Doe has intentionally used a counterfeit mark in commerce in violation of Plaintiff 42's trademark.

2) Defendant Doe's Knowledge that the Mark was Counterfeit.

Second, Plaintiff 42 has sufficiently alleged that Defendant Doe knew that the mark "Popcorn Time" was counterfeit. On April 2, 2020, Twitter notified Doe that it was suspending Doe's Twitter account for using a handle infringing on Plaintiff 42's mark. (*See* First Am. Compl. ¶¶ 207-09.) Plaintiff 42 and Doe entered into an agreement to resolve the trademark dispute, and therefore has actual knowledge of Plaintiff 42's mark (*See* First Am. Compl. ¶¶ 207-16, 301.) Doe further has actual notice of Plaintiff 42's trademark registration rights under 15 U.S.C. § 1072. (*See* First Am. Compl. ¶ 301.) The undersigned accordingly finds that Defendant Doe knew the mark was counterfeit.

3) Defendant Doe's Use of the Mark in Connection with the Sale, Offering for Sale, or Distribution of Goods.

Plaintiff 42 has sufficiently alleged Defendant Doe's use of Plaintiff 42's mark is in

17

connection with the sale, offering for sale, or distribution of goods. Doe uses Plaintiff 42's mark in connection to stream and distribute copyright protected content. (*See* First Am. Compl. ¶ 200.) Doe generates income through advertisements and other mechanisms related to the movie piracy site like the paid Popcorn Time VPN. (*See* First Am. Compl. ¶¶ 1-3, 304.) Therefore, the undersigned finds that this third element of the trademark claim is met.

4) Defendant Doe's Use of the Counterfeit Mark Is Likely to Confuse or Deceive Others.

Finally, Plaintiff 42 has alleged facts to support that Defendant Doe's use of the mark is likely confusing or deceptive. The Fourth Circuit analyzes multiple factors to determine whether confusion exists, including:

> "(a) the strength or distinctiveness of the mark, (b) the similarity of the two marks; (c) the similarity of the goods/services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; and (f) the defendant's intent; [and,] (g) actual confusion."

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). Generally, courts presume confusion where a party sells counterfeit goods. *Millennium Funding, Inc.*, 2021 WL 1564489, at *3 (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F2d 145, 148 (4th Cir. 1987)).

Here, the facts weigh in favor of a finding of confusion. As discussed above, Defendant Doe uses a counterfeit mark with identical characters to Plaintiff 42's registered trademark. Using the same name, Plaintiff 42 and Defendant Doe distribute software; however, Doe uses the mark to distribute pirating content. Doe's use of the mark is likely to mislead to public into believing that Plaintiff 42 has authorized or supplied the goods on Doe's site and is trading on Plaintiff 42's reputation. (*See* First Am. Compl. ¶¶ 303-04.) Therefore, the undersigned finds that Defendant Doe's spurious mark is likely to confuse or deceive others.

Accordingly, because Plaintiff 42 alleged facts supporting all four elements of a trademark

counterfeiting claim, the undersigned finds sufficiently pled a trademark claim under Section 32 of the Lanham Act, 15 U.S.C. §1114.

**E.      Plaintiff 42's Unfair Competition Claim.**

Plaintiff 42 also claims that Defendant Doe engaged in unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). To establish an unfair competition claim, a plaintiff must show that the "public is likely to be deceived or confused by the similarity of the relevant marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J. concurring). As discussed above, the similarity of the characters of the marks are likely to confuse consumers. (*See* First Am. Compl. ¶¶ 310-14.) Therefore, the undersigned finds that Plaintiff 42 has sufficiently pled an unfair competition claim under the Lanham Act, § 1125(a).

**F.      Plaintiff 42's Breach of Contract Claim.**

Finally, Plaintiff 42 alleges that Defendant Doe is liable for breach of contract under Virginia law. To establish breach of contract in Virginia, a plaintiff must show "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449 (E.D. Va. 2009) (quoting *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)).

Plaintiff 42 alleges that Plaintiff 42 and Defendant Doe entered into an enforceable agreement on or around April 3, 2020 to resolve their trademark dispute. (*See* First Am. Compl. ¶¶ 316-17, Decl. of Culpepper at ¶¶ 9-18.) Defendant Doe breached that obligation by (1) "continuing to distribute Popcorn Time as a peer-to-peer sharing software in violation of U.S. Copyright law," (2) "failing to pay Plaintiff 42 the total of $4900," and (3) "failing to provide proof of its arrangement in which the Wicked Defendants host and sponsor the infrastructure of

Doe's Popcorn Time in exchange for Doe promoting the Wicked Defendants' VPN service." (First Am. Compl. ¶¶ 319-21, Decl. of Culpepper at ¶ 19.) Plaintiff 42 experienced damages and detrimental reliance because of Defendant Doe's breaches. (*See* section IV *infra*; First Am. Compl. ¶¶ 324-25, Decl. of Culpepper at ¶ 20.) Accordingly, the undersigned finds that Plaintiff 42 has sufficiently stated a claim for Virginia breach of contract.

## IV. REQUESTED RELIEF

Plaintiff requests that the Court award (1) statutory damages under the Copyright Act, (2) statutory damages under the DMCA, (3) injunctive relief under the Copyright Act, (4) maximum statutory damages under the Lanham Act, (5) direct damages under Virginia contract law, and (6) injunctive relief under the Lanham Act. (First Am. Compl. at. 54-57.)

### A.    Statutory Damages Under the Copyright Act.

The Copyright Act allows a copyright owner to recover "an award of statutory damages for all infringements involved in the action." 17 U.S.C. §§ 504(a)(2), (c)(1). Should a copyright owner qualify for statutory damages, the Copyright Act affords the Court discretion in determining the proper amount of damages. *See EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009). "[W]ith respect to any one work," statutory damages may total "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Upon a finding of willful infringement, however, the Court "may increase the award of statutory damages to a sum of not more than $150,000.00." *Id.* § 504(c)(2).

Infringement is willful for enhanced statutory damages purposes "when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634,

649 (E.D. Va. 2011) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F. 3d 789, 799 (4th Cir. 2001)). It has long been established that for statutory damages to be "an effective sanction for enforcement of the copyright policy," they must be awarded "not merely [to] compel[] restitution of profit and reparation for injury but also . . . to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003).

Here, the Copyright Plaintiffs pleaded in the First Amended Complaint and further demonstrated in the Memorandum of Points and Authorities in Support of Motion for Default Judgment Against Doe d/b/a Popcorntime.app that Defendant Doe willfully infringed on Plaintiffs' copyrighted Works. (*See* First Am. Compl. ¶ 229; Mem. Supp. at 20-22.) Plaintiffs requests the maximum possible statutory damages award of $150,000 per Work (here, twenty-one) for a total of $3,150,000. [7] (Mem. Supp. at 22.) Because of Defendant Doe's willful infringement, the undersigned finds that Plaintiffs' request for $3,150,000.00 total damages is reasonable.

### B.   Statutory Damages for DMCA Violations.

The DMCA entitles plaintiffs to "the sum of no less than $2,500 or more than $25,000" per violation. 17 U.S.C. § 1203(c)(3)(B). The determination of statutory damages under the DMCA is very similar to that under the Copyright Act, and the court looks to the circumstances and willfulness of the infringement. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. Jan. 17, 2019).

---

[7] This total comprises damages of $150,000 per work, which is the statutory maximum for willful copyright violations. *See* 17 U.S.C. § 504(c)(2). Similar statutory damages have been awarded in like cases. *See Graduate Mgmt. Admission Counsel v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003) (awarding a total of $3,300,000 for twenty-two infringements); *MTI Enters. Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, No. 1:18-cv-650 (TSE/IDD) (E.D. Va. Dec. 7, 2018) (awarding $150,000 per infringement totaling $450,000); *Wilson v. Nat'l Bikers Roundup Inc.*, No. 3:15-4862 (MGL/SVH) (D.S.C. May 12, 2017) (awarding $150,000 for willful infringement).

Here, Plaintiffs request a total of $525,000 in statutory damages, $25,000 per Work (21). (*See* First Am. Compl. ¶ 289; Mem. Supp. at 23.) As discussed above, Plaintiffs argue that Defendant Doe is liable for "hundreds if not thousands" of DMCA violations for intentionally encouraging subscribers to copy the Works from movie piracy sites like YTS using the Popcorn Time BitTorrent protocol. (*See* First Am. Compl. ¶¶ 275-84; Mem. Supp. at 23.) Defendant Doe has knowledge of the subscribers' DMCA violations, yet Doe has refused and refuses to meaningfully deter or prevent these violations. (*See id.*) Subscribers continue to be able to use Defendant Doe's Popcorn Time site to committee DMCA violations. (*See* Mem. Supp. at 13, 24, Decl. of Lee at ¶ 7, Decl. of Culpepper at ¶¶ 15-19.)

Instead of requesting damages per violation, Defendants request "the maximum statutory damages of $25,000 for just one DMCA violation for each of Copyright Plaintiffs' twenty-one (21) Works." (Mem. Supp. at 23.) Given the willfulness and ongoing nature of Defendant Does' contributory DMCA violation, the undersigned finds the statutory damages request of $525,000 to be reasonable.

### C. Copyright Plaintiffs are Entitled to Injunctive Relief Under the Copyright Act.

The Copyright Plaintiffs seek injunctive relief under the Copyright Act. *See* 17 U.S.C. § 502(a). Specifically, Copyright Plaintiffs request that the Court permanently enjoin Defendant Doe from directly and contributorily infringing on Plaintiffs' Works via Popcorn Time. The Plaintiffs have withdrawn their requests for injunctive relief against third-party service providers. (Dkt. 63.)

The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). Additionally, the Copyright Act

states that a court may, "[a]s part of a final judgment or decree," order the "destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights[.]" 17 U.S.C. § 503(b). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

 (1) that it has suffered an irreparable injury;
 (2) that remedies available at law, such as monetary damages, are inadequate to
   compensate for that injury;
 (3) that, considering the balance of hardships between the plaintiff and defendant, a
   remedy in equity is warranted; and
 (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The undersigned determines that permanent injunctive relief is appropriate only against Defendant Doe because the above four elements are satisfied.

First, the Copyright Plaintiffs have demonstrated that they have suffered—and will continue to suffer—irreparable harm. In copyright cases, "[i]rreparable injury [can be] derive[d] from the nature of copyright violations, which deprive the copyright holder of intangible [and] exclusive rights." *Christopher Phelps*, 492 F.3d at 544. Here, the undersigned determined that Defendant Doe willfully infringed on Plaintiffs' copyrighted Works. Further, Plaintiffs have lost the ability to control how their Works are distributed. Ultimately, this loss of control makes monetary damages inadequate as Defendant's conduct will continue to harm Plaintiffs in the future absent an injunction. These findings therefore support a determination that the Copyright Plaintiffs has been irreparably harmed and that injunctive relief is appropriate.

Second, other remedies at law are inadequate to compensate the Copyright Plaintiffs. Despite receiving proper service, Defendant Doe failed to respond in any way to this lawsuit. This lack of an appropriate response demonstrates that there is a near certainty of continuing copyright

infringement as outlined above and makes it impossible to determine the actual profits and damages in the case. Furthermore, the failure to respond shows that Defendant Doe is unlikely to cooperate with Plaintiffs' requests absent the Court's issuance of injunctive relief.

Third, the only "hardship" Defendant Doe would suffer from a permanent injunction would be the requirement to follow clearly established copyright law. The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiffs' hardships (including lost profit and infringement of its legal rights) far outweigh any purported hardship that Defendant Doe faces.

Finally, the public interest also favors an injunction. The public benefits from the judicial enforcement of copyrights because it preserves their legal integrity and protection of creativity. *See EMI Apr. Music*, 618 F. Supp. 2d at 511. Furthermore, granting injunctive relief in this matter would do nothing to "disserve []" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would enforce Plaintiffs' legal rights and maintain the integrity of its copyrights. Additionally, an injunction would protect the public from Defendant's misleading business practices that encourage users to "stream and download copyrighted materials under the guise of lawfulness." (Mem. Supp. at 24.) The undersigned finds that, because of Defendant Doe's continuing infringement and his failure to respond to this lawsuit, injunctive relief against Defendant Doe is appropriate and the best means to prevent future harm to Plaintiffs.

**D.     Plaintiff 42 Statutory Damages for Trademark Infringement.**

The Lanham Act allows trademark owners to elect an award of statutory damages rather than actual profits and damages. 15 U.S.C. § 1117(c). Courts have broad discretion in determining the "just" amount of statutory damages awards under the Lanham Act. *Larsen v. Terk Technologies Corp.*, 151 F.3d 140, 149-50 (4th Cir. 1998). Generally, a court may award "not less than $1,000

or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed." 15 U.S.C. § 1117(c)(1). But where a defendant willfully uses counterfeit marks, a

court may award up to "$2,000,000 per counterfeit mark . . . ." 15 U.S.C. § 1117(c)(2). The purpose

of the maximum willful statutory damages is to deter wrongful conduct, which is relevant in default

judgment cases. *Cabinet Discounters, Inc. v. Serkisian*, No. PWG-16-1887, 2017 WL 2930461, at

*2-3 (D. Md. July 10, 2017).

This Court has awarded maximum statutory damages of $2,000,000 for willful trademark

infringement. *See, e.g., JUUL Labs, Inc. v. Unincorporated Ass'ns Identified in Schedule A*, No.

1:18-cv-1063, 2019 WL 1512528, at 6 (E.D. Va. Mar. 20, 2019) (awarding $2,000,000 per mark

totaling $4,000,000); *Volkswagen Group of Am., Inc. v. The Unincorporated Ass'ns Identified in

Schedule A*, No. 1:19-cv-1574, 2020 WL 6122368, at *7 (E.D. Va. July 10, 2020) (awarding

$2,000,000); *Montblanc-Simplo GmbH v. Ilnitskiy*, 1:17-cv-415, 2018 WL 1882828, at * (E.D.

Va. Jan. 25, 2018) (awarding $2,000,000 per mark totaling $32,000,000 under the

Anticounterfeiting Consumer Protection Act).

Here, the Plaintiff 42 pleaded in the First Amended Complaint and further demonstrated in

the Memorandum of Points and Authorities in Support of Motion for Default Judgment Against

Doe d/b/a Popcorntime.app that Defendant Doe willfully used and continues to use the counterfeit

mark. (*See* First Am. Compl. ¶¶ 300-05; Mem. Supp. at 26-27.) Doe knowingly uses Plaintiff 42's

mark for profit and received notice of the infringement during the Twitter dispute. Plaintiff 42

requests the maximum possible statutory damages award of $2,000,000 for Defendant's

infringement of the mark. (Mem. Supp. at 27.) Because of Defendant Doe's willful and ongoing

use of the counterfeit mark which requires deterrence, the undersigned finds that Plaintiff 42's

request for $2,000,000 damages is reasonable.

### E.   Plaintiff 42 is Entitled to Damages for Defendant's Willful Breach of Contract.

Under Virginia Law, Plaintiffs may receive either direct or consequential damages. *See Rogers v. Deane*, 992 F. Supp. 2d 621, 629 (E.D. Va. Jan. 22, 2014) (citing *Virginia Stone Land Co. v. Neff*, 259 Va. 273, 526, S.E.2d 517 (Va. 2000)). Direct damages are damages that naturally arise and are reasonably expected to arise from the breach. *Id.* (citing *Roanoke Hosp. Ass'n v. Doyle & Russell*, Inc., 215 Va. 796, 214 S.E.2d 155 (Va. 1975)). A plaintiff may recover direct damages regardless of their foreseeability to the parties. *Id.* (citing *Danburg v. Keil*, 235 Va. 71, 365 S.E.2d 754 (Va. 1988)).

Here, Plaintiff 42 and Defendant Doe entered a legally binding agreement resolving their trademark dispute. The agreement specified that Doe would pay $4,900 to Plaintiff 42. As discussed above, Defendant Doe did not pay the $4,900, breaching its obligation under the agreement and harming Plaintiff 42. Therefore, the undersigned finds that Plaintiff 42 is entitled to direct damages of $4,900 resulting from Defendant Doe's breach of the agreement.

### F.   Plaintiff 42 is Entitled to Injunctive Relief under the Lanham Act.

Plaintiff 42 seeks injunctive relief under the Lanham Act, 15 U.S.C. § 1116(a). Specifically, Plaintiff 42 asks that the Court enter "a permanent injunction against Defendant Doe from using the trademark Popcorn Time and ordering the domain name registrar Google to transfer the name "Popcorn.app" to Plaintiff 42." (Mem. Supp. at 28.) As discussed above, Plaintiffs have withdrawn their requested relief as against third-party service providers like Google. (Dkt. 63.)

The Lanham Act provides that a court may grant injunctive relief to prevent the trademark infringement. *See* 15 U.S.C. § 1116(a) (Courts enforcing the Lanham Act "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in

the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps*, 492 F.3d at 543 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The undersigned determines that permanent injunctive relief is appropriate against Defendant Doe because the above four elements are satisfied. First, Plaintiff 42 has demonstrated that it has suffered—and will continue to suffer—irreparable harm. In trademark cases, "a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 42 F.3d 922, 938 (4th Cir. 1995). Further, a plaintiff is entitled to rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for permanent injunction[.]" 15 U.S.C. § 1116(a).

Here, the undersigned determined that Defendant Doe willfully used Plaintiff 42's registered trademark in a way that is likely to cause confusion. Further, Plaintiff 42 continues to suffer lost profits and goodwill from Defendant's past and ongoing use of the Popcorn Time mark, which Plaintiff 42 built with its own resources. (*See* Mem. Supp. at 28-29, Decl. of Culpepper ¶¶ 5-8.) Ultimately, this makes monetary damages inadequate as Defendant's conduct will continue to harm Plaintiff 42 in the future absent an injunction. These findings therefore support a determination that Plaintiff 42 has been irreparably harmed and that injunctive relief is appropriate.

Second, other remedies at law are inadequate to compensate Plaintiff 42. Despite receiving proper service, Defendant Doe failed to respond in any way to this lawsuit. This lack of an appropriate response demonstrates that there is a near certainty of continuing counterfeit trademark infringement as outlined above. Furthermore, it shows that Doe is unlikely to cooperate with Plaintiff 42's requests absent the Court's issuance of injunctive relief.

Third, the only "hardship" Defendant Doe would suffer from a permanent injunction would be the requirement to follow clearly established trademark law and to cease running its unlawful piracy application. This apparent hardship, however, does not affect the balancing of interests under this test. *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (reasoning that the Defendant's "harm" of ceasing trademark infringement carries little to no weight in the balancing of interests). The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiff 42's hardships (including lost profit and infringement of its mark) far outweigh any purported hardship that Defendant Doe faces.

Finally, the public interest also favors an injunction. The purpose of trademark is to protect the public from confusion about 'the identity of the enterprise from which goods and services are purchased.'" *Toolchex*, 634 F. Supp. 2d at 594 (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976)). Furthermore, granting injunctive relief in this matter would do nothing to "disserve []" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would prevent confusion, enforce Plaintiff 42's legal rights, and maintain the integrity of the mark Popcorn Time. For these reasons, the undersigned finds that injunctive relief is appropriate and the best means to prevent future harm to Plaintiff 42 due to Defendant Doe's continuing use of the counterfeit mark and his failure to respond to this lawsuit.

### G.     Attorneys' Fees and Costs.

Lastly, the Copyright Plaintiffs and Plaintiff 42 ("Plaintiffs") request that the Court award the attorneys' fees and costs incurred in bringing this action.

### 1)   Attorneys' Fees

The Copyright Act authorizes courts "to award a reasonable attorney's fee to the prevailing party as part of the cost." 17 U.S.C. § 505. Courts in the Fourth Circuit consider four factors to determine if attorney's fees are appropriate under the Copyright Act: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation or deterrence,' and (4) 'any other relevant factor presented.'" *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F. 3d 503, 505 (4th Cir. 1994) (quoting *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225 (4th Cir. 1993)).

Here, the factors weigh heavily in favor of granting attorneys' fees to Plaintiffs. First, the Plaintiffs' motivation is to guard their intellectual property and trademark from Defendant Doe's infringing piracy activities. Second, although unchallenged by Defendant, Plaintiffs' legal and factual positions are objectively reasonable given the allegations in the First Amended Complaint discussed thoroughly above. Third, as discussed, Defendant's willful copyright and trademark infringements remain ongoing and require deterrence. Accordingly, the undersigned finds that an award of attorneys' fees is appropriate.

Courts calculate attorneys' fees using a "lodestar figure" by multiplying "the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The court decides reasonability by considering twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal
> services rendered; (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work; (6) the
> attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10) the undesirability of the
> case within the legal community in which the suit arose; (11) the
> nature and length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 266 n. 28 (4ᵗʰ Cir. 1978) (citations
omitted)). Plaintiffs bear the burden of establishing the market rate for attorney's fees in the
District. *Id.* at 244.

Here, according to Counsel Kerry Culpepper's Declaration, Kerry Culpepper requests
$25,812.50 (73.75 hours x $350 per hour), Joshua Lee requests $8,437.50 (36.25 hours x $250 per
hour), and Timothy Hyland requests $1,069.74 (no calculation specified). (Mem. Supp. at 31, Decl.
of Culpepper at 7-11, Decl. of Lee at 5-7.) Culpepper's Declaration includes a table reflecting the
hourly billing for the matter, totaling 73.75 hours, and it states that Timothy Hyland's fees total
$1069.75. (Decl. of Culpepper at 8-10.) Lee's Declaration attached to the Memorandum in Support
similarly includes a table reflecting 36.25 hours of billing for this matter. (Decl. of Lee at 5-6.)
Counsels' Declarations state that these fees are below the market rate of attorneys in the Eastern
District of Virginia. (Mem. Supp. at 31, Decl. of Culpepper at ¶¶ 25-28, Decl. of Lee at ¶¶ 10-13.)
Timothy Hyland's fee figure does not include a calculation, but because he is local counsel and
merely requests $1,069.74 the fee is sufficiently reasonable. Plaintiffs have established that their
requested attorneys' fees are below the market rate in the Eastern District of Virginia and are
reasonable given their rates and hours expended. Accordingly, the undersigned finds that the fees
are reasonable and awards Kerry Culpepper $25,812.50, Joshua Lee $8,437.50, and Timothy

Hyland $1,069.74.

2)   Costs

Plaintiffs additionally request that the Court award the costs incurred in bringing this action. The Copyright Act authorizes courts to award "full costs" to successful plaintiffs. 17 U.S.C. § 505. Costs include reasonable out-of-pocket expenses the attorney incurred in pursuing legal services that would typically be charged to a fee-paying client. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Courts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement. *See, e.g.*, *Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165, at *14 (D. Md. July 11, 2016). Here, Plaintiffs incurred $627 in taxable costs. (Mem. Supp. at 31.) These costs include a statutory filing fee of $402. (*Id.*) The undersigned finds that Plaintiff's incurred costs are reasonable and recommends that Plaintiffs be awarded $627.00 in costs.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Defendant Doe. Specifically, the undersigned recommends that the Court award Plaintiffs $5,734,946.74, which includes $3,150,000 in statutory damages under the Copyright Act, $525,000 in damages under the DMCA, $2,000,000 in statutory damages under the Lanham Act, $4,900 in direct contract damages, $35,319.74 in attorneys' fees, and $627.00 in costs.

The undersigned also recommends that the Court enter a permanent injunction requiring Defendant Doe to (1) cease directly and contributorily infringing on Copyright Plaintiffs' Works via Popcorn Time by any method, distributing the works, or making the works available for distribution to the public (except pursuant to a lawful license or with express authority from

Copyright Plaintiffs) and to (2) cease using the Trademark Popcorn Time.

As discussed above, the Plaintiffs have withdrawn any request that this Court order third-party providers, like Google, to cease providing service to and to block Defendant Doe, which the undersigned was nonetheless prepared to reject.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 15, 2021
Alexandria, Virginia

32